UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK CORNEJO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> OCWEN LOAN SERVICING, LLC, et al., <br><br> Defendants. | Case No.: 1:15-cv-00993- JLT <br><br> ORDER GRANTING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS <br><br> (Doc. 11) |

Plaintiffs Frank Cornejo and Dora Cornejo assert Defendants—including Ocwen Loan Servicing, LLC; U.S. Bank, National Association, as Trustee for the Holders of the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2005-RF3; and Western Progressive Trustee, LLC d/b/a Western Progressive, LLC— are liable for violations of California law for actions taken during the foreclosure of their home.

Defendants seek judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. 11) Plaintiffs oppose the motion, arguing the factual allegations, assumed as true, are sufficient to support their claims for relief. (Doc. 13) The Court heard the oral arguments of the parties at a hearing on December 18, 2015.

Because Defendants demonstrate there is no dispute of fact related to several of Plaintiffs' claims as discussed below, the motion for judgment on the pleadings is **GRANTED IN PART**.

///

1

## I. Procedural History

Plaintiffs initiated this action by filing a complaint against Defendants in Kern County Superior Court in Case No. BCV-15-100047-SPC on May 14, 2015, alleging violations of California law related to the foreclosure of their residence. (Doc. 1-1 at 6-37) Defendants filed a Notice of Removal on June 29, 2015 (Doc. 1), thereby initiating the matter in this Court. Defendants filed their Answer to the Complaint on September 1, 2015. (Doc. 6)

On November 17, 2015, Defendants filed the motion for judgment on the pleadings now pending before the Court. (Doc. 11) Plaintiffs filed their opposition to the motion on November 17, 2015 (Doc. 13), to which Defendants filed a reply on December 11, 2015 (Doc. 14).

## II. Legal Standards

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion pursuant to Rule 12(c) is "functionally identical" to a motion under Rule 12(b). *Dworkin v. Hustler Magazine, Inc.*, 867 F. 2d 1188, 1192 (9th Cir. 1989). Consequently, when considering a motion to dismiss under Rule 12(c), the court "must accept all factual allegations in the [pleadings] as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

To prevail on a Rule 12(c) motion, the moving party bears the burden to demonstrate that (1) "no material issue of fact remains to be resolved" and (2) "he is entitled to judgment as a matter of law." *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984). Judgment on the pleadings is improper if the Court is required to go "beyond the pleadings to resolve an issue." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990). Rather, when "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also Hal Roach Studios*, 896 F.2d at 1150. However, "documents attached to the complaint and incorporated by reference are treated as part of the complaint, not extrinsic evidence; thus, these documents are properly considered in a Rule 12(c) motion." *Summit Media LLC v. City of Los Angeles*, 530 F. Supp. 2d 1084, 1096 (C.D. Cal. 2008).

The Court retains the discretion to grant a Rule 12(c) motion with leave to amend, or to grant

dismissal rather than enter judgment. *See Pacific W. Grp. v. Real Time Solutions*, 321 Fed. Appx. 566, 569 (9th Cir. 2008); *see also Lonberg v. City of Riverside*, 300 F.Supp.2d 942, 945 (C.D. Cal. 2004) ("although Rule 12(c) does not mention leave to amend, courts have discretion both to grant a Rule 12(c) motion with leave to amend . . . and to simply grant dismissal of the action instead of entry of judgment"). Similarly, "[a]lthough Rule 12(c) does not expressly authorize 'partial' judgments, neither does it bar them, and it is common practice to apply Rule 12(c) to individual causes of action." *Carmen v. San Francisco Unified School Dist.*, 982 F.Supp. 1396, 1401 (N.D. Cal. 1997)).

### III.     Factual Allegations

Plaintiffs allege they purchased real property commonly known as 3425 Rancho Sierra Street in Bakersfield, California ("the Property") by executing a Deed of Trust on July 31, 1992. (Doc. 1-1 at 9, ¶ 9) Plaintiffs assert, "In response to wildly unprecedented decrease in property values and additional loss of income, [they] suffered from financial hardship and a decrease in available household funds." (*Id.*, ¶ 12) According to Plaintiffs, they "maintained a strong track record of timely payments due under the mortgage until the monthly payments became untenable and default inevitable." (*Id.*)

Plaintiffs assert "the interest as beneficiary in the Deed of Trust" was assigned to U.S. Bank on April 26, 2013, and was recorded as Instrument No. 0213063394 on May 7, 2013. (Doc. 1-1 at 9, ¶ 10) At a time "unknown to the Plaintiffs," Ocwen Loan Servicing "became the mortgage servicer to the Deed of Trust and mortgage." (*Id.*, ¶ 11) According to Plaintiffs, Ocwen "serviced the day-to-day tasks related to the Deed of Trust and mortgage in favor of [U.S. Bank]." (*Id.*) Plaintiffs report that Ocwen and Western Progressive recorded a Notice of Default against the Property as Instrument No. 000214131129 on October 22, 2014. (*Id.* at 10, ¶ 13)

