GIANDOMINIC VITIELLO (SBN #262244)
gdvitiello@kvklawyers.com
**KATCHKO, VITIELLO & KARIKOMI, PC**
11500 W. Olympic Blvd., Suite 400
Los Angeles, CA 90064
Tel.: (310) 943-9587
Fax: (424) 204-0401

Attorneys for Plaintiffs Frank Cornejo and Dora Cornejo

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK CORNEJO, an individual; and DORA CORNEJO, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company; U.S. BANCORP d/b/a U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR HOLDERS OF STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-RF3, a national association; WESTERN PROGRESSIVE, LLC, a Delaware limited liability company; and DOES 1 THROUGH 100, inclusive;<br>                          Defendants. | Case No: 1:15-cv-00993-JLT<br><br>Hon. Magistrate Judge Jennifer L. Thurston<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1. VIOLATION OF <u>CAL. CIV. CODE</u> §2923.6(c)**<br><br>  *(PROHIBITED DUAL-TRACKING DURING LOAN MODIFICATION REVIEW)*<br><br>**2. VIOLATION OF <u>CAL. CIV. CODE</u> §2924.10**<br><br>  *(FAILURE TO ACKNOWLEDGE APPLICATION)*<br><br>**3. VIOLATION OF <u>CAL. CIV. CODE</u> §2923.55**<br><br>  *(IMPROPER RECORDING OF NOTICE OF DEFAULT)*<br><br>**4. FRAUDULENT MISREPRESENTATION**<br><br>*[Amount in controversy exceeds $25,000]*<br><br>**JURY TRIAL DEMANDED** |

COME NOW, Plaintiffs FRANK CORNEJO and DORA CORNEJO (hereinafter "Plaintiffs" or "Plaintiffs CORNEJO"), based on personal knowledge as to their own conduct and actions, and based upon information and belief as to all others, who hereby allege the following:

**PARTIES**

1.      Plaintiffs CORNEJO are, and at all times relevant hereto were, individuals residing in the county of KERN, State of California.  Plaintiffs are husband and wife.  Plaintiff FRANK CORNEJO is a disabled veteran and is therefore a "servicemember" within the meaning of Civil Code §2923.55 and the federal Servicemembers Civil Relief Act (50 U.S.C. Appen. Sec. 501 *et seq.*)

2.      Defendant OCWEN LOAN SERVICING, LLC (hereinafter "Defendant OCWEN") is, and at all times relevant hereto was, a Delaware limited liability company actively conducting business within the state of California, county of KERN. Defendant OCWEN is the loan servicer of the mortgage loan which underlies this action and improperly commenced and completed foreclosure proceedings against the property subject of this action in violation of California pre-foreclosure statutes as amended by SB900, colloquially known as the California Homeowner Bill of Rights and codified at California Civil Code §§2923 *et seq*. and §§2924 *et seq*.

3.      Defendant WESTERN PROGRESSIVE, LLC (hereinafter "Defendant WESTERN") is, and at all times relevant hereto was, a Delaware limited liability company actively conducting business within the state of California, county of KERN.  Defendant WESTERN claims to be an authorized foreclosure trustee empowered to exercise the power of sale against the subject property and, in conjunction and conspiracy with all co-defendants, improperly commenced and completed foreclosure proceedings against the property subject of this action in violation of California pre-foreclosure statutes as amended by

SB900, colloquially known as the <u>California Homeowner Bill of Rights</u> and codified at California Civil Code §§2923 *et seq*. and §§2924 *et seq*.

4.     Defendant U.S. BANCORP D/B/A U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR HOLDERS OF STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-RF3 (hereinafter "Defendant BENEFICIARY") is, and at all times relevant hereto was, a national association actively conducting business within the state of California, county of KERN. Defendant BENEFICIARY was the purported beneficiary to the underlying mortgage secured by the property subject of this action.  At all times material to this action, Defendant BENEFICIARY has authorized Defendant OCWEN to act as its agent as a "loan servicer" to the underlying loan and subject property. At all times material to this action, Defendant BENEFICIARY has authorized Defendant WESTER to act as its "foreclosure trustee" with respect to the foreclosure of the underlying loan and subject property.  In concert and conspiracy with all co-defendants, Defendant BENEFICIARY improperly commenced and completed foreclosure proceedings against the property subject of this action in violation of California pre-foreclosure statutes as amended by SB900, colloquially known as the <u>California Homeowner Bill of Rights</u> and codified at California Civil Code §§2923 *et seq*. and §§2924 *et seq*.

5.     At all times material to this action, the conduct of Defendant OCWEN and of Defendant WESTERN has been authorized, ratified, permitted, approved, and sanctioned by Defendant BENEFICIARY.

6.     The true names and capacities of defendants sued herein as DOE Defendants are presently unknown to Plaintiffs who therefore sue under these fictitious names.  Upon ascertainment of the true names and capacities of these DOE Defendants, Plaintiffs will seek leave to amend this Complaint to allege

the same.  Plaintiffs are informed and based thereon allege that DOE Defendants were and/or are, in some manner or way, responsible for and liable to Plaintiffs for the events, happenings, and damages set forth below.

7.    Plaintiffs are informed and believe and based thereon allege that at all times relevant hereto each of the Defendants was the agent, servicer, trustee, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

## **PROCEDURAL HISTORY**

8.    Plaintiffs filed the underlying Complaint against Defendants in Kern County Superior Court in Case No. BCV-15-100047-SPC on May 14, 2015.

9.    Defendants filed a joint Notice of Removal on June 29, 2015. (Doc. 1).

10.    On September 1, 2015, Defendants filed a joint Answer to the Complaint. (Doc. 6).

11.    On November 17, 2015, Defendants filed a joint Motion for Judgment on the Pleadings ("MJOP") and Request for Judicial Notice ("RJN") in support. (Docs. 11-12).

12.    On December 4, 2015, Plaintiffs filed their Opposition to the MJOP.  (Doc. 13).

13.     On December 11, 2015, Defendants filed a joint Reply in support of the MJOP.  (Doc. 14).

14.    On December 18, 2015, the Court heard oral argument on the MJOP and took the matter under submission.  (Doc. 15).

15.    On December 21, 2015, the Court issued its written ruling on the MJOP which was to GRANT IN PART with 20 days' leave to amend.

1

## GENERAL ALLEGATIONS

2       16.    This matter concerns a massive scheme of fraudulent, deceptive,

3   unlawful, and deceitful business practices being carried out by the Defendants

4   including the foreclosure of California properties in violation of state law.  Here,

5   Defendant OCWEN failed to properly, adequately, and fairly communicate with

6   the Plaintiffs regarding alternatives to foreclosure as required by California law

7   prior to commencing the foreclosure of their owner-occupied home.  Defendant

8   OCWEN then failed to resolve a pending review of Plaintiffs' complete loan

9   modification application in advance of a threatened foreclosure sale and, by

10  reckless error or malicious intent, completed the foreclosure sale of the

11  Plaintiffs' home even though the Plaintiffs' were at all times qualified for a loan

12  modification which would arrive on their doorstep mere days after the subject

13  property was sold to a third-party purchaser. Plaintiffs were subsequently

14  dispossessed.

15      17.    At all times material to this action, Plaintiffs have in fact been

16  qualified for a proprietary loan modification offered by and through Defendants

17  OCWEN and BENEFICIARY.  The fact of their qualification was revealed to

18  the Plaintiffs by representatives of Defendant OCWEN named "Tatsi" and

19  "Tabu".  Furthermore, the fact of Plaintiffs' qualification was  additionally

20  expressed in a written offer of loan modification provided by Defendant

21  OCWEN after the subject property had already been foreclosed on and sold to a

22  third-party purchaser who subsequently took possession after evicting Plaintiffs'

23  from the subject property.

24      18.    The conduct of the Defendants as alleged herein was wanton,

25  malicious, and reckless in that Defendant OCWEN was aware, at all times

26  material, that Plaintiffs had provided a complete loan modification application

27  which included all documentation requested by Defendant OCWEN in order to

28

complete the application.  All such documentation was provided to Defendant OCWEN within the timeframes permitted by Defendant OCWEN.

19.   Because Plaintiffs had provided Defendant OCWEN with all loan modification documents requested by OCWEN and in the timeframes provided by OCWEN, the loan modification review to which Plaintiffs were statutorily entitled was pending at the time that Defendants OCWEN, BENEFICIARY, and WESTERN completed a trustee's sale of the subject property and issued a deed to a third party purchaser which was subsequently recorded.

20.   Defendant OCWEN knew, at all times material, that Plaintiffs were qualified for the proprietary loan modification offered by Defendants OCWEN and BENEFICIARY and, despite this fact, completed the trustee's sale of the subject property and issued a deed to a third party purchaser which was subsequently recorded.

