1

2

3

4

5

6

7

8    **UNITED STATES DISTRICT COURT**

9    **EASTERN DISTRICT OF CALIFORNIA**

10

11   FRANK CORNEJO, et al.,                    )   Case No.: 1:15-cv-000993 - JLT
                                               )
12                      Plaintiffs,            )   ORDER GRANTING IN PART AND DENYING
                                               )   IN PART DEFENDANTS' MOTION FOR
13          v.                                 )   SUMMARY JUDGMENT
                                               )
14   OCWEN LOAN SERVICING, LLC, et al.,        )   (Doc. 25)
                                               )
15                      Defendants.            )
                                               )
16   ―――――――――――――――――――――――

17          Plaintiffs Frank Cornejo and Dora Cornejo assert Defendants—including Ocwen Loan Servicing,

18   LLC; U.S. Bank, National Association, as Trustee for the Holders of the Structured Asset Securities

19   Corporation Mortgage Pass-Through Certificates, Series 2005-RF3; and Western Progressive Trustee,

20   LLC d/b/a Western Progressive, LLC— are liable for violations of California law for actions taken

21   during the foreclosure of their home.  Defendants contend Plaintiffs are unable to present evidence to

22   support their claims, and summary judgment pursuant to Rule 56 of the Federal Rules of Civil

23   Procedure.  (Doc. 47)

24          The Court heard the oral arguments of the parties on August 12, 2016.  For the reasons set forth

25   below, Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part.

26   ///

27   ///

28   ///

## I.      Factual Background[1]

In July 1992, Plaintiffs obtain a mortgage loan "from Medallion Mortgage Company in the original principal sum of $113,400.00, which was reflected in a promissory note secured by a deed of trust," for the real property purchased real property commonly known as 3425 Rancho Sierra Street in Bakersfield, California.  (Doc. 32 at 2, UMF 1)  The beneficiary interest under the Deed of Trust was assigned to U.S. Bank.  (*Id.*, UMF 2)  Western Progressive, LLC "was the duly appointed substitute trustee under the Deed of Trust."  (*Id.*, UMF 4)  Ocwen Loan Servicing "acquired the contractual right and responsibility to service" Plaintiff's loan from GMAC Mortgage, LLC.  (*Id.*, UMF 3)

In June 2013, Plaintiffs defaulted on their loan. (Doc. 32 at 2, UMF 5)  "[O]n September 11, 2013, Ocwen sent Plaintiffs a demand letter wherein it notified them that they were in default under the Loan."  (*Id.*, UMF 6)  On September 25, 2013, Mrs. Cornejo spoke with an Ocwen representative "and explained that Plaintiffs were encountering financial issues."  (*Id.* at 4, UMF 13)

On October 29, 2013, Plaintiffs again spoke with an Ocwen representative.  (Doc. 32 at 4, UMF 16)  Defendants assert that during the conversation, Plaintiffs requested modification of the loan. (*See* Doc. 26 at 4) (citing Doc. 28-7 at 2, Handville Decl., Exh. 7)  On the other hand, Plaintiffs contend that Ms. Cornejo was "initially discussed reinstatement of the loan" but "was instead coaxed by [the] Ocwen representative to apply for loan modification rather than reinstate the mortgage."  (*Id.*) (citing Doc. 37 at 2, D. Cornejo Decl. ¶ 6; Doc. 35-2 at 41, D. Cornejo Depo., 204:4-18). Mrs. Cornejo reports she does not recall receiving a loan modification application from Ocwen in October 2013.  (Doc. 37 at 2, D. Cornejo Decl. ¶ 6)

On January 24, 2014, Mrs. Cornejo had another conversation with an Ocwen representative, during which: "(a) Mrs. Cornejo explained to Ocwen that Plaintiffs suffered a financial hardship caused by a slowdown in their business; and (b) Ocwen agreed to provide Plaintiffs with a loan modification

---

[1]  The factual background is a summary of the undisputed facts as well as the parties' contentions in this matter. Defendants' counsel reports that the parties met and conferred regarding a proposed Statement of Undisputed Facts, but Plaintiffs' counsel failed to provide a response.  (Doc. 25 at 3)  Accordingly, the parties did not file a Joint Statement. Instead, Defendants filed a Separate Statement (Doc. 26) to which Plaintiffs responded, indicating that many facts were not disputed (Doc. 32). Any facts prepared by Defendants and either admitted by Plaintiffs or not disputed by evidence are identified as "Undisputed Material Fact" or "UMF".  In addition, Plaintiffs filed a separate statement of facts, from which any facts are identified as "PSF."  (Doc. 33)

application." (Doc. 32 at 6, UMF 22)  Ocwen contends the company "sent Plaintiffs a letter that included instructions for submitting a loan modification application and a blank loan modification application" on January 30, 2014.  (Doc. 26 at 5) (citing Doc. 28-10, Handville Decl., Exh. 10) According to Defendants, "Ocwen instructed Plaintiffs to submit the completed application by no later than April 24, 2014."  (*Id.*) Plaintiffs assert they "have no recollection of receiving the application." (Doc. 32 at 6) (citing Doc. 37 at 2, D. Cornejo Decl. ¶ 6)

On October 22, 2014, Ocwen recorded a "Notice of Default and Election to Sell Under Deed of Trust" against the Property. (Doc. 32 at 2, UMF 7)  Plaintiffs failed to cure the default.  (*Id.*, UMF 8) However, Mrs. Cornejo had a conversation with an Ocwen representative on December 15, 2014, and again reported Plaintiffs "suffered a financial hardship caused by a reduction in their self-employment income."  (Doc. 32 at 6, UMF 26)  Defendants contend that during the phone call, "Ocwen agreed to provide Plaintiffs with a loan modification application and Mrs. Cornejo agreed to return the application within 15 days."  (Doc. 26 at 5) (citing Doc. 28-11, Handville Decl. ¶ 18, Exh. 11) According to Defendants, the document "advised Plaintiffs that the application must be submitted to Ocwen at least seven business days prior to any scheduled foreclosure sale."  (*Id.*) Plaintiffs assert they do not recall receiving the document.  (Doc. 32 at 7) (citing Doc. 37 at 2, D. Cornejo Decl. ¶ 6)

"On February 20, 2015, an Ocwen representative spoke with Dora Cornejo via telephone at which time the representative informed Mrs. Cornejo that Ocwen had not received any loan modification applications from Plaintiffs."  (Doc. 32 at 8, UMF 32) "[O]n February 23, 2015, a Notice of Trustee's Sale… was recorded against the Property."  (*Id.* at 3, UMF 8)  "The Notice of Sale put interested parties on notice that the Property would be sold at a public auction on March 27, 2015." (*Id.*, UMF 9)

On March 16, 2015, Mr. Cornejo talked with an Ocwen representative, who "advised" Mr. Cornejo "that merely applying for a modification of the Loan would not stop the scheduled sale." (Doc. 32 at 9, UMF 34)

On April 16, 2015, Ocwen received a loan modification application from Plaintiffs.  (Doc. 32 at 9, UMF 36)  Plaintiffs assert they submitted a complete application.  (*See id.* at 9)  However it is undisputed that "[o]n April 21, 2015, Ocwen reviewed the Submitted Application and determined that

it was incomplete." (*Id.* at 12, UMF 42) Ocwen reports it sent a letter dated April 21, 2015 to Plaintiffs, in which the company "informed them that the Submitted Application was incomplete and listed the additional documents that Ocwen required to complete the Application." (*Id.*, UMF 43) Plaintiffs report they did not receive the letter. (Doc. 37 at 2, D. Cornejo Decl. ¶ 6)