Plaintiffs allege that prior to recording the Notice of Default, "neither the Defendants nor any of their authorized agents contacted the Plaintiffs in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." (Doc. 1-1 at 10, ¶ 16) Specifically, Plaintiffs contend Defendants did not "advise[] the Plaintiffs of the statutory right to request a meeting regarding foreclosure alternatives which would be scheduled within fourteen (14) days…" or provide "a toll-free telephone number to contact a United States Department of Housing and Urban Development (HUD) certified housing counseling agency." (*Id.*)

Plaintiffs assert that Ocwen "first contacted the Plaintiffs about options to avoid foreclosure by providing a form letter" on December 16, 2014. (Doc. 1-1 at 10, ¶ 18) Plaintiffs report the letter, "entitled 'Request for Mortgage Assistance (RMA)/ Hardship Affidavit,'" included "some general loss mitigation information and solicited an application for loan modification programs from the Plaintiffs." (*Id.* at 11, ¶ 18)

Plaintiffs allege a Notice of Trustee's Sale was recorded by Western Progressive, "acting at the behest of" Ocwen, on February 23, 2015. (Doc. 1-1 at 11, ¶ 19) Plaintiffs report the Notice "set forth a trustee's sale date of March 27, 2015." (*Id.* at ¶ 20) Plaintiffs report that because they were "[a]ware of government-offered loan modification initiatives designed to help defaulted homeowners avoid foreclosure and keep their homes, [they] sought to determine their candidacy under such programs as Home Affordable modification Program ("HAMP"), Keep Your Home California ("KYHC") and any and all loan modification programs offered by the foreclosing lenders." (*Id.*, ¶ 21)

According to Plaintiffs, they contacted Ocwen by phone on March 15, 2015 "to determine loan modification candidacy." (Doc. 1-1 at 11, ¶22) Plaintiffs report that they "accurately disclosed all information related to the household income, household expenses, loan obligations, status of employment of all household contributors, financial hardship, and any and all other details requested … to ascertain whether Plaintiffs would qualify for loan modification programs." (*Id.*) Plaintiffs allege Ocwen "affirmatively represented to Plaintiff that they had been 'pre-approved' for loan modification candidacy and requested that they furnish loan modification application paperwork as a mere formality for final approval." (*Id.*) Plaintiffs report that they submitted the paperwork "by April 15, 2015, at the latest." (*Id.* at 12, ¶ 23) Plaintiffs report that Ocwen requested additional information[1], after which:

> Plaintiffs supplemented the loan modification application with household financial documents including utility bills, bank statements for all household contributors, paystubs for all household contributors, tax returns for all household contributors, Profit and Loss statements for any sources of self- employment information, and other such information required. . . in order to verify the Plaintiffs' income.

(*Id.*) Plaintiffs contend Ocwen "failed to acknowledge receipt of Plaintiff's submitted loan modification materials within five days of receipt." (*Id.* at 12, ¶ 24) Further, Plaintiffs allege Ocwen

---

[1] Plaintiffs do not allege when Ocwen requested the additional information was requested, when they submitted the supplemental documents to Ocwen or whether this occurred before the foreclosure sale.

"failed to consider [their] submitted application materials for loan modification candidacy." (*Id.*)

Plaintiffs allege that on April 18, 2015, "Plaintiffs and/or persons assisting them or working on their behalf contacted Defendant Ocwen by phone to verify the submitted loan modification documents had been received by Defendant… and to verify that the foreclosure proceedings then-underway would be halted or postponed." (Doc. 1-1 at 25, ¶ 83) Plaintiffs assert a loss-mitigation representative named Tabu "affirmatively stated… that the April 29, 2015 foreclosure sale of the subject property would be postponed to allow for loan modification review." (*Id.* at 25-26, ¶ 85) Plaintiffs contend these statements "were entirely false" and "made solely to keep Plaintiffs 'on the hook' so they would abstain from alternative forms of loss mitigation such as filing for bankruptcy or taking legal action to prevent the . . . foreclosure sale." (*Id.*, ¶ 86) Further, Plaintiffs allege they "justifiably relied upon the misrepresentations… [and] refrained from taking legal action to enjoin the foreclosure sale and refrained from filing for bankruptcy." (*Id.*, ¶ 92)

On April 29, 2015, the Property was "auctioned at [a] trustee's sale and sold to a third party purchaser." (Doc. 1-1 at 12-13, ¶¶ 25, 34) Plaintiffs report that one day after the sale, Ocwen mailed "a written acknowledgement of having received [Plaintiff's] loan modification application package." (*Id.* at 12, ¶ 26) According to Plaintiffs, the letter from Ocwen "did not indicate any deficiencies" and their application was "complete." (*Id.*, ¶¶ 26, 28) Thus, Plaintiffs assert the sale was completed while their "complete application for loan modification was pending a determination on acceptance or denial, in violation of Cal. Civ. Code § 2923.6." (*Id.* at 13, ¶ 30)