**THE LOAN MODIFICATION REVIEW AND THE FORECLOSURE**

21.   Plaintiffs CORNEJO are the former owners of a parcel of residential real property, which Plaintiffs occupied at all times material, located at 3425 RANCHO SIERRA STREET, CITY OF BAKERSFIELD, COUNTY OF KERN 93306 (hereinafter the "subject property").[1]

22.   On or around July 31, 1992, Plaintiffs executed a Deed of Trust which secured a first position mortgage against the subject property (hereinafter the "Deed of Trust").

23.   On or about April 26, 2013, the interest as beneficiary in the Deed of Trust was assigned to Defendant BENEFICIARY by and through a corporate assignment of Deed of Trust recorded on May 7, 2013 as Instrument No. 0213063394.  Defendant BENEFICIARY remained beneficiary to the Deed of

---

[1] Plaintiffs' ownership interest was lost after the completed trustee's sale on April 29, 2015, as alleged more fully herein.

1    Trust at all times material to this action.

2        24.    At a point unknown to the Plaintiffs, Defendant BENEFICIARY

3    appointed Defendant OCWEN as the mortgage servicer to the Deed of Trust and

4    mortgage.  Defendant OCWEN serviced the day-to-day tasks related to the Deed

5    of Trust and mortgage in favor of Defendant BENEFICIARY.   Such tasks

6    included the regular mailing of mortgage statements, collection of mortgage

7    payments, and review of Plaintiffs' loan modification application and loan

8    modification candidacy.

9        25.    Defendant OCWEN performed each of these tasks as an affiliate,

10   partner and/or agent of Defendant BENEFICIARY.  Plaintiffs are aware of this

11   fact because they were so advised by Defendant OCWEN.

12       26.    In response to a wildly unprecedented decrease in property values,

13   income, and additional loss of household funds caused when Plaintiffs satisfied

14   an outstanding franchise tax board assessment, Plaintiffs suffered from financial

15   hardship. Plaintiffs maintained a strong track record of timely payments due

16   under the mortgage until they defaulted in 2014.

17       27.    Neither Defendant OCWEN nor any co-Defendant contacted or

18   made any effort to contact the Plaintiffs in the period that followed their

19   mortgage default until after recording a Notice of Default ("NOD") against the

20   subject property.

21       28.    At all times material, Defendant OCWEN was in possession of

22   Plaintiffs' contact telephone numbers, email addresses, and mailing address.

23       29.    Prior to recording the NOD, Defendant OCWEN did not send a

24   written statement to the borrowers stating "that if the borrower is a

25   servicemember or a dependent of a servicemember, he or she may be entitled to

26   certain protections under the federal Servicemembers Civil Relief Act (50 U.S.

27   C. Appen. Sec. 501 et seq.) regarding the servicemember's interest rate and the

28

risk of foreclosure, and counseling for covered servicemembers that is available at agencies such as Military OneSource and Armed Forces Legal Assistance."

30.     Had Defendant OCWEN sent a statement to Plaintiffs concerning Plaintiff FRANK CORNEJO's entitlements as a servicemember, Plaintiffs would have been made aware of these entitlements and would have pursued them.  At all times material, Plaintiffs have been entitled to the benefits of the Servicemembers Civil Relief Act which include mortgage interest rate reduction and credit counseling.   Pursuit of Plaintiffs' entitlements under the Servicemembers Civil Relief Act would have prevented the ultimate foreclosure of the subject property, because Plaintiffs would have obtained the credit counseling necessary to budget their monthly finances to be able to reinstate and remain current on their mortgage obligation.

31.     Prior to recording the NOD, Defendant OCWEN did not contact or attempt to contact the Plaintiffs in person or by telephone in order to assess their financial situation and explore options for the borrowers to avoid foreclosure.

32.     Plaintiffs know that Defendant OCWEN did not attempt to contact them by telephone because Plaintiff FRANK CORNEJO is disabled and is always near the telephone.   Had Defendant OCWEN attempted to contact Plaintiffs by telephone, a member of the household would have picked up the phone and would have been receptive to the information regarding alternatives to foreclosure.

33.     Had Defendant OCWEN contacted or attempted to contact the Plaintiffs to assess their financial situation and to explore options to avoid foreclosure, Plaintiffs would have either applied and qualified for loan modification or would have reinstated the loan.  At all times material hereto, Plaintiffs were in fact qualified for loan modification.

34.     Because Defendant OCWEN failed to initiate contact prior to

recording a NOD, Plaintiffs lost an opportunity to reinstate the loan before thousands of dollars in legal and foreclosure fees were assessed and added to the underlying mortgage balance through the recording of an NOD.  Plaintiffs would have reinstated the mortgage before the NOD was recorded if they were contacted by Defendant OCWEN as required under Civil Code §§2923.55.

35.    On or about October 22, 2014, Defendants OCWEN and WESTERN recorded a NOD against the subject property as instrument number 000214131229.  (A true and correct copy of the NOD is attached hereto as Exhibit "A").  In recording the NOD, Defendants OCWEN and WESTERN charged thousands of dollars in legal and foreclosure fees to the underlying mortgage which were added to the arrearage and thereby prejudiced Plaintiffs' ability to reinstate the mortgage.   But for this prejudice, Plaintiffs would have been able to and would have reinstated the mortgage at this time.

36.    Pursuant to Civil Code §2924, the recording of a NOD marks commencement of California's non-judicial foreclosure process and constitutes an exercise of the power of sale bestowed within the Deed of Trust.  Essentially, the NOD begins foreclosure.

37.    The extensive passage of time during which Defendants OCWEN and WESTERN failed to communicate with Plaintiffs regarding alternatives to foreclosure constituted a substantial and unreasonable delay which contributes to the damages and harm caused as alleged herein.  Defendants OCWEN and WESTERN intended for these delays to prejudice the Plaintiffs' ability to reinstate their mortgage by adding legal and foreclosure fees to the serviceable debt thereby prejudicing the Plaintiffs' ability to reinstate the loan.

38.    On or about December 15, 2014 – after the NOD had already been recorded – Defendant OCWEN first contacted the Plaintiffs by telephone to discuss alternatives to foreclosure.  The result of the conversation was that

Plaintiffs and Defendant OCWEN agreed that OCWEN would provide a written reinstatement quote to the Plaintiffs and would also mail to their home a document which constituted an application for loan modification assistance.

39.    A reinstatement quote was received in the days that followed.  At that time, the Plaintiffs took continuing efforts over the next 90 days to save sufficient funds to reinstate the mortgage.  However, Plaintiffs were unable to save sufficient funds because of the addition of foreclosure and legal fees for the recording of the NOD to the arrearage[2].

40.    By approximately January 15, 2015, Plaintiffs received from Defendant OCWEN a form letter entitled "Request for Mortgage Assistance (RMA) / Hardship Affidavit".  The letter advised the Plaintiffs of some general loss mitigation information and requested that Plaintiffs complete and return the application to Defendant OCWEN in order that OCWEN review the Plaintiffs' for loan modification candidacy.  The correspondence advised that OCWEN would consider a loan modification application if provided 7 days or more prior to a scheduled foreclosure sale.

41.    Plaintiffs initially had some difficulty understanding the application process and the protocol for submission of the associated paperwork.

42.    On or about February 23, 2015 Defendant WESTERN, acting at the request of Defendant OCWEN who in turn acted as an agent for Defendant BENEFICIARY, recorded a Notice of Trustee's Sale ("NTS") against the subject property.   (A true and correct copy of the NTS is attached hereto as Exhibit "B").  The NTS set forth a trustee's sale date of March 27, 2015.

43.    Plaintiffs received a copy of the NTS shortly after recording.

44.    Upon receipt of the NTS, Plaintiffs again assessed their ability to

---

[2] Plaintiffs' effort to reinstate the mortgage was further thwarted by the recording of a Notice of Trustee's Sale as alleged *infra*.

reinstate the mortgage as they had been saving money in an effort to do so since the time of the NOD.  Once again, the inclusion of foreclosure and legal fees associated with the NTS had further prejudiced their ability to reinstate the mortgage.

45.    At this time, Plaintiffs were prompted to abandon the effort to reinstate the mortgage and instead pursue modification of the loan terms as their only means of retaining the subject property.  In order to do so, Plaintiffs enlisted the assistance of persons who had experience in applying and qualifying for loan modification.

46.    On March 16, 2015, Plaintiffs and persons hired by Plaintiffs for assistance contacted Defendant OCWEN at telephone number 800-746-2936[3] to discuss OCWEN's process of loan modification and application for same.

47.    During the March 16, 2015 phone call, Plaintiffs spoke with Tatsi, an employee and representative of Defendant OCWEN who described her title as an OCWEN Homeowner Assistance Specialist with authority from Defendant OCWEN to (a) postpone the threatened March 27, 2015 foreclosure sale in an effort to (b) allow for sufficient time for Plaintiffs to apply and qualify for loan modification.  Tatsi requested Plaintiffs' financial information over the phone in an effort to pre-qualify them for loan modification candidacy.  Plaintiffs provided all information requested by Tatsi over the phone during this conversation[4].