On April 28, 2015, "Ocwen received a twenty-two page facsimile… from Plaintiffs containing "(a) a letter of explanation; (b) a hardship letter; (c) a Profit & Loss Statement; and (d) a copy of Plaintiffs' 2013 tax returns." (Doc. 32 at 12, UMF 44) That same day, an Ocwen representative talked with Ms. Cornejo, "at which time Mrs. Cornejo represented that Plaintiffs' financial hardship started in December of 2012." (Doc. 32 at 15, UMF 49) "Ocwen employee Tabassum Asgar sent an internal email identifying that the requested loan modification application documents had been received." (Doc. 33 at 3-4, PSF 17) (citing Doc. 35-5 at 56-57, 126) In addition, "Tabassum Asgar sent an email to Ocwen's foreclosure coordinator Stephanie Wenner entitled '******965 Request to postponed CSD for 04/29/2015' which identifies the loan modification as under review." (*Id.* at 4, PSF 18) (citing Doc. 35-5 at 126)

On April 29, 2015, "the Property was sold at a public auction ("the Foreclosure Sale") pursuant to the power of sale provisions under the Deed of Trust." (Doc. 32 at 3, UMF 9-10) "At the time of the Foreclosure Sale, it was Western Progressive's understanding that Plaintiffs did not have a complete first lien loan modification application pending with respect to the Loan." (*Id.*, UMF 11) Through the sale, "[t]itle of the Property was conveyed to Kai Czak, Inc." (*Id.* UMF 12)

"On April 30, 2015, Ocwen sent Plaintiffs a letter wherein it acknowledged its receipt of the Supplemental Submission." (Doc. 32 at 15, UMF 53) "Ocwen continued to review [Plaintiff's] Application after the foreclosure sale." (*Id.*, UMF 54) "On April 30, 2015, Ocwen employee Ashlee McLane internally emailed and provided authority to cancel the foreclosure sale, but it was too late as the sale had already completed." (Doc. 33 at 4, PSF 22) (citing Doc. 35-5 at 129).

"On or about May 14, 2015, Ocwen sent Plaintiffs a letter congratulating them on obtaining a loan modification and which represented that the new loan would commence June 1, 2015 as long as Plaintiffs returned the signed documentation and initial payment of $817.29." (Doc. 33 at 5, PSF 27) (citing Doc. 37 at 4, D. Cornejo Decl. ¶ 17; Doc. 35-5 at 58) Plaintiff signed the documents and

returned with the requested payment.  (*Id.*, PSF 8) (citing D. Cornejo Decl. ¶ 17; Doc. 35-5 at 125)

## II.    Legal Standards for Summary Judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same.  *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 323.  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).  A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact.  Fed R. Civ. P. 56(e);

*Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). The opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court can only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). Further, evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*, 285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

### III.   Evidentiary Objections

#### A.   Plaintiffs' Objections

Plaintiffs observe that Ocwen "offers the supporting declaration of Howard R. Handville, an Ocwen Senior Loan Analyst," to support its assertion that letters were mailed to Plaintiffs on April 20, 2015 and April 21, 205. (Doc. 31 at 17) However, Plaintiffs assert that Mr. Handville's testimony is insufficient to "establish that the letters were sent." (*Id.*) Significantly, it does not appear that Mr. Handville has sufficient personal knowledge to support the authenticity of the letters.

The Ninth Circuit determined that "Federal Rule of Civil Procedure 56(e) does not require that all documents be authenticated through personal knowledge when submitted in a summary judgment motion." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 n.24 (9th Cir. 2002); *see also Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011). However, where exhibits are introduced by

being attached to an affidavit, the affidavit must be supported by personal knowledge. *Id.; accord id.* at 778 (holding that "[t]he district court properly found that [an exhibit] was not authenticated because Orr introduced the letter by attaching it to Mirch's affidavit [and] Mirch lacks personal knowledge of the letter").

Mr. Handville does not establish that he issued the letters in question or that he saw others do so.  Instead, he attempts to authenticate the letters by stating that they are part of Ocwen's business records that he reviewed.  (Doc. 28 at 2, Handville Decl. ¶ 2)  While this would address the hearsay nature of the documents, it does not address whether the documents are authentic, e.g., that they are what they purport to be, or that they were mailed on the date stated on them.  Without any evidence that Mr. Handville has personal knowledge regarding the authenticity of these letters, they are not admissible. See *Orr*, 285 F.3d at 778 n.24; *Las Vegas Sands*, 632 F.3d at 533.  Accordingly, Plaintiffs' objection to Exhibits 17 and 18 to the declaration of Mr. Handville is **SUSTAINED**.

## B.   Defendants' Objections

Defendants contend that portions of the declarations of Dora Cornejo and GianDominic Vitiello are inadmissible under the Federal Rules of Evidence.  (Doc. 41)

### 1.   Declaration of Dora Cornejo

Defendants contend, "Through the Cornejo Decl., Plaintiffs attempt to establish that there is a triable issue of fact as to each of their enumerated claims."  (Doc. 41 at 4).  Defendants contend statements in the declaration "should be stricken" through application of the sham affidavit rule.  (*Id.*, citing *Foster v. Arcata Assocs.*, 772 F.2d 1453, 1462 (9th Cir. 1985); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975))

Under the "sham affidavit" rule, "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Kennedy v. Allied Mutual Ins. Co.,* 952 F.2d 262, 266 (9th Cir. 1991). The Ninth Circuit explained, "[I]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* Because of the jury's role in resolving questions of credibility, courts have urged caution when applying the sham affidavit rule. *Id.* (citing *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir.

7

1980)); *see also Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (explaining the sham affidavit rule has limited application "because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment").

To determine whether statements should be stricken as a sham, the Ninth Circuit requires the court to "make a factual determination that the contradiction was actually a 'sham,'" and created specifically to avoid summary judgment. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).  In addition, "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at 998-99. The Court explained that "minor conflicts between [a declarant's] earlier deposition testimony and subsequent declaration... do not justify invocation of the sham affidavit rule." *Id.* at 999.

### a.      Paragraph 6

Mrs. Cornejo asserts in Paragraph 6 of her declaration that she has "no recollection of receiving blank loan modification applications from Ocwen in October 2013, January 2014, September 2014, December 2014, or February 2015."  (Doc. 37 at 2, ¶ 6)  In addition, Mrs. Cornejo stated:

> My express interest at each of those times was to reinstate the loan and it was for this purpose that I contacted Ocwen Loan Servicing, LLC for help in determining the reinstatement amount. When contacting Ocwen, Ocwen representatives questioned why I would want to reinstate the loan rather than obtain a loan modification. I initially had the good faith belief that I would be able to reinstate, and therefore resolved to save enough money to reinstate the loan.

(*Id.*)

Defendants assert this testimony is offered by Plaintiffs "to demonstrate that they were not interested in pursuing a loan modification prior to their submission of a loan modification application in April of 2015."  (Doc. 41 at 5)  They argue the statement conflicts with Mrs. Cornejo's deposition testimony, during which she "was shown records of telephone conversations that she had with Ocwen representatives on September 25, 2013, October 29, 2013, January 24, 2014, December 14, 2014, and February 20, 2015, respectively," and "did not dispute the accuracy of those records."  (*Id.*)

At her deposition, Mrs. Cornejo was asked to look at an exhibit from September 2013, "where it looked like a caller requested a borrower response package."  (Doc. 41-2 at 11)  She was asked, "Do you have any reason to dispute the accuracy of any of these notes?"  Mrs. Cornejo responded "No."  (*Id.*,

1    Depo. 72: 17-19)  She testified also that she did not recall speaking with an Ocwen representative in

2    September 2013.  (*Id.*, Depo. 72:20-22)  Similarly, Mrs. Cornejo testified she did not have any reason to

3    dispute the accuracy of information contained in notes related to a call on October 29, 2013.  (Doc. 42-1

4    at 12, Depo. 73:8-74: 6) Regardless, the statement in Mrs. Cornejo's declaration does not directly

5    conflict with her testimony that she had no reason to doubt the accuracy of Ocwen's notations, because

6    she could not recall the conversations.