**IV.      Judicial Notice**

The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Defendants request that the Court take judicial notice of the Trustee's Deed Upon Sale recorded in the Official Records of Kern County on May 7, 2015, as Document Number. 0215057029. (Doc. 12 at 2) In addition, Defendants request that the Court take judicial notice of its docket in this matter. (*Id.*)

The Court may take judicial notice of the Trustee's Deed Upon Sale, because it is a matter of public record, certified and maintained by the Kern County Recorder's Office. Further, the Court may

take judicial notice of its records, because its accuracy cannot reasonably be questioned.  *See Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), *aff'd* 645 F.2d 699 (9th Cir. 1981).  Accordingly, Defendants' request for judicial notice is **GRANTED**.

Further, the Court may take judicial notice of material incorporated by reference into the complaint. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Intri-Plex Technologies, Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).  Documents are properly incorporated into the complaint by reference "in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Coto Settlement*, 593 F.3d at 1038; *see also United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).  Defendants do not challenge the authenticity of the Notice of Default and Election to Sell, the Notice of Trustee's Sale, or "The Request for Mortgage Assistance (RMA)/ Hardship Affidavit." (Doc. 1-1 at 39-50)  Plaintiffs' claims rely upon these documents, and there is no dispute that they are relevant.  Accordingly, judicial notice is taken of these documents.

**V.     Discussion and Analysis**

In the complaint, Plaintiffs assert the following causes of action: (1) injunctive relief, (2) dual tracking in violation of Cal. Civ. Code §2923.6(c) against all Defendants, (3) failure to acknowledge the loan modification application in violation of Cal. Civ. Code § 2924.10 against all Defendants, (4) failure to acknowledge their application in violation of Cal. Civ. Code § 2923.55 against all Defendants, (5) fraudulent misrepresentation against Ocwen and U.S. Bank, (6) negligence against Ocwen and U.S. Bank, (7) failure to provide written notice of the foreclosure postponement in violation of Cal. Civ. Code § 2924(a)(5) against Ocwen and U.S. Bank, and (8) violations of California's Business and Professions Code § 17200 against Owen and U.S. Bank. (*See generally* Doc. 1-1 at 6-37)  Defendants contend they are entitled to judgment on the pleadings for each of these claims.

**A.     First cause of action for Injunctive Relief**

Plaintiffs seek injunctive relief under Cal. Civ. Code § 2924.12(a), which provides:  "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to

enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17." Defendants contend Plaintiffs' claim fails because "one of the prerequisites to obtaining injunctive relief under section 2924.12 is that there cannot be a recorded trustee's deed upon sale." (Doc. 11 at 11)  However, as Defendants note, the Trustee's Deed Upon Sale was recorded on May 7, 2015. (*Id.*, citing Doc. 12-1)

Plaintiffs concede "the consummation of the trustee's sale through the recording of the deed has effectively closed the door to the remedy of injunctive relief provided by Cal. Civ. Code §2924.12(a). (Doc. 13 at 13).  Accordingly, Defendants' motion for judgment on the pleadings is **GRANTED** as to Plaintiff's claim for injunctive relief.

**B.    Second cause of action for violation of Cal. Civ. Code § 2923.6(c)**

Plaintiffs assert Defendants are liable for violations of Cal. Civ. Code § 2923.6(c), which prohibits entities from simultaneously offering a loan modification and pursuing foreclosure— a practice commonly referred to as "dual tracking."  Specifically, Section 2923.6(c) provides:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
>   (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>
>   (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>
>   (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Cal. Civ. Code §2923.6(c).

Defendants argue that Plaintiffs' claim for a violation of Section 2923.6 fails because the facts "fail to establish that the Application was, in fact, complete." (Doc. 11 at 12)  An application is "deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." Cal.

Civ. Code § 2923.6(h). Defendants argue that the Application submitted by Plaintiffs and attached to the complaint "reflects, on its face, that it was incomplete." (Doc. 11 at 12) Specifically, Defendants note "the Application is missing the following information: (1) a breakdown of Plaintiffs' monthly expenses in Section 6; and (2) an itemization of Plaintiffs' business income in Section 9." (*Id.*, citing Doc. 1-1 at 48-67)

On the other hand, Plaintiffs contend their "Application was complete and is pled as such." (Doc. 13 at 14, emphasis omitted) Significantly, however, the assertions that the applications were "complete" are conclusions, rather than factual allegations, and not entitled to the assumption of truth. *See Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (conclusions "cast in the form of a factual allegation" are not entitled to the assumption of truth); *see also Stokes v. CitiMortage, Inc.*, 2014 WL 4359193 (C.D. Cal. Sept. 2, 2014) ("A bald allegation that a party submitted 'complete' loan modification applications-without sufficient supporting factual allegations-is a conclusory statement, and the Court does not rely on such assertions …"). Accordingly, this Court has determined plaintiffs stated facts sufficient to support the conclusion that a loan modification application was complete where the plaintiffs complied with specific requests from the mortgage servicer. *See Hatton v. Bank of America, N.A.*, 2015 WL 4112283 at *7 (E.D. Cal. July 8, 2015).