48.    After considering the provided financial information while still on the same phone call, Tatsi advised Plaintiffs that given the low unpaid principal

---

[3] This is the telephone number for "loss mitigation assistance" provided by Defendant OCWEN in its loan modification application materials.

[4] The requested information included all information related to the household income, household expenses, other loan obligations, status of employment of all household contributors and basis of financial hardship.

balance of the loan – which was approximately $75,000 – OCWEN and BENEFICIARY would prefer to modify the loan terms rather than foreclose and in doing so would re-calculate an amortization schedule which re-capitalized the mortgage arrears and provide Plaintiffs with new mortgage terms which would bring the loan current upon a review and approval of their application.  Tatsi advised that as a formality, the application materials should be returned to OCWEN by fax.

49.     During the March 16, 2015 phone call, Tatsi explained the process of applying for loan modification as follows:  (1) OCWEN determines whether it is willing to review a borrower for loan modification by determining its authority as provided by Defendant BENEFICIARY; (2) a complete application is returned by the borrower; and (3) OCWEN issues either an approval or denial for loan modification.  Tatsi assured Plaintiffs that they would be approved because of the pre-qualification assessment taken over the phone.

50.     Tatsi further explained that the documentation required by Defendant OCWEN to perfect and "complete" the Plaintiffs' loan modification application was as follows: a signed and dated Request for Modification Assistance form, documentary proof of Plaintiffs' franchise tax board assessment, a signed Tax Form 4506T-EZ, 2 bank statements, and a written statement concerning the Plaintiffs' financial hardship signed and dated by the Plaintiffs.

51.     Prior to concluding the March 16, 2015 telephone call, Tatsi placed Plaintiffs on a brief hold and advised that she would contact the "Postponement Department" in order to assure that the March 27, 2015 foreclosure sale was postponed.  Tatsi returned to the phone call and explained to the Plaintiffs that the foreclosure sale had been successfully postponed to April 29, 2015.  Tatsi reminded Plaintiffs that the postponement was processed in order to allow

Plaintiffs to submit the requested paperwork and thereby qualify for loan modification.  Tatsi further advised the Plaintiffs that in the event that Defendant OCWEN's review of any submitted materials prompted a request for further information, that the sale date would again be postponed and OCWEN's 7-day requirement waived in order to allow for Plaintiffs' responsive information to be received and reviewed.

52.    Plaintiffs and Defendant OCWEN coordinated and scheduled a "status appointment" on March 27, 2015 at 3:30pm.  The purpose of the appointment was to answer any lingering questions regarding the modification process or paperwork.

53.    On March 27, 2015 at 3:30 pm, Plaintiffs and OCWEN communicated by telephone for the status appointment as previously agreed. During this call, Plaintiffs spoke with "Jentle" an employee and representative of Defendant OCWEN who described her title as an OCWEN Homeowner Assistance Specialist with authority from Defendant OCWEN to discuss Plaintiffs' loan, foreclosure, and the modification process then underway.  The call was uneventful, and Plaintiffs merely advised Jentle that they were continuing to finalize the paperwork for submission to OCWEN.

54.    On April 16, 2015 Plaintiffs and an assistant supplied all filled-out, signed, and completed application materials which had been requested by Defendant OCWEN and its representative Tatsi to Defendant OCWEN. Plaintiffs supplied all such information by fax transmission to Defendant OCWEN at its dedicated fax number for receipt of loan modification application paperwork.  The paperwork submitted by Plaintiffs included all information requested by Defendant OCWEN and Tatsi during the March 16, 2015 telephone call including a signed and dated Request for Modification Assistance form, documentary proof of Plaintiffs' franchise tax board assessment, a signed Tax

Form 4506T-EZ, 2 bank statements, and a written statement concerning the Plaintiffs' financial hardship signed and dated by the Plaintiffs[5]. (A redacted copy of the April 16, 2015 application is attached hereto as Exhibit "C").[6] [7]

55.    The April 16, 2015 application for loan modification was the Plaintiffs' first ever application for a first lien loan modification.  Prior to this application, Plaintiffs had never previously been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification or any loan modification of any kind at any time in the past.

56.    On April 18, 2015, Plaintiffs and an assistant contacted Defendant OCWEN at telephone number 800-746-2936 in order to confirm that Plaintiffs' application materials had been received and were complete.  Plaintiffs spoke with Tatsi during this telephone call.  Tatsi is and was an employee and representative of Defendant OCWEN who described her title as an OCWEN Homeowner Assistance Specialist with authority from Defendant OCWEN to assist Plaintiffs with all matters concerning their application for loan modification.

57.    During the April 18, 2015 phone call, Tatsi confirmed that all documents required by OCWEN in order to complete the Plaintiffs' loan modification application had been received on April 16, 2015 and were considered timely as they had been provided within the 7-day timeframe required by OCWEN which had been communicated to Plaintiffs previously.

_____

[5] Plaintiffs had separately prepared a written breakdown of monthly expenses and Defendant OCWEN expressly stated to Plaintiffs that their written breakdown of monthly expenses could be submitted as an attachment to their request the "Request for Modification Assistance" form and would stand in the place of their "Monthly Expenses" as required under Section 6 of the "Request for Modification Assistance".

[6] All facsimile timestamps appearing on the top margins of these documents reflect the dates that Plaintiffs provided the documents to counsel in anticipation of this litigation.

[7] Plaintiffs have redacted their submitted bank statements in their entirety because of the sensitive financial nature of the matters disclosed therein.

Tatsi confirmed that the application was now pending within OCWEN's systems and a written determination would be provided to Plaintiffs at their residence once OCWEN's final review had been completed.

58.   Also during the April 18, 2015 phone call, Tatsi acknowledged that the foreclosure sale – which had been previously postponed to April 29, 2015 – would again be postponed to May 29, 2015 on the basis that Defendant OCWEN wanted additional time to be able to determine the final figures of Plaintiffs' modified loan and issue its written approval.   Tatsi confirmed that she had authority bestowed by Defendant OCWEN to postpone the foreclosure sale for this reason.  As before, Tatsi placed Plaintiffs on a brief hold and returned shortly thereafter and confirmed that the foreclosure sale had been successfully postponed to May 29, 2015.

59.   A second status appointment was scheduled for May 3, 2015 at 2:30pm.  The purpose of the appointment was to provide an opportunity for Plaintiffs to receive an update on the status of OCWEN's pending determination on Plaintiffs' loan modification candidacy and ascertain a time by which that determination would be rendered.

60.   Had Plaintiffs known that the foreclosure sale was not, in fact, postponed to May 29, 2015 and remained set to occur on April 29, 2015, Plaintiffs would have taken immediate legal action to enjoin the foreclosure sale pursuant to California Civil Code Section 2924.12 subd. (a) which provides a private right of action for borrowers who have submitted a complete loan modification application to their lender to enjoin a foreclosure sale until the approval or denial of their loan modification application is rendered.  (See Cal. Civ. Code §2924.12(a)).  Specifically, Plaintiffs would have filed a Complaint against the named Defendants alleging a violation of California Civil Code Section 2923.6 and filed an ex parte application for a Temporary Restraining

Order and Order to Show Cause Re: Preliminary Injunction seeking to enjoin the foreclosure sale on the basis that Plaintiffs' loan modification application had been submitted to the OCWEN, deemed "complete" by OCWEN, and was pending OCWEN's approval or denial.

61.    Legal action taken by the Plaintiffs pursuant to California Civil Code Sections 2923.6 and 2924.12 subd. (a) would have been non-frivolous and would have succeeded in enjoining the foreclosure sale.  The foreclosure sale would not have occurred had Plaintiffs taken the foregoing legal steps to enjoin it.

62.    On April 22, 2015, Plaintiffs and an assistant again contacted Defendant OCWEN to confirm that all application materials had been deemed "complete" and that OCWEN would issue a determination prior to completing a trustee's sale of the subject property.  During this call, Plaintiffs spoke with "Tabu", an employee and representative of Defendant OCWEN who described his title as an OCWEN Homeowner Assistance Specialist with authority from Defendant OCWEN to discuss and make representations on the status of Plaintiffs' loan modification application and foreclosure.  Tabu advised the Plaintiffs that Tatsi was unavailable, but that Tabu had access to the same pertinent information and could assist the Plaintiffs with their inquiry.  Tabu confirmed that the documentation provided by Plaintiffs on April 16, 2015 constituted the complete application requested by OCWEN and that the documentation was received prior to the aforementioned 7-day cutoff.