7          Moreover, Mrs. Cornejo also testified that she intended to reinstate the loan and "had three or

8    four different people that were going to lend [her] the money."  (Doc. 42-1 at 32, Depo. 202:19-24)

9    This testimony is consistent with her declaration that she wanted "to reinstate the loan," although

10    somewhat inconsistent with her claim she resolved to "save" money to be able to do so.  Because the

11    purported inconsistency is not "clear and unambiguous," the Court declines to strike paragraph 6 of

12    Mrs. Cornejo's declaration.  *See Van Asdale*, 577 F.3d at 998-99.  The objection is **OVERRRULED**.

13               *b.     Paragraph 7*

14          Mrs. Cornejo asserted: "I first applied for [sic] loan modification by submitting a complete

15    application for [sic] loan modification to Ocwen Loan Servicing, LLC [] on April 16, 2015 with the

16    assistance of Hernan Ernest Cortez. The complete application was faxed from Mr. Cortez's office to

17    Ocwen Loan Servicing, LLC in my presence."  (Doc. 37 at 2, ¶ 7)

18          Defendants contend this statement is inconsistent with Mrs. Cornejo's deposition testimony that

19    "she did not recall when she submitted her application or what specific documents she submitted with

20    it."  (Doc. 42-1 at 18-19)  The Court agrees the declaration directly contradicts her deposition testimony

21    that she did not recall when she submitted the application.  However, though she did not name each

22    document she submitted, at her deposition, she referred to the "packet" of documents, described as

23    Exhibit 14, which was part of her document production and she affirmed that these were the documents

24    she submitted at that time.

25          Thus, as to the date Mrs. Cornejo submitted the application, the objection is **SUSTAINED** and

26    this portion of the declaration is **STRICKEN** and will not be considered by the Court.

27          On the other hand, whether the application was "complete" is a legal conclusion. *See Stokes v.*

28    *CitiMortgage, Inc.*, 2014 WL 4359193 (C.D. Cal. Sept. 3, 2014) (the assertion that "a party submitted

'complete' loan modification applications…is a conclusory statement, and the Court does not rely on such assertions").  Toward that end, the Court declines to give any weight to Mrs. Corjeno's conclusion that the application submitted was complete.  *See Burch v. Regents of the Univ. of Cal*., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) ("improper legal conclusions … are not facts and likewise will not be considered on a motion for summary judgment").

<i>c.</i>   <i>Paragraphs 8-9</i>

In paragraphs 8 and 9 of her declaration, Mrs. Cornejo asserts:

> On April 18, 2015, I called Ocwen and spoke with a representative named "Tatsi".  After spending some time on the phone with me, Tatsi was able to confirm that the documentation submitted April 16, 2015 had been received, was under review, and as a result the April 29, 2015 trustee's sale of my home would be postponed to May 29, 2015 to allow the review to be completed and for additionally required documents, if any, to be gathered.
>
> On April 27, 2015, I called Ocwen and spoke with a representative named "Tabu". During the phone call, Tabu confirmed that the April 29, 2015 trustee's sale of my home had been postponed to May 29, 2015.

(Doc. 37 at 3-4, ¶¶ 8-9)  However, Defendants note that during her deposition, Mrs. Cornejo testified:

> Q.  Okay. As of April 28th, what was your understanding of the status of your loan modification application?
> A.  They had postponed it for 5/29, and there's documentation on that.
> Q.  What kind of documentation?
> A.  Verbal conversation about the postponement.
> Q.  And who was that with?
> A.  I can't recall the person's name.
> Q.  And were you part of that conversation?
> A.  I don't recall. I would have to see the notes and see.
> Q.  And have you produced those notes?
> A.  Yes, I have.

(Doc. 41 at 7, quoting Depo. 130:13-131:1)  In addition, Mrs. Corejo testified:

> Q.  You mentioned, at some point, I think more than once, that there had been a postponement to May 29, 2016, regarding your foreclosure sale.
> A.  Yes.
> Q.  …How is it that you came to understand that there would be a postponement to May 29th?
> A.  Because Ernie had a conversation, and then we – when we talked. And there's a conversation on record when they stated that we were still under modification.

(Doc. 41 at 7, quoting Depo. 201:18-202:7)

Defendants contend "[t]he foregoing deposition testimony is inconsistent with Mrs. Cornejo's averment in paragraphs 8 and 9 that she had a conversation with an Ocwen representative about the

10

postponement of the foreclosure sale of her property." (*Id.*)  Notably, Mrs.Cornejo testified that she couldn't recall certain details but had produced her notes of the events and that these notes could refresh her recollection.  Despite this, apparently, the defendant did not allow that to happen and, apparently, did not review them and discuss their contents with Mrs. Cornejo at her deposition.

Also, Mrs. Cornejo's deposition testimony was unclear.  She stated that she came to understand that there would be a postponement because Ernie had a conversation and "then we—when we talked." It is not clear whether she is referring was Ernie or an Ocwen representative, particularly in light of the next statement that there was a conversation on record with Ocwen, in which "they" stated Plaintiffs "were still under modification." Given the ambiguous statements, Defendants' objection to Paragraphs 8 and 9 is **OVERRULED**.

### d.      Paragraph 13

In paragraph 13, Mrs. Cornejo asserts that "On or about April 22, 2015, I learned that Ocwen wanted me to again submit my 2013 tax returns which I had already submitted on April 16, 2015. I also learned that Ocwen wanted me to submit an alternate Profit and Loss form from a bookkeeper. I hired a bookkeeper that day and travelled to her office in Porterville to complete the paperwork. Together, we faxed the documentation to Ocwen the same night." (Doc. 37 at 3, ¶ 13)

Similar to the objections raised to Paragraph 7, Defendants assert this statement is inconsistent with testimony that Mrs. Cornejo "did not recall when she submitted her application or what specific documents she submitted with it." For the reasons set forth above, Defendants' objection to the date Mrs. Cornejo originally submitted the application, the objection is **SUSTAINED** and this portion of the declaration is **STRICKEN** and will not be considered by the Court.  However, the objection to the remainder of the paragraph is **OVERRULED**.

### e.      Paragraph 14

Mrs. Cornejo asserts in Paragraph 14 of her declaration that on April 28, 2015 she "was informed by Ocwen that [she] should resubmit [the] laon modification paperwork in order to avoid the April 29, 2015 foreclosure date." (Doc. 37 at 3, ¶ 14)  Defendants again contend this is a sham and the statements "are inconsistent to the extent they are intended to convey that she submitted a complete loan modification application prior to April 28, 2015." (Doc. 41 at 10)  As explained above, the Court

does not find the statements identified by Defendants are clearly and unambiguously in conflict with her deposition testimony that Plaintiffs submitted "all" documents on April 16, 2015.  Accordingly, the objection is **OVERRULED**.