In *Hatton*, the plaintiffs alleged an employee "told Plaintiffs that if they (1) gave him their financial information over the phone; and (2) sent him an approval letter for their reverse mortgage offer, 'their application would be complete.'" *Id.*, 2015 WL 4112283 at *7. In addition, the plaintiffs alleged that "they met these two conditions." *Id.* Therefore, the Court concluded the plaintiffs "plausibly alleged that they supplied [the servicer] with the documents required… and that a complete application was submitted." *Id.*

Here, Plaintiffs allege they were told to "furnish loan modification application paperwork as a mere formality for final approval." (Doc. 1-1 at 11, ¶ 22) Plaintiffs allege they "supplied all such paperwork to [Ocwen] by April 15, 2015, at the latest." (*Id.*, ¶ 23) Importantly, however, Plaintiffs allege also they "submitted *an updated* a current, completed, legible and satisfactory loan modification application and supporting documentary materials." (Doc. 1-1 at 12, ¶ 23, emphasis added) Further, Plaintiffs allege that "[a]t the request of Defendant Ocwen, Plaintiffs *supplemented* the loan

8

modification application with household financial documents including[] utility bills, bank statements for all household contributors, paystubs for all household contributors, tax returns for all household contributors, Profit and Loss statements for any sources of self-employment income, and other such information required by Defendant Ocwen in order to verify the Plaintiff's income." (Doc. 1 at 12, ¶ 23, emphasis added) Consequently, based upon the facts alleged, the application was not complete by April 15 and, indeed, it unclear that it was complete before the sale.

Because Plaintiffs do not provide any information regarding when Ocwen requested the additional documents, or when this information was provided to Ocwen, the facts alleged are insufficient to determine when—or if—Plaintiffs application should be deemed "complete" under Section 2923.6(h). However, it is possible the factual deficiencies of the complaint may be cured by amendment. Accordingly, Defendants' motion for judgment on the pleadings is **DENIED** as to Plaintiff's second claim for relief, but the claim for a violation of Section 2923.6 is **DISMISSED** with leave to amend.

### C. Third cause of action for violation of Cal. Civ. Code § 2924.10

Plaintiff contends Ocwen, U.S. Bank, and Western Progressive are liable for violating Section 2924.10, which provides: "When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt." Cal. Civ. Code § 2924.10(a). In its initial acknowledgement of receipt of the loan modification application, the mortgage servicer has to include information such as an estimate of when a decision on the loan modification will be made, any expiration dates for submitted documents, and any deficiency in the application. *Id.* To be actionable, plaintiff must establish "a material violation" of this provision after a trustee's deed upon sale has been recorded. *Id.*, § 2924.12(b).

#### 1. Claim as to Defendants U.S. Bank and Western Progressive

As an initial matter, Plaintiff alleges that only defendant Ocwen was acting as the mortgage servicer. (Doc. 1-1 at 7, ¶¶ 2-4) By the plain language of the statute, only the mortgage servicer is required to acknowledge documents submitted in connection with a loan modification application. Consequently, Defendants U.S. Bank and Western Progressive did not have any obligations to respond

to Plaintiffs' loan modification application or documents submitted to Ocwen, and cannot be held liable for a violation of Section 2924.10.

Plaintiffs argue that California Civil Code section 2924.12 makes U.S. Bank and Western Progressive liable. However, a careful reading of that statute belies this claim. Section 2924.12 (b) reads,

> After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, **or** authorized agent shall be liable to a borrower for actual economic damages **pursuant to Section 3281**, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

Cal. Civil Code § 2924.12(b), emphasis added. Notably, this section does not make a mortgage servicer, mortgagee, trustee, beneficiary, **and** an authorized agent liable; rather it makes one or more of these entities liable. This interpretation is support by the language of California Civil Code section 3281 which reads, "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." Notably, this statute requires the unlawful act or omission at issue to have been completed by the one who is liable. Neither § 2924.12(b) nor § 3281 suggest that the act at issue be completed by *any* of the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent for *all* of them to be liable.

Accordingly, the motion as to U.S. Bank and Western Progressive motion for judgment is **GRANTED**.