63.    On April 27, 2015, Plaintiffs and an assistant again contacted Defendant OCWEN to confirm that all application materials had been deemed "complete" and that OCWEN would issue a determination prior to completing a trustee's sale of the subject property.  During this call, Plaintiffs spoke with "Tabu", an employee and representative of Defendant OCWEN who described

his title as an OCWEN Homeowner Assistance Specialist with authority from Defendant OCWEN.   Tabu requested that Plaintiffs re-submit a bank statement for FRANK CORNEJO's business for the month of January 2015. Plaintiffs advised Tabu that the requested bank statement had been previously provided. Tabu advised that it would be safest for Plaintiffs to provide it again by fax transmission.  Plaintiffs and an assistant faxed the requested bank statement to Tabu while remaining on the phone to confirm that the transmission completed successfully.   Tabu confirmed receipt of the bank statement. Tabu further advised that because a postponement of the sale had been processed to May 29, 2015, the resubmission of this document was considered timely under OCWEN's 7-day cutoff policy.  Tabu confirmed that the loan modification application remained pending within OCWEN's systems and that OCWEN would issue a determination in advance of the scheduled foreclosure sale.

64.    Although Defendant OCWEN's representatives Tatsi and Tabu had confirmed the completeness of Plaintiffs' loan modification application documents over the phone, Defendant OCWEN failed to send a <u>written</u> acknowledgement of receipt of Plaintiff's submitted loan modification materials within five days of receipt.

65.    Plaintiffs had satisfied all document requests made by Defendant OCWEN with responsive documentation within the timeframes provided by Defendant OCWEN and its representatives.  There were no document requests from Defendant OCWEN which remained outstanding on April 29, 2015.

66.    At all times material, Plaintiffs' loan modification application materials were "complete" and in the possession of Defendant OCWEN. Plaintiffs know this to be true because receipt of all documents was confirmed by Defendant OCWEN and its representatives Tatsi and Tabu, and because Plaintiffs had provided responsive documentation to all document requests made

by Defendant OCWEN and within the timeframes imposed by Defendant OCWEN such that there were no document requests outstanding.

67.    On April 29, 2015 and unbeknownst to the Plaintiffs, Defendant OCWEN and WESTERN caused the subject property to be auctioned at trustee's sale and sold to a third-party purchaser, KAI CZAK.

68.    On or about April 30, 2015, one day after the completed trustee's sale, Defendant OCWEN mailed Plaintiffs a written acknowledgement of having received their loan modification application package.  (A true and correct copy of the April 30, 2015 letter is attached hereto as Exhibit "D").  Plaintiffs allege that because no intervening document requests had been made, that the application was "complete" at all times material and prior to the conducted trustee's sale.  In fact, the loan modification application was confirmed to be "complete" and "pending a determination" at all times prior as confirmed by Tatsi and Tabu in their capacity as Homeowner Assistance Specialists within the loss mitigation department of Defendant OCWEN.

69.    On or about May 4, 2015, Defendant OCWEN mailed to Plaintiffs a written acknowledgement which documented that their application was in fact "complete".  (A true and correct copy of the May 4, 2015 letter is attached hereto as Exhibit "E").  Plaintiffs allege that because no intervening document requests had been made, that the application was "complete" at all times material and prior to the conducted trustee's sale.  In fact, the loan modification application was confirmed to be "complete" and "pending a determination" at all times prior as confirmed by Tatsi and Tabu in their capacity as Homeowner Assistance Specialists within the loss mitigation department of Defendant OCWEN.

70.    On May 7, 2015, the third-party purchaser, KAI CZAK recorded its trustee's deed upon sale.  (A true and correct copy of the trustee's deed upon sale is attached hereto as Exhibit "F").

71.    On or about May 14, 2015, Defendant OCWEN issued a written approval of Plaintiffs' loan modification application and candidacy which included a formal "Non-HAMP Loan Modification Agreement".  (A true and correct copy of the May 14, 2015 approval letter is attached hereto as Exhibit "G").   Plaintiffs allege that the approval letter and agreement constitutes evidence that they were approved and qualified for loan modification at all times material to this action including all times prior to the April 29, 2015 trustee's sale as no intervening document requests had been made and indeed OCWEN rendered its approval based on documentation provided by the Plaintiff in accordance with the requests set forth above.   By the time of the approval, a trustee's deed upon sale had already been delivered to the third-party purchaser and Plaintiffs had already lost title to the subject property.

72.    The trustee's sale was conducted at such a time when Plaintiffs' complete application for loan modification was pending a determination on acceptance or denial, in violation of Cal. Civ. Code §2923.6.

73.    A trustee's deed upon sale was delivered by Defendants OCWEN and WESTERN to the third-party purchaser at such a time when Plaintiffs' complete application for loan modification was pending a determination on acceptance or denial, in violation of Cal. Civ. Code §2923.6.

74.    The trustee's deed upon sale was recorded at such a time when Plaintiffs' complete application for loan modification was pending a determination on acceptance or denial, in violation of Cal. Civ. Code §2923.6.

75.    The combined failures of the Defendants and their representatives to fail to remove, redact, retract, and cause to be void, all foreclosure notices and foreclosure dates associated with the subject property is the product of willful, intentional, despicable and deceitful conduct.

76.    There is no adequate remedy at law which would compensate

Plaintiffs CORNEJO for the loss of the subject property, which as a matter of law is unique.

77.    On or about May 20, 2015, Plaintiffs accepted the terms of the proposed modification from Defendant OCWEN by signing, notarizing and returning the "Non-HAMP Loan Modification Agreement" agreement to Defendant OCWEN in accordance with OCWEN's procedures for accepting, signing, and returning same.   When returning the signed and notarized agreement, Plaintiffs also sent the required payment of $817.29 by cashier's check.  Defendant OCWEN has retained the $817.29 payment, even though the loan was extinguished through the foreclosure sale and Plaintiffs' lost title and possession to the property through the foreclosure sale.  (A true and correct copy of the accepted "Non-HAMP Loan Modification Agreement" and payment thereon is attached hereto as Exhibit "H").

78.    On August 11, 2015, a writ of possession was issued by the Kern County Superior Court in Case No. S-1500-CL-291623.  The writ was enforced against the Plaintiffs and they were dispossessed by the local sheriff.

79.    Plaintiffs have suffered and will continue to suffer significant damages as a result of the conduct of these Defendants and has suffered damages in the amount of over $500,000 through the loss of valuable real and personal property, credit damage, emotional distress, pain, suffering, and other damages which will be proven at the trial of this matter.

80.    This action seeks recovery of monetary damages against the offending Defendants as conferred by state statute codified at Civil Code §2924.12(b).  Plaintiffs allege that the amount of recoverable damages in this action would serve as a complete offset to the underlying loan balance, and hereby pledge any and all such monetary sums as necessary to satisfy any outstanding loan obligations from the judgment to be applied to any underlying

loan balance.

81.     At all times material to this matter and all filings, Plaintiffs CORNEJO have remained ready, willing, and able to tender payment to the foreclosing Defendants as required by all agreements entered into between the parties.

82.     At trustee's sale, the subject property sold for an amount in excess of the mortgage indebtedness.  There are no other liens.  As a result, Plaintiffs are entitled to the surplus proceeds resulting from the trustee's sale which have, to this day, not been provided to the Plaintiffs or interpleaded with any Court.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

1

**FIRST CAUSE OF ACTION**

2

**VIOLATIONS OF CAL. CIV. CODE § 2923.6(c)**

3

**(Against Defendant OCWEN, BENEFICIARY and WESTERN)**

4    83.    Plaintiffs repeat and re-allege each of the preceding Paragraphs and

5    incorporates the same as if set forth herein at length.

6    84.    Effective January 1, 2013, SB900, or the California Homeowner

7    Bill of Rights, amended Cal. Civ. Code §2923.6 and specifically noted that "[i]t

8    is the intent of the Legislature that the mortgage servicer offer the borrower a

9    loan modification or workout plan if such a modification or plan is consistent

10   with its contractual or other authority." Cal. Civ. Code §2923.6(b).

11   85.    Pursuant to Cal. Civ. Code §2923.6(c), if a borrower submits a

12   complete application for a first lien loan modification offered by, or through, the

13   borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee,

14   beneficiary, or authorized agent shall not record a notice of default or notice of

15   sale, **or conduct a trustee's sale, while the complete first lien loan**

16   **modification application is pending.**

17   86.    The formerly commonplace practice of pursuing foreclosure while

18   a borrower's first lien loan modification application is pending is known as

19   "dual-tracking". By and through SB900 and the amended Cal. Civ. Code

20   §2923.6(c), the California Legislature has outlawed this practice.

21   87.    On April 16, 2015 Plaintiffs and an assistant supplied all filled-out,

22   signed, and completed application materials which had been requested by

23   Defendant OCWEN and its representative Tatsi to Defendant OCWEN.

24   Plaintiffs supplied all such information by fax transmission to Defendant

25   OCWEN at its dedicated fax number for receipt of loan modification application

26   paperwork. The paperwork submitted by Plaintiffs included all information

27   requested by Defendant OCWEN and Tatsi during the March 16, 2015 telephone

28

call including a signed and dated Request for Modification Assistance form, documentary proof of Plaintiffs' franchise tax board assessment, a signed Tax Form 4506T-EZ, 2 bank statements, and a written statement concerning the Plaintiffs' financial hardship signed and dated by the Plaintiffs[8]. (A redacted copy of the April 16, 2015 application is attached hereto as Exhibit "C")[9]. [10]

88.   The April 16, 2015 application for loan modification was the Plaintiffs' first ever application for a first lien loan modification.  Prior to this application, Plaintiffs had never previously been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification or any loan modification of any kind at any time in the past.  Therefore, California Civil Code Section 2923.6(g) is inapplicable.