> ### g.      *Paragraph 15*

Mrs. Corjeno asserted, "Out of panic, I hired a bankruptcy attorney who prepared some bankruptcy documentation on our behalf. I have no understanding of what was prepared or its legal effect." (Doc. 37 at 3, ¶ 15)  Defendants contend, "This averment is at odds with her deposition testimony," and should be stricken as a sham.  (Doc. 41 at 11)

At her deposition Mrs. Cornejo testified that the individual helping with her loan modification application indicated he was "gonna refer to [Mr. Hawkins] for some questions, but not retain him." (Doc. 42-1 at 10, Depo. 44:21-24)  She reported that she had not retained Mr. Hawkins as an attorney for any reason.  (*Id.*, 44:18-20)  Mrs. Cornejo admitted in the deposition testimony that there was not really a bankruptcy proceeding, but simply a bankruptcy notice that was prepared in hopes of stopping the foreclosure sale.  (*Id.* at 25, Depo. 139:20-23)  She testified the bankruptcy notice was prepared by Ernest with Mr. Hawkins.  (*Id.* at 140, Depo. 139:24-140:3)

The Court agrees that the statement that Mrs. Cornejo "hired" Mr. Hawkins is inconsistent with her deposition testimony that she did not retain Mr. Hawkins.  Further, Mrs. Cornejo's statement that she did not have any understanding of the legal effect of the bankruptcy filings is directly at odds with her declaration in which she now admits that the filings were for the express purpose of preventing the foreclosure sale.  Thus, the objections are **SUSTAINED** and the sentences from the declaration are **STRICKEN** except for the portion that reads, "I have no understanding of what was prepared."

> ### 2.      Declaration of GianDominic Vitiello

Defendants object to the declaration of Mr. Vitiello to the extent the declaration "purports to authenticate excerpts from the deposition of Hernan Ernest Cortez," because "[s]everal portions of these excerpts constitute hearsay."  (Doc. 41 at 11)

Clearly, however, whether a document is properly authenticated is a separate issue from whether it contains admissible hearsay.  Mr. Cortez asserts that he "participated in a deposition of Hernan Ernest Cortez" and the documents attached to his declaration are "true and correct" copies of

1   the deposition transcript.  (Doc. 35 at 2, Vitiello Decl. ¶ 7)  This is sufficient to authenticate the

2   documents, and Defendants' objection to Mr. Vitiello's declaration is **OVERRULED**.

3   　　　　　3.　　　Hearsay

4   　　　　Defendants identify several statements in the declaration of Mrs. Cornejo and the deposition

5   testimony of Mr. Cortez attached as an exhibit to Mr. Vitiello's declaration as inadmissible hearsay.

6   Hearsay statements are those "(1) the declarant does not make while testifying at the current trial or

7   hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."

8   Fed. R. Evid. 801(c).  To the extent Mrs. Cornejo and Mr. Cortez offer statements made by

9   representatives of Defendants, the statements are deemed admissions and the hearsay objections are

10  **OVERRULED**.  *See* Fed. R. Evid. 801(d)(2)(A) (an opposing party's statement offered against that

11  party is not considered hearsay).

12  　　　**C.　　Conclusion**

13  　　　　To the extent that statements offered by either party are speculative or represent a legal

14  conclusion, the Court, as a matter of course, will not factor that material into the analysis. *See Burch*,

15  433 F. Supp.2d at 1119.  Rather, the Court's analysis below relies only upon evidence that it has

16  deemed admissible.

17  **IV.　　　Requests for Judicial Notice**

18  　　　　Both parties request that the Court take judicial notice of documents submitted in support of

19  their respective positions.  (Doc. 27; Doc. 34)  The Court may take judicial notice of a fact that "is not

20  subject to reasonable dispute because it (1) is generally known within the trial court's territorial

21  jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot

22  reasonably be questioned." Fed. R. Evid. 201.

23  　　　　Defendants request the Court take judicial notice of the following documents recorded in the

24  Official Records of Kern County, California:  (1) Trustee's Deed Upon Sale recorded on May 7, 2015,

25  as Document Number 021505702; (2) Deed of Trust and Assignment of Rents recorded on March 28,

26  2014, as Document 00214034898; (3) Grant Deed recorded on March 28, 2014, as Document

27  000214034896; (4)  Notice of Federal Tax Lien recorded on February 23, 2010, as Document

28  0210022713; (5) Notice of State Tax Lien recorded on January 27, 2015, as Document 000215009539;

1    (6) Abstract of Judgment recorded on April 9, 2014, as Document 0214039897; (7) Release of Lien

2    recorded on October 20, 2015, as Document 000215147033; and (8) Substitution of Trustee and Full

3    Reconveyance recorded on January 11, 2016, as Document 000216002863.  (Doc. 27 at 2)

4          In addition, Defendants request judicial notice of several court documents, including: (1) the

5    PACER Docket for U.S. District Court for the Eastern District of California Case No. 1:15-cv-00993-

6    JLT; (2) the PACER Docket for U.S. Bankruptcy Court for the Eastern District of California Case No.

7    12-01157; (3) relevant excerpts from the Consent Judgment entered in U.S. District Court for the

8    District of Columbia Case No. 1:12-cv-00361-RMC; and (4) relevant excerpts from the Consent

9    Judgment entered in U.S. District Court for the District of Columbia Case No. 1:13-cv-02025-RMC.

10   (Doc. 27 at 2)  Similarly, Plaintiffs request that the Court take judicial notice of excerpts from the

11   Consent Judgment entered in U.S. District Court for the District of Columbia Case No. 1:12-cv-00361-

12   RMC.  (Doc. 34 at 2)

13         The Court may take judicial notice of the recorded documents, as they are matters of public

14   record, certified and maintained by the Kern County Recorder's Office.  Further, the Court may take

15   judicial notice of its records, because its accuracy cannot reasonably be questioned.  *See Mullis v. United*

16   *States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp.*, 80 F.R.D.

17   626, 635 n.1 (N.D. Cal. 1978), *aff'd* 645 F.2d 699 (9th Cir. 1981).  Accordingly, the parties' requests for

18   judicial notice are **GRANTED**.

19   **V.      Discussion and Analysis**

20         Plaintiffs contend Defendants are liable for violations of Cal. Civ. Code §2923.6, Cal. Civ.

21   Code § 2924.10, and fraudulent misrepresentation.  However, Defendants argue Plaintiffs are unable to

22   establish essential elements of their claims, and that summary judgment is appropriate.

23        **A.      Violation of Cal. Civ. Code § 2923.6**

24         Plaintiffs assert Defendants are liable for violations of Cal. Civ. Code § 2923.6(c), which

25   prohibits entities from simultaneously offering a loan modification and pursuing foreclosure— a

26   practice commonly referred to as "dual tracking."  Specifically, Section 2923.6(c) provides:

27        If a borrower submits a complete application for a first lien loan modification offered by,
          or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee,
28        beneficiary, or authorized agent shall not record a notice of default or notice of sale, or
          conduct a trustee's sale, while the complete first lien loan modification application is

                                              14

pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
>
> (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>
> (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

Cal. Civ. Code §2923.6(c). Notably, the anti-dual tracking provision is triggered by the borrower submitting a completed application for loan modification. It is undisputed that the Cornejos failed to submit any application until April 16, 2015, which was well after Ocwen recorded the notice of default. (Doc. 32 at 3, UMF 8) However, absent an applicable exception, § 2923.6 prohibits the trustee's sale of the property until after the borrower's application for loan modification has been denied and the appeal period has lapsed.

### 1.    Exception under Cal. Civ. Code § 2923.6(g)

Defendants observe that "section 2923.6 recognizes an exception to the general dual-tracking prohibitions where a borrower has already been afforded a fair opportunity to be evaluated for a modification." (Doc. 25 at 14, citing Cal. Civ. Code § 2923.6(g)) Specifically, Section 2923.6(g) provides:

> In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

*Id.* Defendants contend the facts before the Court "fall[] squarely with the exception prescribed," because "Plaintiffs were afforded an opportunity to be considered for a modification of the Loan on multiple occasions." (Doc. 25 at 15)

Defendants argue that Plaintiffs were "afforded a fair opportunity to be evaluated for a first lien

modification"— but failed to take advantage of the opportunities — when Ocwen mailed loan

modification application documents in September 2013, October 2013, January 2014, December 2014,

and February 2015. (Doc. 25 at 15, citing Handville Decl., ¶¶ 12, 15, 17, 20, Exhibits 5, 8, 9, 13) Mrs.