### 2. Claim as to Ocwen

Plaintiffs allege they submitted "a completed loan modification application with all accompanying financial documents to Defendant Ocwen on April 15, 2015." (Doc. 1-1 at 20, ¶ 62) In addition, Plaintiffs allege Ocwen "failed to provide Plaintiffs with written acknowledgement or any disclosures related to the loan modification application or the process within five days of receipt as required by Civil Code § 2924.10." (*Id.*, ¶ 65) Rather, Plaintiffs assert Ocwen "mailed to Plaintiffs a written acknowledgement of receipt of their loan modification application" on April 30, 2015—one

day after the completed Trustee's Sale. (*Id.* at 21, ¶ 67)

Defendants argue Plaintiffs' claim against Ocwen fails because Plaintiffs do not allege facts sufficient to support a conclusion that Ocwen "materially violated the statute." (Doc. 11 at 14) According to Defendants, "none of the allegations establish how the earlier provision of an acknowledgment would have prevented the sale of the Property." (*Id.* at 14-15) On the other hand, Plaintiffs argue the "violation is surely material as it did not give Plaintiffs any opportunity to fully determine available foreclosure alternatives." (Doc. 13 at 17)

Courts have interpreted the term "material" to refer to whether the alleged violation affected a plaintiff's loan obligations or the modification process. *See, e.g. Johnson v. PNC Mortgage*, 2014 WL 6629585 (N.D. Cal. Nov. 21, 2014); *Gonzales v. Citimortgage, Inc.*, 2015 WL 3505533, at *6 (N.D. Cal. June 3, 2015). For example, in *Sheng v. Select Portfolio Servicing, Inc.*, the Court found the violation affected the plaintiff's loan modification process because she alleged "she submitted numerous documents to Defendant for which she belatedly or never received acknowledgement," and the information eventually received did not inform the plaintiff "about the process, the required documents, the timeline, any "deficiency" in the application as submitted, and any deadlines." *Id.*, 2015 WL 4508759 at *3 (E.D. Cal. July 24, 2015). In addition, the plaintiff alleged that her "main difficulty" was determining how to complete the loan modification application, and "if she had timely received this information, she could have more quickly and thoroughly responded to it." *Id.*

In contrast, here, Plaintiffs do not allege the loan modification process was disrupted by Ocwen's ten-day delay in providing a written acknowledgement of the submission of documents. Plaintiffs do not allege they were awaiting information regarding the loan modification process, and do not identify a specific harm they attribute to the violation. Although Plaintiffs contend they "were not afforded adequate opportunity to investigate alternatives to the foreclosure of the subject property prior to the trustee's sale of the subject property" (Doc. 1-1 at 21, ¶ 68), Plaintiffs fail to explain how an earlier written acknowledgement of the submission of documents would have changed the course of the proceedings. Consequently, the Court finds Plaintiffs fail to allege facts sufficient to establish a "material violation" of Section 2924.10 by Ocwen.

Because it is unclear whether the deficiencies may be cured by amendment, the Court acts

1  within its discretion to grant Plaintiffs leave to amend the claim.  Accordingly, Defendants' motion for
2  judgment on this claim is **DENIED** without prejudice.
3     **D.**  **Fourth cause of action for violation of Cal. Civ. Code § 2923.55**
4     Pursuant to Section 2923.55, prior to filing the notice of default, a mortgage servicer must
5  "contact the borrower in person or by telephone in order to assess the borrower's financial situation
6  and explore options for the borrower to avoid foreclosure." Cal. Civ. Code § 2923.55(b)(2).  "During
7  the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to
8  request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to
9  occur within 14 days." *Id.*  Further, "[a] mortgage servicer, mortgagee, trustee, beneficiary, or
10 authorized agent may not record a notice of default" until making such contact, or for thirty days after
11 a mortgage servicer exercised due diligence in attempting to contact the borrower. *Id.*, § 2923.55(a).
12 A plaintiff must establish "a material violation" of this provision after a trustee's deed upon sale has
13 been recorded. *Id.*, § 2924.12(b).
14    Here, Plaintiffs allege that prior to filing the notice of default, Ocwen and Western Progressive,
15 "failed to contact Plaintiffs in order to either assess the borrower's financial situation and explore
16 options to avoid foreclosure, advise of the statutory right to request a meeting regarding foreclosure
17 alternatives…" or "provide[] Plaintiffs with a toll-free telephone number to contact a United States
18 Department of Housing and Urban Development (HUD) certified housing counseling agency."  (Doc.
19 1-1 at 10, ¶ 16)  In addition, Plaintiffs allege that "[n]either the Defendants nor any of their authorized
20 agents employed due diligence in an effort to contact the Plaintiffs as required by §2923.55(a)(2)."
21 (*Id.*)
22    Notably, the Notice of Default and Election to Sell that was recorded in October 2014 is
23 accompanied by a "California Declaration of Compliance" dated May 12, 2014, in which a Ocwen
24 representative indicates they did not contact the borrower, but rather "exercised due diligence to contact
25 the borrower pursuant to California Civil Code § 2923.55(f)…" (Doc. 1-1 at 42)  Thus, from the face of
26 the pleading and the documents incorporated by reference, it is not clear that Ocwen did not satisfy its
27 obligations to recording the Notice of Default.
28    Regardless, Plaintiffs again fail to allege facts sufficient to support a conclusion that the