89.   On April 18, 2015, Plaintiffs and an assistant contacted Defendant OCWEN at telephone number 800-746-2936 in order to confirm that Plaintiffs' application materials had been received and were complete.  Plaintiffs spoke with Tatsi during this telephone call.   Tatsi is and was an employee and representative of Defendant OCWEN who described her title as an OCWEN Homeowner Assistance Specialist with authority from Defendant OCWEN to assist Plaintiffs with all matters concerning their application for loan modification.

90.   During the April 18, 2015 phone call, Tatsi confirmed that all documents required by OCWEN in order to complete the Plaintiffs' loan

---

[8] Plaintiffs had separately prepared a written breakdown of monthly expenses and Defendant OCWEN expressly stated to Plaintiffs that their written breakdown of monthly expenses could be submitted as an attachment to their request the "Request for Modification Assistance" form and would stand in the place of their "Monthly Expenses" as required under Section 6 of the "Request for Modification Assistance".

[9] All facsimile timestamps appearing on the top margins of these documents reflect the dates that Plaintiffs provided the documents to counsel in anticipation of this litigation.

[10] Plaintiffs have redacted the bank statements in their entirety due to the sensitive financial nature of same.

modification application had been received on April 16, 2015 and were considered timely as they had been provided within the 7-day timeframe required by OCWEN which had been communicated to Plaintiffs previously. Tatsi confirmed that the application was now pending within OCWEN's systems and a written determination would be provided to Plaintiffs at their residence once OCWEN's final review had been completed and prior to any foreclosure sale of the subject property.

91.    Also during the April 18, 2015 phone call, Tatsi acknowledged that the foreclosure sale – which had been previously postponed to April 29, 2015 – would again be postponed to May 29, 2015 on the basis that Defendant OCWEN wanted additional time to be able to determine the final figures of Plaintiffs' modified loan and issue its written approval.  Tatsi confirmed that she had authority bestowed by Defendant OCWEN to postpone the foreclosure sale for this reason.  As before, Tatsi placed Plaintiffs on a brief hold and returned shortly thereafter and stated that the foreclosure sale had been successfully postponed to May 29, 2015.

92.    Had Plaintiffs known that the foreclosure sale was not, in fact, postponed to May 29, 2015 and remained set to occur on April 29, 2015, Plaintiffs would have taken immediate legal action to enjoin the foreclosure sale pursuant to California Civil Code Section 2924.12 subd. (a) which provides a private right of action for borrowers who have submitted a complete loan modification application to their lender to enjoin a foreclosure sale until the approval or denial of their loan modification application is rendered.  (See Cal. Civ. Code §2924.12(a)).  Specifically, Plaintiffs would have filed a Complaint against the named Defendants alleging a violation of California Civil Code Section 2923.6 and filed an ex parte application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction seeking to enjoin

the foreclosure sale on the basis that Plaintiffs' loan modification application had been submitted to the OCWEN, deemed "complete" by OCWEN, and was pending OCWEN's approval or denial.

93.    Legal action taken by the Plaintiffs pursuant to California Civil Code Sections 2923.6 and 2924.12 subd. (a) would have been non-frivolous and would have succeeded in enjoining the foreclosure sale.  The foreclosure sale would not have occurred had Plaintiffs taken the foregoing legal steps to enjoin it.  The violation of California Civil Code Section 2923.6 was therefore material.

94.    The violation of California Civil Code Section 2923.6 is further made material by the fact that had Defendant OCWEN completed its review of the Plaintiffs' loan modification candidacy prior to the scheduled trustee's sale, Plaintiffs would have obtained the final loan modification documents, accepted, signed and notarized them and returned the required payment in advance of the scheduled trustee's sale and thereby would have saved their home.  Instead, they were stripped of title and dispossessed of the property despite being qualified for loan modification all along.

95.    On April 22, 2015, Plaintiffs and an assistant again contacted Defendant OCWEN to confirm that all application materials had been deemed "complete" and that OCWEN would issue a determination prior to completing a trustee's sale of the subject property.  During this call, Plaintiffs spoke with "Tabu", an employee and representative of Defendant OCWEN who described his title as an OCWEN Homeowner Assistance Specialist with authority from Defendant OCWEN to discuss and make representations on the status of Plaintiffs' loan modification application and foreclosure.  Tabu advised the Plaintiffs that Tatsi was unavailable, but that Tabu had access to the same pertinent information and could assist the Plaintiffs with their inquiry.  Tabu confirmed that the documentation provided by Plaintiffs on April 16, 2015

constituted the complete application requested by OCWEN and that the documentation was received prior to the aforementioned 7-day cutoff.

96.    On April 27, 2015, Plaintiffs and an assistant again contacted Defendant OCWEN to again confirm that all application materials had been deemed "complete" and that OCWEN would issue a determination prior to completing a trustee's sale of the subject property.  During this call, Plaintiffs spoke with "Tabu", an employee and representative of Defendant OCWEN who described his title as an OCWEN Homeowner Assistance Specialist with authority from Defendant OCWEN.    Tabu requested that Plaintiffs re-submit a bank statement for FRANK CORNEJO's business for the month of January 2015. Plaintiffs advised Tabu that the requested bank statement had been previously provided on April 16, 2015.  Tabu advised that it would be safest for Plaintiffs to provide it again by fax transmission.  Plaintiffs and an assistant faxed the requested bank statement to Tabu while remaining on the phone to confirm that the transmission completed successfully.  Tabu confirmed receipt of the bank statement. Tabu further advised that because a postponement of the sale had been processed to May 29, 2015, the resubmission of this document was considered timely under OCWEN's 7-day cutoff policy.  Tabu confirmed that the loan modification application remained pending within OCWEN's systems and that OCWEN would issue a determination in advance of the scheduled foreclosure sale.

97.    Plaintiffs had satisfied all document requests made by Defendant OCWEN with responsive documentation within the timeframes provided by Defendant OCWEN and its representatives.  There were no document requests from Defendant OCWEN which remained outstanding on April 29, 2015.

98.    At all times material, Plaintiffs' loan modification application materials were "complete" and in the possession of Defendant OCWEN.

Plaintiffs know this to be true because receipt of all documents was confirmed by Defendant OCWEN and its representatives Tatsi and Tabu, and because Plaintiffs had provided responsive documentation to all document requests made by Defendant OCWEN and within the timeframes imposed by Defendant OCWEN such that there were no document requests outstanding.

99.    While Plaintiffs' complete loan modification application remained pending, Defendants OCWEN and WESTERN caused the subject property to be sold at trustee's sale on April 29, 2015 in violation of Civil Code §2923.6(c). The property was sold to a third-party purchaser and a Trustee's Deed Upon Sale was delivered and recorded.

100.    On or about May 4, 2015, Defendant OCWEN mailed to Plaintiffs a written acknowledgement which documented that their application was in fact "complete".  (See Exhibit "E").  Plaintiffs allege that because no intervening document requests had been made, that the application was "complete" at all times material and prior to the conducted trustee's sale.  In fact, the loan modification application was confirmed to be "complete" and "pending a determination" at all times prior as confirmed by Tatsi and Tabu in their capacity as Homeowner Assistance Specialists within the loss mitigation department of Defendant OCWEN.

101.    On May 7, 2015, the third-party purchaser, KAI CZAK recorded its trustee's deed upon sale.  (See Exhibit "F").

102.    On or about May 14, 2015, Defendant OCWEN issued a written approval of Plaintiffs' loan modification application and candidacy which included a formal "Non-HAMP Loan Modification Agreement".  (See Exhibit "G").  Plaintiffs allege that the approval letter and agreement constitutes evidence that they were approved and qualified for loan modification at all times material to this action including all times prior to the April 29, 2015 trustee's

sale as no intervening document requests had been made and indeed OCWEN rendered its approval based on documentation provided by the Plaintiff in accordance with the requests set forth above.  By the time of the approval, a trustee's deed upon sale had already been delivered to the third-party purchaser and Plaintiffs had already lost title to the subject property.

103.   The trustee's sale was conducted at such a time when Plaintiffs' complete application for loan modification was pending a determination on acceptance or denial, in violation of Cal. Civ. Code §2923.6.

104.   A trustee's deed upon sale was delivered by Defendants OCWEN and WESTERN to the third-party purchaser at such a time when Plaintiffs' complete application for loan modification was pending a determination on acceptance or denial, in violation of Cal. Civ. Code §2923.6.

105.   The trustee's deed upon sale was recorded at such a time when Plaintiffs' complete application for loan modification was pending a determination on acceptance or denial, in violation of Cal. Civ. Code §2923.6.