Cornejo attests that when she contacted Ocwen initially, the Cornejos wanted to reinstate the loan, not

to modify it.  (Doc. 37 at 2, ¶ 6)  She asserts that the Cornejos "resolved to save enough money to

reinstate the loan." (*Id.*) Notably, Mrs. Cornejo does not claim they had the money to reinstate the loan

at that time, nor does she offer any explanation as to how she believed Plaintiffs would be able to save

enough money to reinstate the loan, given the fact they had been unable to make their monthly

payments.  However, during her deposition, she testified that she "had three or four different people

that were going to lend [her] the money." (Doc. 42-1 at 32, Depo. 202:19-24)  Regardless, Ms. Cornejo

does not deny that the Cornejos later decided to pursue a loan modification.  (*See* Doc. 37 at 2, D.

Cornejo Decl. ¶ 6)

On the other hand, Ocwen has not cited the Court to any authority that merely providing

application materials to borrowers who state a desire to have their loan modified, equates to "a fair

opportunity" to be evaluated.[2]  Indeed, a complete reading of the statute clarifies that this is not a

reasonable interpretation.  As noted in Cal. Civ. Code § 2923.4, the purpose of the act in adding

provisions regarding loss mitigation options was "to ensure that, as part of the nonjudicial foreclosure

process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss

mitigation options… such as loan modifications."  Merely sending borrowers an application—even one

they request—is not an evaluation or attempted evaluation for a loan modification as contemplated by

the Homeowner Bill of Rights.

Section 2923.6(g) specifically indicates that the purpose of the provision is "to minimize the

risk of borrowers submitting multiple applications…" Thus, the statute is designed to provide guidance

as to the obligations of the lender when a borrower *submits* an additional application where a prior

application was denied or was not approved despite having had an opportunity for a fair evaluation.

The suggestion that the first application a borrower submits may be ignored unless there is an express

demonstration of changed financial circumstances from the time(s) loan modification application

---

[2] At the hearing, Defendants admitted they had no legal authority to support this position.

1    materials were mailed by the lender, is contrary to the purposes of the statute. Accordingly, the Court

2    declines to find an exception to the statute's obligations on this basis.

3                    2.       Whether Plaintiff's application was timely and complete

4           Under California law, an application is "deemed 'complete' when a borrower has supplied the

5    mortgage servicer with all documents required by the mortgage servicer within the reasonable

6    timeframes specified by the mortgage servicer." Cal. Civ. Code § 2923.6(h).

7           Defendants argue that Plaintiffs' claim for a violation of Section 2923.6 fails because

8    Plaintiffs' application was not timely received by Ocwen. (Doc. 25 at 15-16) According to

9    Defendants, the application form completed by Plaintiffs informed them "Ocwen required the

10   application and all supporting documents to be submitted at least seven business days prior to the

11   scheduled foreclosure sale." (*Id.* at 16, citing Doc. 28-12, Handville Decl., Exhibit 12) Thus, given

12   the scheduled foreclosure sale date of April 29, 2015, "Plaintiffs were required to submit a complete

13   application by no later than April 20, 2015, in order to comply with Ocwen's timeframe." (*Id.*)

14   Defendants assert the application submitted by Plaintiffs on April 16, 2015, "was facially incomplete,"

15   because "it was it was missing, among other things, a complete profit and loss statement, tax returns,

16   and paystubs." (*Id.*, footnote omitted) Defendants assert that "[i]t was not until April 28, 2015, that

17   Ocwen received a complete profit and loss statement, Plaintiffs' 2013 tax returns, and an explanation

18   that Plaintiffs did not receive employment income." (*Id.*)

19          In addition, Defendants argue that "[e]ven if Plaintiffs could overcome the timeliness issue,

20   their application was nevertheless incomplete . . . because they made several misrepresentations in the

21   Submitted Application." (Doc. 25 at 16) Defendants assert, "Plaintiffs failed to disclose the IRS Lien,

22   FTB Lien, and State Farm Lien," as well as "other real property assets." (*Id.* at 16-17) Further,

23   Defendants contend the "Plaintiffs misrepresented the cause of their hardship" because "they

24   represented in the Submitted Application that their hardship was caused by a payment they made to

25   the IRS." (*Id.* at 17) According to Defendants, "deposition testimony and other evidence submitted

26   herewith reflect that [Plaintiffs] did not make any payment to the IRS prior to the foreclosure sale of

27   the Property." (*Id.*) Defendants conclude "the application was necessarily incomplete" due to the

28   identified misrepresentations. (*Id.*)

a.     *Reasonable timeframe*

As an initial matter, the parties disagree regarding whether the timeframe required by Ocwen to receive a complete application was "reasonable," as required under Cal. Civ. Code § 2923.6(h).

Plaintiffs argue, "Ocwen testified that its advisement on its application cover letter that an application must be submitted at least seven days prior to a foreclosure sale is to protect Ocwen in judicial foreclosure cases or bankruptcy cases because of the potential need for a court order to postpone an active foreclosure sale." (Doc. 31 at 12-13)  Plaintiffs contend that in this case, "[t]here was no basis to impose the seven day requirement." (*Id.* at 13, citing *Valbuena v. Ocwen Loan Servicing, LLC*, 237 Cal.App.4th 1267 (2015))

In *Valbuena v. Ocwen,* the court reversed the trial court's rulings on demurrer, finding a triable issue of fact as to whether Ocwen's seven-day deadline was reasonable under Section 2923.6.  The borrowers admitted that they did not supply Ocwen "with all the documents required per the timeframe specified." *Id.*, 237 Cal. App.4th at 1276.  The borrowers reported they "spoke with Ocwen's representative by telephone, and were informed that they 'just need to submit some more documents to make their loan modification application 'complete.'" *Id.* at 1274. The court observed that "[t]he Ocwen representative did not tell them that, due to the pending sale date, it was already too late to apply for a loan modification." *Id.* The borrowers "mailed the additional financial documents requested by Ocwen on the same day"—which was two days before the scheduled foreclosure sale. *Id.* at 1271.  By letter, "the [same] date of the scheduled foreclosure sale, Ocwen notified plaintiffs that they were not eligible for a loan modification," due to the fact that their loan had "a confirmed sale date within 7 days." *Id.*  The borrowers argued that because the letter directing them to submit a completed application was received on the date of the deadline, there was "a triable issue of whether Ocwen provided plaintiffs with a 'reasonable timeframe' for submission of a complete application. *Id.* at 1275.  The court agreed and observed that "by alleging the submission of the loan modification application three days after receipt of the offer letter, and the transmittal of the additional documents requested by Ocwen on the date of request, plaintiffs have sufficiently alleged that a complete loan modification application was pending at the time Ocwen foreclosed on their home in violation of section 2923.6." *Id.*

18

1    Defendants contend *Valbuena* is inapposite because "[t]he borrowers in *Valbuena* did not

2    receive notice of the deadline for submitting their application until the day it was due," yet here they

3    contend "Ocwen notified Plaintiffs of the deadline to submit their application well in advance of the

4    actual deadline."  (Doc. 40 at 6)  Defendants contend the application the Cornejos completed was

5    mailed to them in December 2014, and as a result they "had over four months to submit the application

6    in order to comply with Ocwen's seven business day requirement."  (*Id.*)  According to Defendants,

7    "[T]he reason for Ocwen's document submission deadline is irrelevant. What matters is only that

8    Ocwen specified a deadline."  (*Id.*)  Further, Defendants argue:

9         Plaintiffs also conveniently overlook the fact that the HBOR itself contemplates that a
          mortgage servicer is entitled to at least five business days to review document
10        submissions. *See* Cal. Civ. Code § 2924.10(a) (recognizing that servicer has up to five
          business days to acknowledge its receipt of documents). The reason for this concession is
11        obvious: it is impractical for a servicer to process loan modification applications in less
          than one calendar week.