12

alleged breach was "material." For example, Plaintiffs do not allege they would have taken any different actions related to seeking loan modification following the recording of a Notice of Default. Indeed, even after a Notice of Trustee's Sale was recorded, Plaintiffs report they did not take any action until March 15, 2015—despite the fact that the scheduled sale was only two weeks hence. (*See* Doc. 1-1 at 11, ¶¶ 20-22) Consequently, the Court finds Plaintiffs fail to allege facts sufficient to establish a "material violation" of Section 2924.55 by Defendants.

Because it is unclear whether the deficiencies may be cured by amendment, the Court acts within its discretion to grant Plaintiffs leave to amend the claim. Accordingly, Defendants' motion for judgment on this claim is **DENIED** without prejudice.

### E. Fifth cause of action for Fraudulent Misrepresentation

Plaintiffs contend that defendants Ocwen and U.S. Bank are liable for fraudulent misrepresentation. (Doc. 1-1 at 25-26) "Under California law, the elements for an intentional-misrepresentation, or actual-fraud, claim are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *UMG Recording, Inc. v. Bertelsmann AG*, 479 F.3d 1078, 1096 (9th Cir.2007).

To state a cognizable claim for fraudulent misrepresentation, a plaintiff must meet the heightened pleading standards of Rule 9 of the Federal Rules of Civil Procedure, which requires a plaintiff to state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In other words, the plaintiff must articulate the "who, what, when, where, and how" of the fraud alleged. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (explaining that to avoid dismissal for failure to meet the standards under Rule 9(b), "[a] complaint would need to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"). If allegations of fraud do not meet the heightened pleading standard, the "averments . . . should be disregarded, or stripped from the claim for failure to satisfy Rule 9(b)." *Kearns*, 567 F.3d at 1124 (quotations omitted).

"For corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Flowers v. Wells Fargo Bank, N.A.*, 2011 WL 2748650, at *6

(N.D. Cal. July 13, 2011). Here, Plaintiffs assert they spoke to an individual named Tabu regarding their loan modification, and allege he had authority to speak on behalf of Ocwen. (Doc. 1-1 at 25, ¶¶ 83-84) In addition, Plaintiffs allege Tabu "affirmatively stated to the Plaintiffs and/or persons assisting them or working on their behalf that the April 29, 2015 foreclosure sale of the subject property would be postponed to allow for loan modification review."[2] (*Id.*, at 25-26, ¶ 85) However, they state no facts to support their conclusion Tabu had authority to speak on behalf of Ocwen. Even more clear, they state no facts to support that the scope of the agency relationship they allege existed between Ocwen and U.S. Bank included the authority for Tabu to speak for U.S. Bank. Indeed, they allege this conclusion based "on information and belief," but fail to set forth what their information is or why they believe it is true. Likewise, there is no information cited to support their conclusion that Tabu knew the statements were false, and that he made the statements "solely to keep Plaintiffs 'on the hook' so that they would abstain from alternative forms of loss mitigation." (*See id.*)

Moreover, Plaintiffs fail to allege facts demonstrating justifiable reliance and damages. Previously, this Court determined that plaintiffs must "allege facts showing that [their] reliance on [the alleged] statement caused the trustee's sale of [their] home." *Sholiay v. Fed. Nat. Mortgage Assoc.*, 2013 WL 3773896 at *6 (E.D. Cal. July 17, 2013). In *Sholiay*, the plaintiff claimed that, but for defendant's alleged misrepresentation that plaintiff would receive a loan modification, plaintiff would have sought legal advice and prevented the foreclosure of his home. *Id.* The Court dismissed the claim because the plaintiff "failed "to allege facts suggesting how hiring a lawyer could have prevented the sale." *Id.* Similarly, the Southern District of California determined there is no claim stated where the plaintiff alleged that she would have taken legal action to forestall the sale of her home, but she did "not allege facts that support[ed] a cognizable theory upon which she would have succeeded in preventing the trustee's sale." *Newgent v. Wells Fargo Bank, N.A.*, 2010 WL 761236 at *5 (S.D.Cal. Mar.2, 2010). As in *Sholiay* and *Newgent*, Plaintiffs allege they "refrained from taking legal action" (Doc. 1-1 at 26, ¶ 92) but fail to allege such actions would have been successful in

---

[2] This allegation is so vague as to lend itself to an interpretation that Tabu *never* said this to Plaintiffs but, rather, he said this to someone else and there is no showing that this other person ever reported it to Plaintiffs. If this interpretation is correct, there is no reliance by Plaintiffs.