106.   In sum, these Defendants have been "dual-tracked" the foreclosure of Plaintiffs' home while their completed loan modification application was pending either approval or denial in direct contravention of Cal. Civ. Code §2923.6(c).

107. Plaintiffs have been directly and proximately damaged by Defendants' failure to comply with Cal. Civ. Code §2923.6(c) in that Plaintiffs were not provided with the result of their application for loan modification prior to the completed trustee's sale of the subject property.  At all times material, Plaintiffs were qualified for the loan modification for which they applied as confirmed by subsequent documents provided to them by Defendant OCWEN. By being deprived of the result of their application until after the trustee's sale, Plaintiffs lost the opportunity to keep their home through loan modification

despite being qualified for same.

108.   Plaintiffs have suffered and will continue to suffer significant damages as a result of the conduct of these Defendants and has suffered damages in the amount of over $500,000 through the loss of valuable real and personal property, credit damage, emotional distress, pain, suffering, and other damages which will be proven at the trial of this matter.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## SECOND CAUSE OF ACTION

## VIOLATIONS OF CAL. CIV. CODE §2924.10

### (Against Defendant OCWEN)

109.     Plaintiffs repeats and re-alleges each of the preceding Paragraphs and incorporates the same as if set forth herein at length.

110.     Effective January 1, 2013, SB900, or the California Homeowner Bill of Rights, amended Cal. Civ. Code §2923.6 and specifically noted that "[i]t is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority."  Cal. Civ. Code §2923.6(b).

111.     Pursuant to Civil Code §2924.10(a), "[w]hen a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt."  Cal. Civ. Code §2924.10(a).  The written acknowledgment must include a description of the loan modification process, further deadlines related to the process, expiration dates of documents, and any deficiencies with the loan modification application as submitted.

112.   On March 16, 2015, Plaintiffs and persons hired by Plaintiffs for assistance contacted Defendant OCWEN at telephone number 800-746-2936[11] to discuss OCWEN's process of loan modification and application for same.

113.     During the March 16, 2015 phone call, Plaintiffs spoke with Tatsi, an employee and representative of Defendant OCWEN who described her title as an OCWEN Homeowner Assistance Specialist with authority from Defendant

---

[11] This is the telephone number for "loss mitigation assistance" provided by Defendant OCWEN in its loan modification application materials.

OCWEN to (a) postpone the threatened March 27, 2015 foreclosure sale in an effort to (b) allow for sufficient time for Plaintiffs to apply and qualify for loan modification.  Tatsi requested Plaintiffs' financial information over the phone in an effort to pre-qualify them for loan modification candidacy.  Plaintiffs provided all information requested by Tatsi over the phone during this conversation[12].

114.   Tatsi further explained that the documentation required by Defendant OCWEN to perfect and "complete" the Plaintiffs' loan modification application was as follows: a signed and dated Request for Modification Assistance form, documentary proof of Plaintiffs' franchise tax board assessment, a signed Tax Form 4506T-EZ, 2 bank statements, and a written statement concerning the Plaintiffs' financial hardship signed and dated by the Plaintiffs.

115.   Prior to concluding the March 16, 2015 telephone call, Tatsi placed Plaintiffs on a brief hold and advised that she would contact the "Postponement Department" in order to assure that the March 27, 2015 foreclosure sale was postponed.  Tatsi returned to the phone call and explained to the Plaintiffs that the foreclosure sale had been successfully postponed to April 29, 2015.  Tatsi reminded Plaintiffs that the postponement was processed in order to allow Plaintiffs to submit the requested paperwork and thereby qualify for loan modification.  Tatsi further advised the Plaintiffs that in the event that Defendant OCWEN's review of any submitted materials prompted a request for further information, that the sale date would again be postponed and OCWEN's 7-day requirement waived in order to allow for Plaintiffs' responsive information to be received and reviewed.

---

[12] The requested information included all information related to the household income, household expenses, other loan obligations, status of employment of all household contributors and basis of financial hardship.

116.    Plaintiffs submitted, via facsimile transmission, a completed loan modification application with all accompanying financial documents to Defendant OCWEN on April 16, 2015.

117.    The submitted application was that which is made publicly available by Defendant OCWEN for processing loan modification requests.

118.    The application was submitted to Defendant OCWEN by facsimile transmission at fax numbers provided by Defendant OCWEN to Plaintiffs.

119.    Defendant OCWEN and WESTERN failed to provide Plaintiffs with written acknowledgement or any disclosures related to the loan modification application or the process within five days of receipt as required by Civil Code §2924.10.

120.    The loan modification process was disrupted by OCWEN's delay in providing a written acknowledgement of the submission of documents. Indeed, Plaintiffs written confirmation of the complete application having been received would allow Plaintiffs to take, and Plaintiffs would have taken, legal action to enjoin the foreclosure sale pursuant to California Civil Code Section 2924.12 subd. (a) which provides a private right of action for borrowers who have submitted a complete loan modification application to their lender to enjoin a foreclosure sale until the approval or denial of their loan modification application is rendered.   (See Cal. Civ. Code §2924.12(a)).   Specifically, Plaintiffs would have filed a Complaint against the named Defendants alleging a violation of California Civil Code Section 2923.6 and filed an ex parte application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction seeking to enjoin the foreclosure sale on the basis that Plaintiffs' loan modification application had been submitted to the OCWEN, deemed "complete" by OCWEN, and was pending OCWEN's approval or

1   denial.

2       121.    Legal action taken by the Plaintiffs pursuant to California Civil

3   Code Sections 2923.6 and 2924.12 subd. (a) would have been non-frivolous and

4   would have succeeded in enjoining the foreclosure sale.  The foreclosure sale

5   would not have occurred had Plaintiffs taken the foregoing legal steps to enjoin

6   it.

7       122.    Instead, these Defendants caused the subject property to be

8   auctioned at trustee's sale to a third-party purchaser on April 29, 2015 without

9   providing the necessary written acknowledgement and disclosures to the

10  Plaintiffs.

11      123.    Plaintiffs has been directly and proximately damaged by

12  Defendants' failure to comply with Cal. Civ. Code §2924.10 in that Plaintiffs'

13  loan modification process was disrupted by not receiving notice of the

14  completeness of their application or, alternatively, notice of any additional

15  documents required.  As a result, Plaintiffs' ability to retain the subject property

16  through loan modification was prejudiced.  The inability to fully investigate

17  these avenues of preserving the subject property from sale has caused Plaintiffs

18  irreparable injury.  The subject property was sold at auction to a third-party

19  purchaser despite the fact that Plaintiffs had qualified, at all times material, for

20  a loan modification which would have saved their home from foreclosure.

21      124.    Plaintiffs have suffered and will continue to suffer significant

22  damages as a result of the conduct of these Defendants and has suffered damages

23  in the amount of over $500,000 through the loss of valuable real and personal

24  property, credit damage, emotional distress, pain, suffering, and other damages

25  which will be proven at the trial of this matter.

26  //

27  //

28

1

2

3

## THIRD CAUSE OF ACTION
## VIOLATIONS OF CAL. CIV. CODE §2923.55
### (Against Defendants OCWEN)

4      125.   Plaintiffs repeat and re-allege each of the preceding Paragraphs and

5    incorporate the same as if set forth herein at length.

6      126.   Pursuant to <u>Civil Code</u> §2924, the recording of a Notice of Default

7    marks commencement of California's non-judicial foreclosure process.

8      127.   Pursuant to <u>Civil Code</u> §2923.55, a mortgagee, trustee, beneficiary,

9    or authorized agent may not file a notice of default pursuant to Section 2924

10   until 30 days after establishing contact with borrowers in order to discuss

11   alternatives to foreclosure.

12     128.   Neither Defendant OCWEN nor any co-Defendant contacted or

13   made any effort to contact the Plaintiffs in the period that followed their

14   mortgage default until after recording a Notice of Default ("NOD") against the

15   subject property.

16     129.   At all times material, Defendant OCWEN was in possession of

17   Plaintiffs' contact telephone numbers, email addresses, and mailing address.

18     130.   Prior to recording the NOD, Defendant OCWEN did not send a

19   written statement to the borrowers stating "that if the borrower is a

20   servicemember or a dependent of a servicemember, he or she may be entitled to

21   certain protections under the federal Servicemembers Civil Relief Act (50 U.S.

22   C. Appen. Sec. 501 et seq.) regarding the servicemember's interest rate and the

23   risk of foreclosure, and counseling for covered servicemembers that is available

24   at agencies such as Military OneSource and Armed Forces Legal Assistance."