12

13   (*Id.*)  Defendants contend, "Under either standard (i.e., the seven business days specified by Ocwen or

14   the five business days contemplated by section 2924.10(a)), Plaintiffs' application was untimely."  (*Id.*)

15        As in *Valbuena*, Ocwen requested additional information from Plaintiffs despite the fact that the

16   seven-day business deadline had passed. Mrs. Cornejo reports they did not receive the letters indicating

17   receipt of the application or requesting additional documents until after the foreclosure, asserting they

18   "did not receive any written correspondence from Ocwen regarding the status of the submitted

19   application until after the property was already sold in foreclosure."  (Doc. 37 at 3, D. Cornejo Decl. ¶

20   10)  However, during a telephone conversation with an Ocwen representative—similar to the borrowers

21   had in *Valbuena*—Ocwen identified documents missing from the Cornejos' application.  Despite the

22   asserted deficiencies, Mrs. Cornejo said she "was led to believe by Ocwen representatives that as long

23   as [they] submitted the requested documents, [the] application would be reviewed."  (Doc. 37 at 3, D.

24   Cornejo Decl. ¶ 12)  As Plaintiffs observe, the evidence demonstrates that Ocwen proceeded to

25   evaluate the Cornejos' application despite the expiration of the deadline Ocwen imposed.

26        Significantly, Ocwen does not explain why the company requires seven business days to

27   evaluate a borrower's application for a loan modification.  Rather, the company contends the reason is

28   "irrelevant."  Without Ocwen offering reasons for the imposed deadline, the Court is unable to

19

1   determine the reasonableness of the timeline, particularly where—as Defendants acknowledge— the

2   Homeowner Bill of Rights indicates servicers need only five business days to evaluate a loan

3   modification application, acknowledge its receipt, and inform applicants if the application is deficient

4   or complete.  *See* Cal. Civ. Code § 2924.10.

5                     b.      *Date Plaintiffs submitted "all documents required" to Ocwen*

6          The parties present conflicting evidence regarding when Plaintiffs submitted all the documents

7   required by Ocwen for the application to be deemed complete under Cal. Civ. Code § 2923.6(h).

8   According to Plaintiffs, the identified documents were submitted to Ocwen as part of the application

9   on April 16, 2015.  (Doc. 31 at 13)  As noted by Plaintiffs, "Ocwen's logs reflect that when Plaintiffs

10  and Ocwen communicated on April 27, 2015 by phone, Dora Cornejo raised a dispute stating that the

11  requested documents had already been submitted."  (*Id.*, citing Doc. 35-3 at 44-4, Blanchard Decl.

12  121:21-122:1; Doc. 35-5 at 83)  Ocwen's notes indicate that on April 27, Ms. Cornejo said they "had

13  sent [the] missing docs."  (Doc. 35-5 at 83)  Similarly, the case log indicates that on April 28, "Frank

14  Cornejo stated the [financial proof] documents were sent on 04/15/2015 by Fax."  (*Id.* at 90)  Thus,

15  Plaintiffs maintain the documents were merely "refaxed" to Ocwen, after which the company

16  "determined that a complete application had been received."  (Doc. 31 at 14)

17         On the other hand, Mrs. Cornejo's declaration clarifies that after the application was submitted,

18  she "learned that Ocwen wanted me to submit an alternate Profit and Loss form from a bookkeeper."

19  (Doc. 37 at 3, ¶ 13)  Indeed, the documents Ocwen asserts it received on April 16 includes a "Profit

20  and Loss Form."  (Doc. 28-16 at 8)  Mrs. Cornejo asserts that the day Ocwen made the request for an

21  "alternate" form, she "hired a bookkeeper… and travelled to her office in Porterville to complete the

22  paperwork. Together, [they] faxed the documentation to Ocwen the same night."  (Doc. 37 at 3, D.

23  Cornejo Decl. ¶ 13)  This is the only document identified by Plaintiffs as differing from those they

24  assert were submitted to Ocwen on April 16.

25         Notably, in *Tuan Anh Le v. Bank of New York Mellon*, the Northern District court rejected the

26  servicer's argument that a loan modification application "was incomplete" because the borrower failed

27  to complete a section of his application.  *Id.*, 152 F. Supp. 3d 1200, 1212 (2015).  The court noted that

28  borrower submitted a new loan modification application and was requested to submit additional

                                                    20

documents.  *Id.*  The borrower submitted the documents, and "[a]n entry on April 7, 2014, provide[d] that the documents were received and the file was awaiting review."  *Id.*  However, the lender recorded a notice of sale two days later.  *Id.*  The court denied the defendant's motion for summary judgment as to the Section 2923.6 claim explaining, "the fact that Defendants' own records indicate that the documents were received and the application was awaiting review as of April 7, 2014 suggests that the application was complete."  *Id.*

Similarly, Plaintiffs contend they provided all documents to Ocwen on April 16 and contend they provided an "alternate" Profit and Loss Statement after Ocwen notified them they needed additional information.  Ocwen's records indicate Plaintiffs filled out and submitted a Profit and Loss Form but information regarding the statement year's start and end date was missing.  (*See* Doc. 28 at 16)  As the court determined in *Tuan Anh Le*, this was sufficient to comply with the requirement of Cal. Civ. Code § 2923.6(h) that the borrower "submit" all documents wanted by the servicer for an application to be deemed complete.

Significantly, if Ocwen received the documents as part of the application on April 16, 2015, as Plaintiffs contend, then the application was complete at that time.  Moreover, the completed application would have complied with the timeframe imposed by Ocwen as part of its loan modification review process.  Given the factual dispute regarding the documents submitted on April 16, it appears there is a dispute of material fact related to Plaintiffs' claim for a violation Cal. Civ. Code § 2923.6(c).

    c.    *Omissions and misrepresentations in the application*

Finally, Defendants contend that "[b]ecause Plaintiffs misrepresented facts in the Submitted Application and Supplemental Submission, the application was necessarily incomplete."  (Doc. 25 at 17)  However, Defendants have not citied any authority—and the Court has located none—indicating that omissions of liens and property assets render an application incomplete under Section 2923.6(h).  To the contrary, as indicated in *Tuan Anh Le*, it appears an application is "complete" when all documents are provided whether a borrower fills out all sections on the forms. Likewise, Defendants fail to identify any authority to support their assertion that misrepresentations that were not considered by Ocwen when evaluating Plaintiffs' application now mandate a determination that the application was incomplete.

### 3.    Whether Ocwen has immunity under Section 2924.12

As Defendants observe, violations of the dual-tracking provisions of the Homeowner Bill of Rights are enforced through Section 2924.12 of the California Civil Code.  However, Cal. Civ. Code §2924.12(g) provides immunity in limited circumstances:

> A signatory to a consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC, that is in compliance with the relevant terms of the Settlement Term Sheet of that consent judgment with respect to the borrower who brought an action pursuant to this section while the consent judgment is in effect shall have no liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

*Id.*  Defendants contend Ocwen is a party to consent judgments, "both in its own right and as a successor in interest to GMAC Mortgage, LLC."  (Doc. 25 at 17)  Exactly, how this is the case is not described.  Notably, "[t]he NMS is a settlement agreement between forty-nine states, the federal government, and five national banks that has been memorialized in a consent judgment. *United States v. Bank of America Corp., United States District Court*, Docket No. 1:12–cv–00361 RMC (D. D.C. April 4, 2012)." *Hansen v. Wells Fargo Bank, N.A.*, 2015 WL 4920560, at \*2 (Conn. Super. Ct. Aug. 10, 2015)  The Court has reviewed the docket of *U.S. v. Bank of America* and has determined that the banks at issue include, Bank of America/Countrywide, Citigroup, Wells Fargo, Residential Capital, LLC, Ally Financial/GMAC and J.P.Morgan Chase.  Notably, though Ocwen argues that the consent decree extends to it as a successor-in-interest to GMAC, Ocwen has failed to cite the Court any portion of the decree that does so and the Court's review of the document does not support Ocwen's position.