14

preventing the sale. On the other hand, they claim that they refrained from filing for bankruptcy and imply, that this action would have prevented the sale. However, they fail to allege facts to show how this was true and whether filing for bankruptcy protection would have been in good faith such to prevent a vacation of the automatic stay. In re Sanders, 198 B.R. 326, 329 (Bankr. S.D. Cal. 1996) dismissed, 232 B.R. 822 (B.A.P. 9th Cir. 1997)

Because it is unclear whether the deficiencies may be cured by amendment, the Court acts within its discretion to grant Plaintiffs leave to amend the claim. Accordingly, Defendants' motion for judgment on this claim is **DENIED** without prejudice.

### F. Sixth cause of action for Negligence

In general, to succeed upon a claim for negligence, Plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) (citing *Martinez v. Pacific Bell*, 225 Cal. App. 3d 1557, 275 Cal.Rptr. 878, 883 (1990)). "To prevail in an action for negligence, the plaintiff must show that the defendant owed a duty *to the plaintiff*." *John B. v. Superior Court*, 38 Cal. 4th 1177, 1188 (2006) (emphasis added). Here, Plaintiff alleges "Defendants had a duty to conduct a trustee's sale fairly and openly and in accordance with the statutory framework governing foreclosure." Seemingly, they rely of the claims that Defendants "dual tracked" the loan and the foreclosure, failed to acknowledge the application within five days, failed to delay the filing of the notice of default until 30 days after the providing information related for foreclosure alternatives and the like and misrepresented that the foreclosure sale would be delayed.

California courts are divided as to whether a lender owes a duty of care during a loan modification application process. *Compare Lueras v. BAC Home Loans Servicing L.P.*, 221 Cal.App.4th 49, 67, 163 Cal.Rptr.3d 804 (2013) (residential loan modification is a traditional lending activity, and does not create a duty of care), with *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal.App.4th 941, 948, 176 Cal.Rptr.3d 304 (2014) (servicer has no general duty to offer modification, but a duty does arise when servicer agrees to consider borrower's application for modification). Thus, the federal courts have likewise split.

Notably, however, "[a]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assoc.*, 231 Cal.App.3d 1089, 1096 (1991). A lender's liability to a borrower for negligence arises only under special circumstances, such as "when the lender actively participates in the financed enterprise beyond the domain of the usual money lender." *Id.* (quotations omitted).

The Court agrees with the *Luera* rationale. In the Court's view, making a loan modification falls squarely within the lender's "conventional role as a lender of money" and does not constitute "active participation" outside the role as lender. Moreover, even if Plaintiffs were "captive" in that they could only obtain a *loan modification* from Ocwen, they admit they had equity in the property (Doc. 13 at 12, n. 3) and "remained ready, willing and able to tender payment to the foreclosing Defendants . . .[3]," such that there is no reason to believe they could not have *refinanced* through a different lender. Thus, there is no showing that the mere fact that they sought a loan modification that they entered into any non-traditional, special relationship with Ocwen.[4] Thus, because the Court finds there was no duty of care owed to Plaintiffs, Defendants' motion for judgment on this claim is **GRANTED**.

### G.   Seventh cause of action for violation of Cal. Civ. Code § 2924(a)(5)

Pursuant to Cal. Civil Code § 2924(a)(5), "whenever a sale is postponed for a period of at least 10 business days pursuant to Section 2924g, a mortgagee, beneficiary, or authorized agent shall provide written notice to a borrower regarding the new sale date and time, within five business days following the postponement." Plaintiff contends Ocwen and U.S. Bank violated Section 2924(a)(5), because the Notice of Trustee's Sale indicated the sale date was March 27, 2015, but the sale was postponed to April 29, 2015 and the defendants "failed to issue written notice of the same to the Plaintiffs." (Doc. 1-1 at 32, ¶¶ 108-09, 111)

Defendants argue Plaintiffs are unable to state a claim because "nothing under section

---

[3] Notably, the outstanding balance as of February 23, 2015 was $77,226.75. (Doc. 1-1 at 44)
[4] Moreover, the Court agrees that even under the *Biakanja v. Irving*, 49 Cal.2d 647, 650 (1958), analysis, Plaintiffs could not succeed because the moral blame for the foreclosure sale could rest on Defendants and, instead, the cause of the foreclosure was Plaintiffs failure to make the mortgage payments as agreed.

2924(a)(5) establishes a private right of action." (Doc. 11 at 19)  According to Defendants, "The fact that the Legislature did not intend to create a private right of action for a violation of section 2924(a)(5) is evidenced by the fact that it is not included among the actionable violations under section 2924.12, which is the statute that sets forth the scheme for redressing violations of the [Homeowner Bill of Rights], the very bill that added the requirements of section 2924(a)(5) to California's non-judicial foreclosure scheme." (*Id.*, n.5)

In response, Plaintiffs argue Defendants are mistaken because "the Legislature disfavors dead letter law." (Doc. 13 at 22-23, citing *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 218 (2010))  In *Mabry*, the court explained that "California courts, quite naturally, do not favor constructions of statutes that render them advisory only, or a dead letter." *Id.*, 185 Cal. App. 4th at 218.