25     131.   Had Defendant OCWEN sent a statement to Plaintiffs concerning

26   Plaintiff FRANK CORNEJO's entitlements as a servicemember, Plaintiffs

27   would have been made aware of these entitlements and would have pursued

28

them.  At all times material, Plaintiffs have been entitled to the benefits of the Servicemembers Civil Relief Act which include mortgage interest rate reduction and credit counseling.   Pursuit of Plaintiffs' entitlements under the Servicemembers Civil Relief Act would have prevented the ultimate foreclosure of the subject property, because Plaintiffs would have obtained the credit counseling necessary to budget their monthly finances to be able to reinstate and remain current on their mortgage obligation.

132.   Prior to recording the NOD, Defendant OCWEN did not contact or attempt to contact the Plaintiffs in person or by telephone in order to assess their financial situation and explore options for the borrowers to avoid foreclosure.

133.   Plaintiffs know that Defendant OCWEN did not attempt to contact them by telephone because Plaintiff FRANK CORNEJO is disabled and is always near the telephone.   Had Defendant OCWEN attempted to contact Plaintiffs by telephone, a member of the household would have picked up the phone and would have been receptive to the information regarding alternatives to foreclosure.

134.  Had Defendant OCWEN contacted or attempted to contact the Plaintiffs to assess their financial situation and to explore options to avoid foreclosure, Plaintiffs would have either applied and qualified for loan modification or would have reinstated the loan.   At all times material hereto, Plaintiffs were in fact qualified for loan modification.

135.  Because Defendant OCWEN failed to initiate contact prior to recording a NOD, Plaintiffs lost an opportunity to reinstate the loan before thousands of dollars in legal and foreclosure fees were assessed and added to the underlying mortgage balance through the recording of an NOD.  Plaintiffs would have reinstated the mortgage before the NOD was recorded if they were contacted by Defendant OCWEN as required under Civil Code §§2923.55.

136. On or about October 22, 2014, Defendants OCWEN and WESTERN recorded a NOD against the subject property as instrument number 000214131229. (See Exhibit "A"). In recording the NOD, Defendants OCWEN and WESTERN charged thousands of dollars in legal and foreclosure fees to the underlying mortgage which were added to the arrearage and thereby prejudiced Plaintiffs' ability to reinstate the mortgage.   But for this prejudice, Plaintiffs would have been able to and would have reinstated the mortgage at this time.

137. The "California Declaration of Compliance" which accompanied the NOD is false.

138. Plaintiffs have been directly and proximately damaged by Defendants' failure to comply with Civil Code §2923.55 in that the Plaintiffs lost the opportunity to reinstate the mortgage prior to the recording of the NOD which, when recorded, added thousands of dollars in foreclosure and legal fees to the underlying mortgage balance and thereby prejudiced the Plaintiffs' ability to reinstate the same.  Furthermore, Plaintiffs lost the opportunity to apply for and qualify for Servicemembers Relief, which would have provided the necessary interest rate reduction and credit counseling necessary for the Plaintiffs to budget their finances and remain current on their mortgage. Plaintiffs' inability to investigate these avenues of preserving the subject property from sale caused Plaintiffs to suffer prejudice and irreparable injury in that the subject property was thereafter sold at Trustee's Sale despite the fact that pre-NOD outreach requirements had not been made by the foreclosing entities.

139. Plaintiffs have suffered and will continue to suffer significant damages as a result of the conduct of these Defendants and has suffered damages in the amount of over $500,000 through the loss of valuable real and personal property, credit damage, emotional distress, pain, suffering, and other damages

1   which will be proven at the trial of this matter.

2   //

3   //

4   //

5   //

6   //

7   //

8   //

9   //

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOURTH CAUSE OF ACTION**

**FRAUDULENT MISREPRESENTATION**

**(Against Defendant OCWEN and BENEFICIARY)**

140.   Plaintiffs repeat and re-allege each of the preceding Paragraphs and incorporate the same as if set forth herein at length.

141.   On March 16, 2015, Plaintiffs and persons hired by Plaintiffs for assistance contacted Defendant OCWEN at telephone number 800-746-2936[13] to discuss OCWEN's process of loan modification and application for same.

142.   During the March 16, 2015 phone call, Plaintiffs spoke with Tatsi, an employee and representative of Defendant OCWEN who described her title as an OCWEN Homeowner Assistance Specialist with authority from Defendant OCWEN to (a) postpone the threatened March 27, 2015 foreclosure sale in an effort to (b) allow for sufficient time for Plaintiffs to apply and qualify for loan modification.  Tatsi requested Plaintiffs' financial information over the phone in an effort to pre-qualify them for loan modification candidacy.   Plaintiffs provided all information requested by Tatsi over the phone during this conversation[14].

143.   After considering the provided financial information while still on the same phone call, Tatsi advised Plaintiffs that given the low unpaid principal balance of the loan – which was approximately $75,000 – OCWEN and BENEFICIARY would prefer to modify the loan terms rather than foreclose and in doing so would re-calculate an amortization schedule which re-capitalized the mortgage arrears and provide Plaintiffs with new mortgage terms which would

---

[13] This is the telephone number for "loss mitigation assistance" provided by Defendant OCWEN in its loan modification application materials.

[14] The requested information included all information related to the household income, household expenses, other loan obligations, status of employment of all household contributors and basis of financial hardship.

bring the loan current upon a review and approval of their application.  Tatsi advised that as a formality, the application materials should be returned to OCWEN by fax.

144.   During the March 16, 2015 phone call, Tatsi explained the process of applying for loan modification as follows:  (1) OCWEN determines whether it is willing to review a borrower for loan modification by determining its authority as provided by Defendant BENEFICIARY; (2) a complete application is returned by the borrower; and (3) OCWEN issues either an approval or denial for loan modification.  Tatsi assured Plaintiffs that they would be approved because of the pre-qualification assessment taken over the phone.

145. Tatsi further explained that the documentation required by Defendant OCWEN to perfect and "complete" the Plaintiffs' loan modification application was as follows: a signed and dated Request for Modification Assistance form, documentary proof of Plaintiffs' franchise tax board assessment, a signed Tax Form 4506T-EZ, 2 bank statements, and a written statement concerning the Plaintiffs' financial hardship signed and dated by the Plaintiffs.

146.   Prior to concluding the March 16, 2015 telephone call, Tatsi placed Plaintiffs on a brief hold and advised that she would contact the "Postponement Department" in order to assure that the March 27, 2015 foreclosure sale was postponed.  Tatsi returned to the phone call and explained to the Plaintiffs that the foreclosure sale had been successfully postponed to April 29, 2015.  Tatsi reminded Plaintiffs that the postponement was processed in order to allow Plaintiffs to submit the requested paperwork and thereby qualify for loan modification.  Tatsi further advised the Plaintiffs that in the event that Defendant OCWEN's review of any submitted materials prompted a request for further information, that the sale date would again be postponed and OCWEN's 7-day

requirement waived in order to allow for Plaintiffs' responsive information to be received and reviewed.

147.   On April 16, 2015 Plaintiffs and an assistant supplied all filled-out, signed, and completed application materials which had been requested by Defendant OCWEN and its representative Tatsi to Defendant OCWEN. Plaintiffs supplied all such information by fax transmission to Defendant OCWEN at its dedicated fax number for receipt of loan modification application paperwork.   The paperwork submitted by Plaintiffs included all information requested by Defendant OCWEN and Tatsi during the March 16, 2015 telephone call including a signed and dated Request for Modification Assistance form, documentary proof of Plaintiffs' franchise tax board assessment, a signed Tax Form 4506T-EZ, 2 bank statements, and a written statement concerning the Plaintiffs' financial hardship signed and dated by the Plaintiffs[15]. (A redacted copy of the April 16, 2015 application is attached hereto as Exhibit "C")[16].

148.   The April 16, 2015 application for loan modification was the Plaintiffs' first ever application for a first lien loan modification.  Prior to this application, Plaintiffs had never previously been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification or any loan modification of any kind at any time in the past.

149.   On April 18, 2015, Plaintiffs and an assistant contacted Defendant OCWEN at telephone number 800-746-2936 in order to confirm that Plaintiffs' application materials had been received and were complete.  Plaintiffs spoke

---

[15] Plaintiffs had separately prepared a written breakdown of monthly expenses and Defendant OCWEN expressly stated to Plaintiffs that their written breakdown of monthly expenses could be submitted as an attachment to their request the "Request for Modification Assistance" form and would stand in the place of their "Monthly Expenses" as required under Section 6 of the "Request for Modification Assistance".

[16] All facsimile timestamps appearing on the top margins of these documents reflect the dates that Plaintiffs provided the documents to counsel in anticipation of this litigation.

with Tatsi during this telephone call.   Tatsi is and was an employee and representative of Defendant OCWEN who described her title as an OCWEN Homeowner Assistance Specialist with authority from Defendant OCWEN to assist Plaintiffs with all matters concerning their application for loan modification.

150.   During the April 18, 2015 phone call, Tatsi confirmed that all documents required by OCWEN in order to complete the Plaintiffs' loan modification application had been received on April 16, 2015 and were considered timely as they had been provided within the 7-day timeframe required by OCWEN which had been communicated to Plaintiffs previously. Tatsi confirmed that the application was now pending within OCWEN's systems and a written determination would be provided to Plaintiffs at their residence once OCWEN's final review had been completed.