Moreover, the California Legislature, when extending the immunity set forth in section 2912(g) limited it only to "[a] *signatory*" to the consent judgment in Case 1:12-cv-00361.  As Plaintiffs contend, "Ocwen was not a party to the Consent Judgment entered in *U.S. v. Bank of America*, 12-cv-00361 (D.D.C. Apr. 4, 2012)."  (Doc. 31 at 15)  In addition, though Ocwen asserts that it is a signatory to a similar consent judgment in *Consumer Financial Protection Bureau v. Ocwen Financial Corp.*, 13-cv-02025, and that this judgment required Ocwen to be bound by the burdens of the terms of the consent decree entered in *U.S. v. Bank of America*, there is no evidence to suggest that this is sufficient to provide the Ocwen the *benefits* of the immunity provision of Cal. Civ. Code §2924.12(g).

*///*

4.      Conclusion

Defendants fail to show a lack of material dispute of fact regarding whether Plaintiffs submitted a timely and complete first loan modification application, which was pending when the foreclosure sale occurred.  In addition, Defendants fail to show they are entitled to immunity for this alleged violation. Thus, Defendants' motion for summary adjudication of the claim is **DENIED**.

**B.      Violation of Cal. Civ. Code § 2924.10**

Plaintiffs contend Ocwen is liable for violating Section 2924.10, which provides: "When a borrower submits a complete first lien modification application or any document in connection with a first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the documentation within five business days of receipt."  Cal. Civ. Code § 2924.10(a).  In its initial acknowledgement of receipt of the loan modification application, the mortgage servicer must include information such as an estimate of when a decision on the loan modification will be made, any expiration dates for submitted documents, any deficiency in the application, and "deadlines to submit missing documents."  *Id.*  To succeed on a claim, a plaintiff must establish "a material violation" of this provision after a trustee's deed upon sale has been recorded.  *Id.*, § 2924.12(b).

Defendants contend Plaintiffs are unable to show Ocwen is liable for a violation of Section 2924.12.  (Doc. 25 at 18)  According to Defendants,

> Plaintiffs made a total of only two document submissions to Ocwen, including the Submitted Application on April 16, 2015, and the Supplemental Submission on April 28, 2015. (See Ocwen Decl., ¶¶ 23, 26). Based on these submissions, Ocwen was required to send acknowledgments by April 23, 2015 (i.e., within 5 business days of April 16, 2015) and May 5, 2015 (i.e., within 5 business days of April 28, 2015). Contrary to Plaintiffs' allegations in the FAC, Ocwen satisfied this requirement.

(*Id.*)  In support of the assertion that Ocwen satisfied its obligations under Section 2924.10, Defendants identify Exhibits 17 and 18 to Handville's declaration.  (*Id.*)  However, as discussed above, the letters were not properly authenticated.  Accordingly, Defendants fail to present admissible evidence to demonstrate compliance with the statute. Nevertheless, even if the letters were properly authenticated, they demonstrate Ocwen failed to identify the deficiencies in the application in the first letter; rather this information was included only in the second letter.  *See id,* § 2924.10(4).  Thus, the request for

23

1    summary adjudication of this claim is **DENIED**.[3]

2        C.    **Fraudulent Misrepresentation**

3        Plaintiffs allege defendants Ocwen and U.S. Bank are liable for fraudulent misrepresentation,

4    asserting they were told the foreclosure sale would again be postponed to May 29, 2015.  (Doc. 17 at

5    41)  Specifically, Plaintiffs alleged in the First Amended Complaint that Plaintiffs talked with an

6    Ocwen employee on April 22, who "acknowledged that the foreclosure sale – which had been

7    previously postponed to April 29, 2015 – would again be postponed to May 29, 2015 on the basis that

8    Defendant OCWEN wanted additional time to be able to determine the final figures of Plaintiffs'

9    modified loan and issue its written approval."  (*Id.*, ¶ 151)  In addition, Plaintiffs alleged: "Had

10   Plaintiffs known that the foreclosure sale was not, in fact, postponed to May 29, 2015 and remained set

11   to occur on April 29, 2015, Plaintiffs would have taken immediate legal action to enjoin the foreclosure

12   sale…" (*Id.*, ¶ 152)

13       Under California law, to succeed on a claim for fraudulent misrepresentation, a plaintiff must

14   show: "(1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4)

15   justifiable reliance; and (5) resulting damage." *UMG Recording, Inc. v. Bertelsmann AG*, 479 F.3d

16   1078, 1096 (9th Cir.2007).  This Court previously determined that "a misrepresentation which causes a

17   party to forego taking legal action to stop a foreclosure sale, such as retaining an attorney, is sufficient

18   to state a claim for damages for fraud and negligent misrepresentation." *Alimena v. Vericrest Fin., Inc.*,

19   964 F.Supp.2d 1200, 1214 (E.D. Cal. 2013), citing *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App.

20   4th 780, 795 (2013).

21       Defendants contend Plaintiffs are unable to demonstrate the required elements because

22   "Defendants never represented to Plaintiffs that the April 29, 2015 foreclosure sale would be

23   postponed."  (Doc. 25 at 19)  Further, Defendants assert, "More critically, Plaintiffs unequivocally

24   testified that they did not consider taking any action to enjoin the sale."  (*Id.*, citing D. Cornejo Depo.

25   112:19-22)   Accordingly, Defendants assert that even if Ocwen informed Plaintiffs the sale would be

26   postponed, Plaintiffs "cannot establish the justifiable reliance element of their fraudulent

27

28       _____
         [3] Defendants do not address whether the alleged violation was "material".  (*See* Doc. 25 at 18)  The Court will not "manufacture arguments" on behalf of Defendants. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003).  Therefore, the Court declines to evaluate this element of Plaintiffs' claim for a violation of Section 2924.10.

misrepresentation claim." (*Id.*)

Importantly, Plaintiffs fail to identify any evidence to support their claim for fraudulent misrepresentation and, instead, rely only upon the allegations of their unverified First Amended Complaint. (*See* Doc. 31 at 17-19)  However, a plaintiff may only use the allegations of a verified complaint to support his opposition to summary adjudication of a claim. *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).  Thus, Plaintiffs' factual allegations do not provide evidentiary support to the claim for fraudulent misrepresentation.

Plaintiffs fail to identify any admissible evidence that a representative with the authority to speak on behalf of Ocwen or U.S. Bank who represented that the foreclosure would be again postponed.  Even if such a statement was made, Plaintiffs fail to identify any evidence supporting a conclusion that an Ocwen or U.S. Bank statement knew of the falsity and intended to induce Plaintiffs' reliance upon the statement. *See Tarmann v. State Farm Mut. Auto Ins. Co*., 2 Cal. App. 4th 153, 159, (1991) ("To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, . . . that it was intended to deceive or induce the promise to do or not do a particular thing").