Notably, Plaintiffs fail to identify any cases in which the Court determined a private right of action exists under Section 2924(a)(5), and the Court has located none.  As Defendants observe, the Homeowner Bill of Rights makes certain violations actionable and identifies the appropriate remedy based upon the posture of the foreclosure proceeding in Section 2924.12.  Specifically, the Legislature indicated "a borrower may bring an action" for violations of only "Sections[s] 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17."  Cal. Civ. Code § 2924.12.  From the plain language of the statute, borrowers are not permitted to bring a civil action for either injunctive relief or statutory damages for a violation of Section 2924(a)(5).  Accordingly, Plaintiffs' seventh cause of action fails as a matter of law, and Defendants' motion for judgment is **GRANTED**.

### H. Eighth cause of action for violation of Cal. Bus. & Prof. Code § 17200

Plaintiffs' eighth cause of action is for a violation of California's Unfair Competition Law, as set forth in Cal. Bus. & Prof. Code § 17200, et. seq.  (Doc. 1-1 at 34-35)  Under §17200, unfair competition includes any "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Therefore, there are three prongs under which a claim may be established under §17200.  *Daro v. Superior Court*, 151 Cal.App.4th 1079, 1093 (2007) ("Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair, *or* fraudulent—to be considered unfair competition"); *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 731 (9th Cir. 2007) ("[e]ach prong . . . is a separate and distinct theory of liability").  Further,

a claim under Section 17200 must rest on a violation of another law. *Farmers Ins. Exch. v. Superior Court*, 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487, 826 P.2d 730 (1992). Under the UCL, an action may be unfair even if it is not unlawful. Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 181(1999).

Here, Defendants contend that the claim fails because Plaintiffs lack standing and fail to establish "an unlawful, unfair, or fraudulent business practice on the part of Defendants." (Doc. 11 at 21) To have standing to assert a Section 17200 claim, the plaintiff must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322, (2011) (emphasis in original). In *Jenkins v. JPMorgan Chase Bank, N.A.*, the court determined the plaintiff was unable to satisfy the standing requirements where she admitted in the complaint "that she defaulted on her loan." *Id.,* 216 Cal.App.4th 497, 523 (2013). The court observed that the plaintiff's "default occurred *prior* to the six unlawful or unfair acts she allege[d] as the basis of her UCL action." *Id.* (emphasis in original). Further, the Jenkins court found it was "indisputable" that the plaintiffs "default triggered the lawful enforcement of the power of sale clause in the deed of trust, and it was the triggering of the power of sale clause that subjected [the] home to nonjudicial foreclosure." *Id.*

Plaintiffs' claim for a violation of Section 17200 fails for lack of standing, just as the plaintiff's claim in *Jenkins* failed. Plaintiffs defaulted on the loan in May 2013 (Doc. 1-1 at 41), nearly two years before the sale and about 18 months before Defendants took the actions alleged by Plaintiffs. Because their default occurred siginifcantly prior to the alleged unlawful acts, the actions could not have caused the alleged economic loss. *See Jenkins*, 216 Cal. App. 4th at 523 ("As Jenkins's home was subject to nonjudicial foreclosure because of [the] default on her loan, which occurred before Defendants' alleged wrongful acts, Jenkins cannot assert the impending foreclosure of her home (i.e., her alleged economic injury) was caused by Defendants' wrongful actions.") Because Plaintiffs are unable to show economic injury caused by the unfair business practices, they lacks standing to pursue a claim under Section 17200, and Defendants' motion for judgment is **GRANTED**.

///

### IV. Conclusion and Order

Based upon the foregoing, **IT IS HEREBY ORDERED**: that Plaintiff's motion for partial judgment on the pleadings is **GRANTED IN PART** as follows:

1. As to the first, sixth, seventh and eighth causes of action, the motion is **GRANTED**. As to the third cause of action, the motion is **GRANTED** as to U.S. Bank, and Western Progressive;

2. As to the remaining causes of action, the motion is **DENIED without prejudice**. However, these causes of action are **DISMISSED** with 20 days leave to amend. However, Plaintiffs are cautioned that they **SHALL ONLY** re-plead causes of action as to which they have good cause to believe liability may be imposed and as to which they have sufficient true factual allegations to support their claims. Failure to comply may be grounds for a motion under Fed. R. Civ. P. 11.

IT IS SO ORDERED.

Dated: **December 18, 2015**         /s/ Jennifer L. Thurston
                                  UNITED STATES MAGISTRATE JUDGE