151.   Also during the April 18, 2015 phone call, Tatsi acknowledged that the foreclosure sale – which had been previously postponed to April 29, 2015 – would again be postponed to May 29, 2015 on the basis that Defendant OCWEN wanted additional time to be able to determine the final figures of Plaintiffs' modified loan and issue its written approval.   Tatsi confirmed that she had authority bestowed by Defendant OCWEN to postpone the foreclosure sale for this reason.   As before, Tatsi placed Plaintiffs on a brief hold and returned shortly thereafter and confirmed that the foreclosure sale had been successfully postponed to May 29, 2015.

152.   Had Plaintiffs known that the foreclosure sale was not, in fact, postponed to May 29, 2015 and remained set to occur on April 29, 2015, Plaintiffs would have taken immediate legal action to enjoin the foreclosure sale pursuant to California Civil Code Section 2924.12 subd. (a) which provides a private right of action for borrowers who have submitted a complete loan

modification application to their lender to enjoin a foreclosure sale until the approval or denial of their loan modification application is rendered.  (See Cal. Civ. Code §2924.12(a)).  Specifically, Plaintiffs would have filed a Complaint against the named Defendants alleging a violation of California Civil Code Section 2923.6 and filed an ex parte application for a Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction seeking to enjoin the foreclosure sale on the basis that Plaintiffs' loan modification application had been submitted to the OCWEN, deemed "complete" by OCWEN, and was pending OCWEN's approval or denial.

153.   Legal action taken by the Plaintiffs pursuant to California Civil Code Sections 2923.6 and 2924.12 subd. (a) would have been non-frivolous and would have succeeded in enjoining the foreclosure sale.  The foreclosure sale would not have occurred had Plaintiffs taken the foregoing legal steps to enjoin it.

154.   On April 22, 2015, Plaintiffs and an assistant again contacted Defendant OCWEN to confirm that all application materials had been deemed "complete" and that OCWEN would issue a determination prior to completing a trustee's sale of the subject property.  During this call, Plaintiffs spoke with "Tabu", an employee and representative of Defendant OCWEN who described his title as an OCWEN Homeowner Assistance Specialist with authority from Defendant OCWEN to discuss and make representations on the status of Plaintiffs' loan modification application and foreclosure.  Tabu advised the Plaintiffs that Tatsi was unavailable, but that Tabu had access to the same pertinent information and could assist the Plaintiffs with their inquiry.  Tabu confirmed that the documentation provided by Plaintiffs on April 16, 2015 constituted the complete application requested by OCWEN and that the documentation was received prior to the aforementioned 7-day cutoff.

155.   On April 27, 2015, Plaintiffs and an assistant again contacted Defendant OCWEN to confirm that all application materials had been deemed "complete" and that OCWEN would issue a determination prior to completing a trustee's sale of the subject property.   During this call, Plaintiffs spoke with "Tabu", an employee and representative of Defendant OCWEN who described his title as an OCWEN Homeowner Assistance Specialist with authority from Defendant OCWEN.   Tabu requested that Plaintiffs re-submit a bank statement for FRANK CORNEJO's business for the month of January 2015. Plaintiffs advised Tabu that the requested bank statement had been previously provided. Tabu advised that it would be safest for Plaintiffs to provide it again by fax transmission.   Plaintiffs and an assistant faxed the requested bank statement to Tabu while remaining on the phone to confirm that the transmission completed successfully.   Tabu confirmed receipt of the bank statement. Tabu further advised that because a postponement of the sale had been processed to May 29, 2015, the resubmission of this document was considered timely under OCWEN's 7-day cutoff policy.   Tabu confirmed that the loan modification application remained pending within OCWEN's systems and that OCWEN would issue a determination in advance of the scheduled foreclosure sale.

156.   The representations of Defendant OCWEN, by and through representatives Tatsi and Tabu, were false in that the April 29, 2015 trustee's sale was not postponed and OCWEN did not render its approval or denial of Plaintiffs' loan modification prior to the trustee's sale.

157.   Plaintiffs have learned that the third-party purchaser had submitted notice of a sizable bid to the foreclosing Defendants and on this basis believe that the Defendants intended to auction the subject property rather than comply with their statutory obligations.

158.   Defendant OCWEN, through its representatives Tatsi and Tabu,

suggested as fact to the Plaintiffs that the April 29, 2015 foreclosure sale would be postponed to allow for OCWEN's continued review of their loan modification candidacy.

159.   Defendant OCWEN, through its representatives Tatsi and Tabu, made the positive assertion that the April 29, 2015 foreclosure sale would be postponed to allow for to allow for OCWEN's continued review of their loan modification candidacy.

160.   Defendant OCWEN suppressed the true facts that it would not postpone the April 29, 2015 foreclosure sale.

161.   Each of Defendant OCWEN's acts as alleged herein was designed and fit to deceive the Plaintiffs.

162.   Tatsi and Tabu, acting under color of authority from Defendant OCWEN as Homeowner Assistance Specialists with authority to assist and advise the Plaintiffs with all matters concerning their loan modification application and candidacy, made these representations to Plaintiffs with knowledge of the falsity of the representations, as Defendant OCWEN never intended to conduct a full, fair, and final review of Plaintiffs' loan modification application.  Instead, Defendant OCWEN specifically intended to dupe Plaintiffs into abstaining from filing for bankruptcy or from initiating legal proceedings against Defendant OCWEN while the subject property was underhandedly sold to a third-party purchaser who had previously provided notice of a bid.

163.   Plaintiffs justifiably relied on the misrepresentations as Defendant OCWEN, by and through its loss mitigation department held itself out to be an assistant to borrowers facing financial hardship and foreclosure.  In justifiably relying upon the misrepresentations of Defendant OCWEN, Plaintiffs refrained from taking legal action to enjoin the foreclosure sale which would have been successful in preventing the sale for sufficient time for Plaintiffs to receive the final

and permanent loan modification which was offered on May 12, 2015, as alleged hereinabove.

164.   Plaintiffs' reliance upon the misrepresentations was reasonable and foreseeable in light of the fact that Plaintiffs are, and have been at all times material, unsophisticated borrowers in an extremely financially vulnerable state due to the suffering economy and have actively differed to the judgment and representations of Defendant OCWEN for assistance at Defendant OCWEN's request.

165.   On April 29, 2015, the subject property was sold at trustee's sale.  A final loan modification was offered to Plaintiffs on May 12, 2015.

166.   As a direct and proximate result of the fraudulent conduct of Defendant OCWEN Plaintiffs have suffered and will continue to suffer significant damages as a result of the conduct of these Defendants and has suffered damages in the amount of over $500,000 through the loss of valuable real and personal property, credit damage, emotional distress, pain, suffering, and other damages which will be proven at the trial of this matter.

167.   Defendant OCWEN actions as described in this Complaint were done with conscious disregard of the probability that severe harm would result to Plaintiffs.  At all times material, the acts and occurrences as alleged herein on the part of agents and/or representatives of Defendant OCWEN was directed by authorized by, and/or ratified by various officers, directors, administrators and managing agents of Defendants OCWEN and by others whose names are presently unknown to Plaintiff and are therefore sued herein as DOES 1 through 10.

168.   Defendant OCWEN by and through corporate officers, directors, administrators and managing agents of Defendant OCWEN and by others whose names are presently unknown to Plaintiffs, directed, authorized and/or; ratified the conduct of the representatives of Defendant OCWEN mentioned herein, in that they were aware that of Defendant OCWEN's intent to deceive Plaintiffs for

1    the relevant period in order to cause the loss of their family residence.  By and
2    through its corporate officers and directors, and by others whose names are
3    presently unknown to Plaintiff, Defendant OCWEN, directed, authorized, and/or
4    ratified the conduct of each of these DOE Defendants in that they were aware
5    that such conduct would lead to injury to borrowers including Plaintiffs.
6    //
7    //
8    //
9    //
10   //
11   //
12   //
13   //
14   //
15   //
16   //
17   //
18   //
19   //
20   //
21   //
22   //
23   //
24   //
25   //
26   //
27   //
28

WHEREFORE, Plaintiffs pray for the following relief:

1. For compensatory damages in an amount to be proven at trial;

2. For statutory damages in the amount of the greater of treble actual damages incurred or $50,000 pursuant to <u>California Civil Code</u> §2924.12(b);

3. For exemplary and punitive damages;

4. For attorneys' fees and costs of suit incurred herein pursuant to <u>California Civil Code</u> §2924.12(i);

5. For other such relief as the Court deems appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.


**DATED:** January 9, 2015          **KATCHKO, VITIELLO & KARIKOMI, PC**


By:<u>*/S/ GIANDOMINIC VITIELLO*</u>
GIANDOMINIC VITIELLO,
Attorneys for Plaintiffs
FRANK CORNEJO and DORA CORNEJO.