Finally, Plaintiffs fail to present evidence that representations of Ocwen and U.S. Bank *caused* Plaintiffs to forego taking legal action.  To the contrary, both Mr. and Mrs. Cornejo testified they did not consult with anyone about trying to seek an injunction to enjoin the foreclosure sale and did not previously consider filing a lawsuit against Ocwen.  (D. Cornejo Depo. 112:11-22; F. Cornejo Depo. 87:13-88:9)  Plaintiffs have not provided testimonial or documentary evidence to support the allegations presented in the First Amended Complaint regarding their reliance upon statements made during the loan modification application process.  Because Plaintiffs fail to identify evidence to establish essential elements of their claim for fraudulent misrepresentation, summary adjudication of this claim is appropriate. *See Celotex*, 477 U.S. at 323.  Defendants' motion for summary adjudication of the fourth claim for relief is **GRANTED**.

### 1.    Plaintiffs' Motion to Amend

At the hearing on Defendants' motion for summary judgment, Plaintiffs made an oral motion to amend their complaint to identify the loan modification offer Ocwen sent to them in May 2015 as an

additional misrepresentation by the defendant.

Significantly, the Scheduling Order in this action set forth a pleading amendment deadline of January 29, 2016.  (Doc. 10 at 1, 2)  In addition, the parties were "ordered to complete all discovery, pertaining to non-experts and experts, on or before May 2, 2016."  (*Id.*) Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d).

A party seeking leave to amend a complaint after the deadline ordered by the Court must demonstrate good cause. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999). A party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order, (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference, and (3) that she was diligent in seeking amendment of the Rule 16 order, once it become apparent that she could not comply with the order.

*Id.* at 608 (internal citations omitted).

Plaintiffs are unable to satisfy the burden to demonstrate diligence.  There is no doubt that Plaintiffs were aware throughout the course of this litigation that they received a loan modification offer from Ocwen.  Moreover, discovery closed in the matter more than three months prior to the hearing on Defendants' motion for summary judgment—and Plaintiffs clearly possessed evidence to support their assertion that "[o]n or about May 14, 2015, Ocwen sent Plaintiffs a letter congratulating them on obtaining a loan modification and which represented that the new loan would commence June 1, 2015 as long as Plaintiffs returned the signed documentation and initial payment of $817.29."  (*See* Doc. 33 at 5, PSF 27) (citing Doc. 37 at 4, D. Cornejo Decl. ¶ 17; Doc. 35-5 at 58)).

1   Even assuming Plaintiffs received new information from Ocwen regarding the offer at the close

2   of discovery on May 2, Plaintiffs' delay in seeking leave to amend until the hearing fails to support a

3   determination that they acted diligently in seeking leave to amend the complaint. *See Schwerdt v. Int'l*

4   *Fidelity Ins. Co.*, 28 F. App'x 715, 719 (9th Cir. 2002) (delay of one month after learning of facts did

5   not constitute diligence under Rule 16 in seeking leave to amend); *Sako v. Wells Fargo Bank, Nat.*

6   *Assoc.*, 2015 U.S. Dist. LEXIS 111834, 2015 WL 5022326, at *2 (S.D. Cal. 2015) ("Courts have held

7   that waiting two months after discovering new facts to bring a motion to amend does not constitute

8   diligence under Rule 16"); *ExperExchange, Inc. v. Doculex, Inc.*, 2009 U.S. Dist. LEXIS 112411, 2009

9   WL 3837275, at *29 (N.D. Cal. Nov. 16, 2009) (delay of two months after discovering new facts, and

10  after fully briefed summary judgment motion, did not meet the good cause standard under Rule 16).

11  Consequently, Plaintiffs failed to act with diligence, and the Court finds the good cause requirement of

12  Rule 16 is not satisfied.  Plaintiffs' motion to amend is **DENIED**.

13       **D.      Damages under Section 2924.12**

14       Defendants observe that under Cal. Civ. Code § 2924.12(b), the court has the discretion to

15  award "the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000)."

16  To be entitled to these damages, a plaintiff must show a "material violation" of Sections 2923.55,

17  2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 "was intentional or reckless, or resulted from

18  willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent." *Id.*

19       Defendants assert, "Plaintiffs cannot establish by clear and convincing evidence that Defendants

20  deliberately violated sections 2923.6 and 2924.10."  (Doc. 25 at 20)  According to Defendants, "To the

21  contrary, the evidence submitted herewith reflects that Ocwen attempted to postpone the sale despite

22  Plaintiffs' late document submissions, thereby evidencing that it did not intentionally foreclose on the

23  Property in violation of the HBOR."  (*Id.*)  Also, Defendants contend that "[b]ecause Ocwen made no

24  determination regarding Plaintiffs' eligibility for a modification prior to the foreclosure sale . . .

25  Plaintiffs are likewise unable to demonstrate that Ocwen acted recklessly."  (*Id.*, citing *California*

26  *Amplifier, Inc. v. RLI Ins. Co.*, 94 Cal.App.4th 102, 109-10 (2001) ("Recklessness involves more than

27  inadvertence or incompetence[;] [it] entails a conscious choice of a course of action...with knowledge

28  of the serious danger to others involved in it.") (internal quotation omitted)).

On the other hand, Plaintiffs contend that if the trier of fact finds Defendants liable, "there is a high likelihood that the trier of fact could determine that the Defendants' conduct was reckless and therefore justify an award of exemplary damages." (Doc. 31 at 19)  Plaintiffs note that under California law, "[r]ecklessness may be found from acts 'of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow.'" (*Id.*, quoting *Christensen v. Superior Court*, 54 Cal. 3d 868, 908 (1991)).  Plaintiffs assert that "Ocwen's testimony and internal records establish that the application was neither approved nor denied, and was therefore pending at the time of the foreclosure sale." (*Id.* at 19-20, citing Doc. 35-5, Rashad Depo. 129:17-20, 130:7-20, 188:10-21; Doc. 35-3 at 12-13, 95, 107, 126-32; Doc. 37 at 3, D. Cornejo Decl. ¶12)  In addition, Plaintiffs observe the records "establish that employees recommended the postponement of foreclosure to the foreclosure coordinator, who did not respond for several days at a time when Plaintiffs home was likely to be lost. (*Id.* at 20, citing Doc. 35-3, Rashad Depo. 159:4-18, 160:24-25, 161:1-23; Doc. 35-5 at 56-57, 126).  Finally, Plaintiffs contend that "on May 1, 2015 Ocwen specifically falsely advised the foreclosure trustee that the loan was not involved in loss mitigation and authorized post- foreclosure procedures despite the fact that the loan modification application had been pending all the while." (*Id.*, citing Doc. 35 -3, Rashad Depo. 185:11-14; Doc. 35-5 at 107-109; Doc. 35-6 at 2-3.

Taken in the light most favorable to Plaintiff, the evidence shows deliberate conduct by Ocwen representatives, who delayed in evaluating their loan modification application, approved the application the day after the foreclosure sale, and mislead the foreclosure trustee.  As Plaintiffs argue, all of these actions were taken with despite the clear knowledge that the foreclosure sale and post-foreclosure procedures would result in Plaintiffs losing their home.  Thus, there is a triable issue of fact as to whether the actions by Ocwen were "intentional or reckless".  Defendants' motion for summary adjudication on the claim for damages under Section 2924.12 is **DENIED**.

## VI.   Conclusion and Order

Based upon the foregoing, the Court **ORDERS**:

1.      Defendants' motion for summary judgment (Doc. 25) is **GRANTED IN PART;**

2.      Summary adjudication of Plaintiffs' causes of action for violations of Cal. Civ. Code §§

2923.6 and 2924.10 is **DENIED**;

3.        Summary adjudication of Plaintiffs' claim for fraudulent misrepresentation is **GRANTED**; and

4.        Plaintiffs' motion to amend is **DENIED**.

IT IS SO ORDERED.

Dated:    **August 16, 2016**            **/s/ Jennifer L. Thurston**
                                                  UNITED STATES MAGISTRATE JUDGE