1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9               **EASTERN DISTRICT OF CALIFORNIA**

10

11  FRANK CORNEJO, et al.,              )    Case No.: 1:15-cv-000993 - JLT
                                        )
12              Plaintiffs,             )    PRETRIAL ORDER
                                        )
13       v.                             )    Deadlines:
                                        )    Motions in Limine Filing: 9/2/16
14  OCWEN LOAN SERVICING, LLC, et al.,  )    Oppositions to Motions in Limine: 9/9/16
                                        )    Hearing on Motions in Limine: 9/15/16, 10:00 a.m.
15              Defendants.             )
                                        )    Trial Submissions: 9/23/16
16  _____  )

17          In this action, the plaintiffs claim that the defendants are liable for violations of California law

18  for actions taken during the foreclosure of their home.

19  **A.    JURISDICTION/ VENUE**

20          This court has jurisdiction over this diversity action under 42 U.S.C § 1332.  Also, the events

21  that gave rise to this action occurred in Bakersfield, California.  Accordingly, venue is proper in the

22  United States District Court for the Eastern District of California sitting in Bakersfield.  *See* 28 U.S.C.

23  § 1391.

24  **B.    JURY TRIAL**

25          Plaintiffs demanded a jury trial in this matter. (Doc. 17 at 47)

26  **C.    UNDISPUTED FACTS**

27          1.      On or about July 27, 1992, Plaintiffs obtained a mortgage loan (the "Loan") from

28  Medallion Mortgage Company in the original principal sum of $113,400.00, which was reflected in a

promissory note secured by a deed of trust (the "Deed of Trust") encumbering the real property located at 3425 Rancho Sierra Street, Bakersfield, CA 93306 (the "Property").

2.      The beneficial interest under the Deed of Trust was assigned to U.S. Bank.

3.      Ocwen acquired the contractual right and responsibility to service the Loan from GMAC Mortgage, LLC.

4.      Western Progressive was the duly appointed substitute trustee under the Deed of Trust.

5.      Plaintiffs defaulted under the Loan in or about June of 2013 and remained in continuous default through April 29, 2015.

6.      As a result of Plaintiffs' default, on September 11, 2013, Ocwen sent Plaintiffs a demand letter wherein it notified them that they were in default under the Loan.

7.      Ocwen assigned Stephanie Wenner as the internal "foreclosure coordinator" in charge of overseeing the foreclosure of the subject property and communicating with foreclosure trustees.

8.      On October 22, 2014, a Notice of Default and Election to Sell Under Deed of Trust was recorded against the Property.

9.      Following Plaintiffs' failure to cure their default, on February 23, 2015, a Notice of Trustee's Sale (the "Notice of Sale") was recorded against the Property

10.     The Notice of Sale put interested parties on notice that the Property would be sold at a public auction on March 27, 2015, but the sale date was postponed to April 29, 2015.

11.     On April 29, 2015, the Property was sold at a public auction (the "Foreclosure Sale") pursuant to the power of sale provisions under the Deed of Trust.

12.     At the time of the Foreclosure Sale, it was Western Progressive's understanding that Plaintiffs did not have a complete first lien loan modification application pending with respect to the Loan.

13.     Title to the Property was conveyed to Kai Czak, Inc. through a Trustee's Deed Upon Sale ("TDUS").

14.     Ocwen's records do not reflect receipt of a completed loan modification application from Plaintiffs at any point in time prior to April 16, 2016.

15.     During a January 24, 2014 call between Dora Cornejo and an Ocwen representative: (a)

2

Mrs. Cornejo explained to Ocwen that Plaintiffs suffered a financial hardship caused by a slowdown in their business; and (b) Ocwen agreed to provide Plaintiffs with a loan modification application.

16.     On February 20, 2015, an Ocwen representative spoke with Dora Cornejo via telephone at which time the representative informed Mrs. Cornejo that Ocwen had not received any loan modification applications from Plaintiffs.

17.     During a March 16, 2015 telephone conference between Ocwen and Frank Cornejo, Mr. Cornejo was advised that merely applying for a modification of the Loan would not stop the scheduled sale.

18.     At the time Plaintiffs submitted their loan modification application on April 16, 2016 (the "Subject Application"): (a) the Property was encumbered by the Deed of Trust, a lien in favor of the Internal Revenue Service ("IRS Lien"), a lien in favor of the California Franchise Tax Board (the "FTB Lien"), and a judgment lien in favor of State Farm Automobile Insurance Co. ("State Farm Lien"); and (b) Frank Cornejo owned a separate parcel of real property located at 1809 Potomac Ave., Bakersfield, CA (the "Potomac Ave. Property").

19.     The April 16, 2015 submission included the standard Profit & Loss form requested by Ocwen, although statement year, start date, end date, and Gross Receipts/Business Income sections were left blank.

20.     By April 17, 2015, Ocwen's records reflected receipt from Plaintiffs of a Home Affordable Modification Program Financial Form, IRS Form 4506T, HOA/Condo Dues, Dodd Frank Certification, Hardship Statement, Profit and Loss Statement.

21.     On April 21, 2015, Ocwen reviewed the Subject Application and determined that it was deficient as: (i) the profit and loss form was missing a start date and end date; (ii) it was not accompanied by tax returns; and  (iii) it was not accompanied by pay stubs to support the income identified in Section 7 of the application.

22.     On April 22, 2015, Ocwen set foreclosure bid instructions and therefore was proceeding with foreclosure.

23.     Ocwen's logs reflect that, during an April 27, 2015 call, Dora Cornejo raised a dispute with Ocwen and contended that the Profit and Loss form and tax returns had already been submitted,

but Defendants deny that Ocwen received any supplemental documents in support of the Subject Application before April 28, 2015.

24.     On April 28, 2015, Ocwen received a twenty-two page facsimile (the "Supplemental Submission") from Plaintiffs containing: (a) a letter of explanation; (b) a hardship letter; (c) a Profit & Loss Statement; and (d) a copy of Plaintiffs' 2013 tax returns.

25.     On April 28, 2015 Ocwen employee Tabassum Asgar sent an internal email, marked high importance, identifying that the requested loan modification application documents had been received.

26.     On April 28, 2015 Ocwen employee Tabassum Asgar sent an email, marked high importance, to Ocwen's foreclosure coordinator Stephanie Wenner entitled "******965 Request to postponed CSD for 04/29/2015" which identifies the loan modification as under review.

27.     On April 28, 2015, an Ocwen representative had a separate conversation with Dora Cornejo, at which time Mrs. Cornejo represented that Plaintiffs' financial hardship started in December of 2012.

28.     On April 29, 2015, an Ocwen representative spoke with Dora Cornejo at which time Mrs. Cornejo advised Ocwen that Frank Cornejo filed for bankruptcy.

29.     On April 29, 2015, Ocwen received a Notice of Filing Report of No Distribution (the "Bankruptcy Notice") via facsimile which purported to reflect that Frank Cornejo was a debtor in a bankruptcy case pending in the U.S. Bankruptcy Court for the Eastern District of California (the "Bankruptcy").

30.     On April 30, 2015, Ocwen sent Plaintiffs a letter wherein it acknowledged its receipt of the Supplemental Submission.

31.     None of the letters that Ocwen sent to Plaintiffs in connection with the Submitted Application were returned as undeliverable.

32.     Ocwen never denied Plaintiffs' loan modification application.

33.     Ocwen can deny a loan modification application on the basis that the application is incomplete, terminating a review.

34.     Ocwen's records reflect that foreclosure coordinator Stephanie Wenner never responded

4

to internal Ocwen emails requesting to postpone the sale.

35.  On April 30, 2015, Ocwen employee Ashlee McLane internally emailed and provided authority to cancel the foreclosure sale, but it was too late as the sale had already completed.

36.  Ocwen continued to review Plaintiffs' loan modification application candidacy from April 16, 2015, through May 22, 2015.

37.  As of May 1, 2015, Ocwen's records reflect that it had received all of the requested documents and information in connection with the Subject Application by April 28, 2015.

38.  On May 1, 2015, Ocwen advised the foreclosure trustee that the loan was not involved in loss mitigation and authorized post-foreclosure procedures despite the fact that the account was still being reviewed for a modification.

39.  On or about May 14, 2015, Ocwen sent Plaintiffs a letter congratulating them on qualifying for and obtaining a loan modification, and representing that the new loan would commence June 1, 2015, as long as Plaintiffs returned the signed documentation and initial payment of $817.29.

40.  The loan modification for which the Plaintiffs qualified provided objectively more favorable loan terms given the borrowers' financial hardship.

41.  The loan modification agreement could not actually modify the loan absent a rescission of the Foreclosure Sale because the loan debt was extinguished by virtue of the foreclosure.

42.  Plaintiffs were evicted from the subject property by the new owner and forcibly removed from the premises by the sheriff.

**D.    DISPUTED FACTS**

All other facts in this case remain in dispute including but not limited to all facts relating to the following:

1.  Whether Ocwen postponed the March 27, 2015 foreclosure sale of the Property to April 29, 2015 in order to allow Plaintiffs to apply for loan modification.

2.  Whether Plaintiffs submitted the loan modification application in its entirety on April 16, 2015.

3.  Whether by April 21, 2015, Ocwen had reviewed the documents submitted by Plaintiffs and decided that an additional profit and loss form and tax return would be required.

4.      Whether, if sent at all, Ocwen sent the April 21, 2015 letter concerning additional documents required for loan modification to the Plaintiffs by way of regular mail from Florida, and it was therefore unlikely for the letter to reach the Plaintiffs without prejudicing their ability to comply with Ocwen's seven day deadline for application.

5.      Whether Ocwen made no contact with the borrower on April 21, 2015 or April 22, 2015 apart from purportedly sending an advisory letter concerning needed documents in the mail.

6.      Whether on April 22, 2015, Ocwen set foreclosure bid instructions and therefore was proceeding with foreclosure before Plaintiffs were aware of any additionally requested documents.

7.      Whether Plaintiffs did not receive any advisory letters from Ocwen until after the foreclosure sale had completed.

8.      Whether on April 27th and April 28th, 2015 Plaintiffs faxed and re-faxed documents to Ocwen which responded fully to Ocwen's request for additional documents, and which Plaintiffs contend had already been submitted in their previous faxes.

9.      Whether Plaintiffs' loan modification application was in review and had neither been approved nor denied by Ocwen at the time of the completed foreclosure sale on April 29, 2015.

10.     Whether Ocwen continued to review Plaintiffs' loan modification application candidacy from April 16, 2015 through May 22, 2015 without regard to any seven day application requirement and therefore waived the requirement.

11.     Whether Plaintiffs relied on the May 14, 2015 letter and returned the signed documents and initial payment.

12.     Whether Ocwen waived its seven day deadline by continuing to review the loan modification application from April 16, 2015 through May 22, 2015 and approving it for a favorable loan modification program.

13.     Whether an alternate foreclosure coordinator would normally have been available to address the needs attendant to the foreclosure of the property in Stephanie Wenner's absence.

14.     Whether Plaintiffs would have materially benefited from the loan modification if it was received before the foreclosure was completed because they would have kept their home.

15.     Whether Plaintiffs did not receive any advisory letters from Ocwen until after the

foreclosure sale had completed.

16.     Whether Ocwen's conduct was reckless or resulted from willful misconduct.

17.     Whether on September 25, 2013, an Ocwen representative spoke with Dora Cornejo via telephone, at which time she requested a loan modification application (the "First Application") and explained that Plaintiffs were encountering financial issues.

18.     Whether on September 26, 2013, Ocwen sent Plaintiffs a letter that included instructions for submitting a loan modification application and a blank loan modification application (the "First Application").

19.     Whether on October 29, 2013, an Ocwen representative spoke with Plaintiffs via telephone, at which time they requested a modification of the Loan.

20.     Whether during its October 29, 2013 call with Plaintiffs, Ocwen agreed to provide Plaintiffs with a loan modification application and Plaintiffs agreed to return the completed application to Ocwen by November 18, 2013.

21.     Whether on October 30, 2013, Ocwen sent Plaintiffs a letter that included instructions for submitting a loan modification application and a blank loan modification application (the "Second Application").

22.     Whether Ocwen instructed Plaintiffs to submit the completed Second Application by November 29, 2013.

23.     Whether on January 24, 2014, an Ocwen representative spoke with Dora Cornejo via telephone at which time she expressed an interest in being considered for a modification of the Loan.

24.     Whether on January 30, 2014, Ocwen sent Plaintiffs a letter that included instructions for submitting a loan modification application and a blank loan modification application (the "Third Application").

25.     Whether Ocwen instructed Plaintiffs to submit the completed Third Application by no later than April 24, 2014.

26.     Whether on December 15, 2014, an Ocwen representative spoke with Dora Cornejo via telephone at which time she requested a loan modification application and explained that Plaintiffs suffered a financial hardship caused by a reduction in their self-employment income.

27.     Whether during its December 15, 2014 call with Dora Cornejo, Ocwen agreed to provide Plaintiffs with a loan modification application and Mrs. Cornejo agreed to return the application within 15 days.

28.     Whether on December 16, 2014, Ocwen mailed Plaintiffs a loan modification application (the "Fourth Application").

29.     Whether the Fourth Application advised Plaintiffs that the completed application must be submitted to Ocwen at least seven business days prior to any scheduled foreclosure sale.

30.     Whether on February 17, 2015, Ocwen sent Plaintiffs another loan modification application (the "Fifth Application").

31.     Whether on March 16, 2015, an Ocwen representative spoke with Frank Cornejo who requested a postponement of the foreclosure sale of the Property, which had been scheduled for March 27, 2015.

32.     Whether at no point during the March 16, 2015 call or any point in time thereafter did Ocwen advise Plaintiffs that they were pre-approved for a modification of the Loan.

33.     Whether on April 16, 2015, Ocwen received the Subject Application via facsimile.

34.     Whether the Subject Application consisted of pages 5 through 16 of the Fourth Application and was not supported by any additional documents.

35.     Whether four days after receiving the Subject Application, on April 20, 2015, Ocwen sent Plaintiffs a letter wherein it acknowledged its receipt of the Subject Application.

36.     Whether the IRS Lien, FTB Lien, and State Farm Lien remained outstanding as of the date of the foreclosure sale of the Property.

37.     Whether Plaintiffs did not disclose the IRS Lien, FTB Lien, or the State Farm lien on the Subject Application, nor did they disclose the Potomac Ave. Property.

38.     Whether on April 21, 2015, Ocwen sent Plaintiffs a letter wherein it informed them that the Subject Application was incomplete and listed the additional documents that Ocwen required to complete the application.

39.     Whether the Supplemental Submission was the only other document submission that Ocwen received from Plaintiffs in support of the Subject Application.

40.     Whether Ocwen did not receive any documents from Plaintiffs explaining how their financial circumstances had changed at any point in time between September 26, 2013, and the date they submitted the Subject Application.

41.     Whether on April 28, 2015, an Ocwen representative spoke with Frank Cornejo regarding the Subject Application and informed him that Ocwen would not have enough time to review the application prior to the foreclosure sale of the Property, which was scheduled for April 29, 2015.

42.     Whether without making any promises to Plaintiffs, Ocwen nevertheless attempted to postpone the sale, but was unable to do so before the scheduled sale date and time of April 29, 2015, at 10:00 a.m.

43.     Whether the Bankruptcy Notice was a fabricated document that Plaintiffs submitted to Ocwen in an effort to postpone the Foreclosure Sale.

44.     Whether due to its mistaken belief that the foreclosure sale could be rescinded, which was based, in part, on the Bankruptcy, Ocwen continued to review the Subject Application after the foreclosure sale.

45.     Whether to be considered for a first lien loan modification, Ocwen requires borrowers to submit a complete loan modification application at least seven business days before a scheduled foreclosure sale date (the "Submission Deadline Requirement").

46.     Whether the Submission Deadline Requirement is consistent with the deadlines prescribed under the Making Home Affordable Program and is necessary to allow Ocwen sufficient time to fully review loan modification applications prior to a scheduled foreclosure sale.

47.     Whether at no point in time did Ocwen waive its Submission Deadline Requirement for Plaintiffs, nor did it advise Plaintiffs that the Subject Application was complete at any point in time prior to the Foreclosure Sale.

48.     Whether Ocwen, as successor by assignment from GMAC Mortgage, LLC, is a party to a Consent Judgment entered in U.S. District Court for the District of Columbia Case No. 1:12-cv-00361-RMC.

**E.     DISPUTED LEGAL ISSUES**

1.     Whether Defendants violated section 2923.6 of the California Civil Code.

2.      Whether Defendants' violation of section 2923.6 of the California Civil Code, if any, was material.

3.      Whether Plaintiffs submitted a "complete" application for a first lien loan modification within the meaning of section 2923.6(h) of the California Civil Code.

4.      Whether Defendants violated section 2924.10 of the California Civil Code.

5.      Whether Defendants' violation of section 2924.10 of the California Civil Code, if any, was material.

6.      Whether Plaintiffs are entitled to an award of attorneys' fees pursuant to section 2924.12(i) of the California Civil Code.

7.      Whether Plaintiffs are entitled to treble or statutory damages pursuant to section 2924.12(b) of the California Civil Code.

8.      Whether Plaintiffs are entitled to separate awards of treble or statutory damages pursuant to section 2924.12(b) of the California Civil Code for each proven violation of the HBOR.

9.      Whether Defendants are entitled to an award of attorneys' fees if they are deemed to be the prevailing party in this action.

**F.      DISPUTED EVIDENTIARY ISSUES**

None other than motions in limine.  Plaintiffs do not anticipate filing motions in limine at this time. Defendants anticipate filing motions in limine to limit the scope of any direct testimony offered by Plaintiffs or Hernan Ernie Cortez on the basis that their testimony is based on inadmissible hearsay.

**G.      SPECIAL FACTUAL INFORMATION**

None.

**H.      RELIEF SOUGHT**

Plaintiffs seek to recover actual and treble or statutory damages pursuant section 2924.12(b) of the California Civil Code. They also seek an award of attorney's fees pursuant to section 2924.12(i). Defendants reserve the right to pursue an award of attorneys' fees in the event that they are deemed the prevailing party in this action.  Plaintiffs dispute the notion that Defendants have any statutory or contractual basis upon which to pursue attorneys' fees even in the event that they are deemed the prevailing party in this action.

10

**I.     ABANDONED ISSUES**

None.

**J.     WITNESSES**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(10).

**Plaintiffs' Witness List:**

1.     Dora Cornejo

2.     Frank Cornejo

3.     Hernan Ernie Cortez

4.     Rashad Blanchard of Ocwen Loan Servicing, LLC

5.     Stephanie Spurlock of Western Progressive Trustee, LLC

6.     Melissa Gaeta

7.     Monica Cornejo

8.     Curtis D. Harris (Expert)

**Defendants' Witness List:**

1.     Rashad Blanchard of Ocwen Loan Servicing, LLC

2.     Stephanie Spurlock of Western Progressive Trustee, LLC

3.     Lance Ablin of Kai Czak, Inc.

4.     Maria Hernandez of Franklin and Associates

5.     Gary Crabtree of Affiliated Appraisers (Expert)

6.     Dora Cornejo

7.     Frank Cornejo

8.     Hernan Ernie Cortez

9.     Individual identified as "Tatsi" in Plaintiffs' First Amended Complaint

10.    Individual identified as "Tabu" in Plaintiffs' First Amended Complaint

**K.     EXHIBITS, SCHEDULES AND SUMMARIES**

The following is a list of documents or other exhibits that the parties expect to offer at trial. NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 281(b)(11).

**Plaintiffs' Exhibits**

1.     Loan Modification Application facsimile, dated April 16, 2015

2.     Loan Modification Deficiency letter, dated April 21, 2015

3.     Loan Modification Offer Letter dated May 14, 2015

4.     Franklin & Associates Profit and Loss dated April 22, 2015

5.     2013 U.S. Individual Income Tax Return of Dora and Francis Cornejo

6.     Email from Ocwen employee Tabassum F. Asgar dated April 28, 2015

7.     Ocwen REALSERVICING logs dated March 10, 2015 through May 28, 2015

8.     Email from Ocwen employee Ashlee McLane dated April 30, 2015

9.     Email from Ocwen employee Imma Kate Sta. Ines dated May 4, 2015

10.    Email from Ocwen employee Lolita N. Llorente

11.    Email from NMSCertificationMailbox@ocwen.com dated May 1, 2015

12.    Email from Foreclosure.Bid@ocwen.com dated April 29, 2015

13.    Email from Foreclosure.Bid@ocwen.com dated April 22, 2015

14.    Email to tax@ocwen.com dated April 29, 2015

15.    Email from WesternProgressive-CA@ocwen.com dated April 29, 2015

16.    Trustee's Deed Upon Sale (Kern County Instrument No. 0215057029)

17.    Unlawful Detainer lawsuit in matter of Kai Czak, Inc. v. Cornejo et al. (Kern County Superior Court Case No. S-1500-CL-291623

18.    Judgment entered in lawsuit in matter of Kai Czak, Inc. v. Cornejo et al. (Kern County Superior Court Case No. S-1500-CL-291623.

19.    Receipts for court fees in the matter of Kai Czak, Inc. v. Cornejo et al. (Kern County Superior Court Case No. S-1500-CL-291623.

20. Retainer agreement between Dora and Frank Cornejo and John Loftus

21. Lease agreement dated August 1, 2015

22. Enterprise Rent-A-Car receipt dated August 25, 2015

23. Cashier's check in amount of $817.40 (check no. 0794200820)

24. Ledger of payment for storage lockers

25. Receipt for Jeff's Notary Services dated May 20, 2015.

26. FedEx Office receipt

27. Office Max receipt

28. Walmart receipt

29. Furniture Mart receipt dated August 22, 2015

30. Used furniture receipt

31. Snider's Lock receipt dated August 26, 2015

32. Snider's Cyclery receipt dated August 26, 2015

33. Diary of Monica Cornejo

34. Oak Street Mobil receipt dated August 25, 2015

35. Notice of Entry dated May 1, 2015

36. Notice of Entry dated June 13, 2015

37. Davis-White & Associates receipt dated May 12, 2015

38. Handwritten notes

39. Fax transmittal dated April 23, 2015

40. Fax transmittal dated April 16, 2015

41. Appraisal report of Curtis Harris

42. Telephone recording of conversation between Melissa Gaeta, Dora Cornejo, and Ocwen

43. Plaintiffs' written timeline of events

44. Handwritten note dated May 4, 2015

45. Handwritten note dated May 1, 2015

46. Handwritten note dated April 30, 2015

47. Notice of IRS Tax Lien dated July 8, 2015

13

48.   Payment of IRS Tax Lien from surplus proceeds dated November 16, 2015

49.   Writ of Possession

50.   Kern County Sheriff's Office Notice to Vacate dated August 24, 2015

51.   FedEx receipt dated May 20, 2015

52.   Signed loan modification agreement signed May 20, 2015

53.   Complete application letter dated May 4, 2015

54.   Ocwen letter dated April 20, 2015

55.   Ocwen letter dated April 21, 2015

56.   Ocwen letter dated April 30, 2015

**Defendants' Exhibits**

1.   Deed of Trust Note executed by Plaintiffs on July 27, 1992

2.   Deed of Trust recorded in the Official Records of Kern County, California, as Doc. No. 108724

3.   Assignment of Deed of Trust recorded in the Official Records of Kern County, California, as Doc. No. 158205

4.   Notice of Default letter, dated September 11, 2013

5.   Loan Modification Application letter, dated September 26, 2013

6.   Loan Modification Application letter, dated October 30, 2013

7.   Loan Modification Application letter, dated January 30, 2014

8.   Loan Modification Application letter, dated December 16, 2014

9.   Loan Modification Application letter, dated February 17, 2015

10.   Loan Modification Application facsimile, dated April 16, 2015

11.   Loan Modification Acknowledgment letter, dated April 20, 2015

12.   Loan Modification Deficiency letter, dated April 21, 2015

13.   Supplemental Loan Modification Application facsimile, dated April 28, 2015

14.   Notice of Filing Report of No Distribution for U.S. Bankruptcy Court for the Eastern District of California Case No. 12-1157

15.   Loan Modification Acknowledgment letter, dated April 30, 2015

16.     Substitution of Trustee recorded in the Official Records of Kern County, California, as Doc. No. 118537

17.     Notice of Default recorded in the Official Records of Kern County, California, as Doc. No. 131229

18.     Notice of Trustee's Sale recorded in the Official Records of Kern County, California, as Doc. No. 020194

19.     Notice of Postponement Letter, dated March 11, 2015

20.     Trustee's Deed Upon Sale recorded in the Official Records of Kern County, California, as Doc. No. 057029

21.     Affidavit of Claim for Surplus Funds for State Farm Mutual Automobile Ins. Co.

22.     Abstract of Judgment recorded in the Official Records of Kern County, California, as Doc. No. 039897

23.     Notice of Federal Taxes Due from Internal Revenue Service

24.     Deed of Trust and Assignment of Rents recorded in the Official Records of Kern County, California, as Doc. No. 034898

25.     Grant Deed recorded in the Official Records of Kern County, California, as Doc. No. 034896

26.     Notice of Federal Tax Lien recorded in the Official Records of Kern County, California, as Doc. No. 22713

27.     Notice of State Tax Lien recorded in the Official Records of Kern County, California, as Doc. No. 9539

28.     Release of Lien recorded in the Official Records of Kern County, California, as Doc. No. 147033

29.     PACER Docket for (and relevant filings in) U.S. Bankruptcy Court for the Eastern District of California Case No. 12-16370

30.     Consent Judgment entered in U.S. District Court for the District of Columbia Case No. Consent Judgment entered in U.S. District Court for the District of Columbia Case No. 12-0361.

31.     PACER Docket for U.S. District Court for the District of Columbia Case No. 12-0361

32.     Making Home Affordable Program Handbook for Servicers

33.     Appraisal Report prepared by Gary Crabtree

34.     Photographs of real property located at 3425 Rancho Sierra Street, Bakersfield, CA 93306

35.     Substitution of Trustee and Full Reconveyance recorded in the Official Records of Kern County, California, as Doc. No. 002863

36.      Declaration of Frank Cornejo in Support of Opposition to Motion for Summary Judgment

37.     Declaration of Dora Cornejo in Support of Opposition to Motion for Summary Judgment

38.     Telephone recordings between Ocwen and Plaintiffs for period of January 2015 through May 20, 2015

39.     Stewart Title of Sacramento Closing Document

40.     Letter to Plaintiffs, dated November 24, 2010

41.     Letter to Plaintiffs, dated April 12, 2010

42.     Letter to Plaintiffs, dated January 5, 2012

43.     Letter to Plaintiffs, dated March 20, 2012

44.     Letter to Plaintiffs, dated July 11, 2012

45.     Letter to Plaintiffs, dated July 30, 2012

46.     Letter to Plaintiffs, dated November 9, 2012

47.     Letter to Plaintiffs, dated December 11, 2012

48.     Letter to Plaintiffs, dated January 31, 2013

49.     Letter to Plaintiffs, dated April 11, 2013

50.     Letter to Plaintiffs, dated May 3, 2013

51.     Letter to Plaintiffs, dated May 9, 2013

52.     Letter to Plaintiffs, dated June 10, 2013

53.     Letter to Plaintiffs, dated July 18, 2013

54.     Letter to Plaintiffs, dated July 30, 2013

55.     Letters to Plaintiffs, dated August 6, 2013

56.     Letter to Plaintiffs, dated August 16, 2013

57.     Letter to Plaintiffs, dated September 10, 2013

58.     Letter to Plaintiffs, dated September 23, 2013

59.     Letter to Plaintiffs, dated November 18, 2013

60.     Letter to Plaintiffs, dated August 20, 2013

61.     Letter to Plaintiffs, dated October 7, 2013

62.     Letters to Plaintiffs, dated October 29, 2013

63.     Letter to Plaintiffs, dated November 27, 2013

64.     Letter to Plaintiffs, dated December 6, 2013

65.     Letter to Plaintiffs, dated April 6, 2014

66.     Letter to Plaintiffs, dated May 13, 2014

67.     Letter to Plaintiffs, dated June 25, 2014

68.     Letter to Plaintiffs, dated October 17, 2014

69.     Letter to Plaintiffs, dated October 24, 2014

70.     Letter to Plaintiffs, dated February 24, 2014

71.     Letter to Plaintiffs, dated May 13, 2014

On or before **September 9, 2016**, counsel **SHALL** meet and confer to discuss any disputes related to the above listed exhibits and to pre-mark and examining each other's exhibits.   Any exhibits not previously disclosed in discovery **SHALL** be provided via e-mail or overnight delivery so that it is received by **August 30, 2016**.

1.      At the exhibit conference, counsel will determine whether there are objections to the admission of each of the exhibits and will prepare separate indexes; one listing joint exhibits, one listing Plaintiff's exhibits and one listing Defendant's exhibits.  In advance of the conference, counsel must have a complete set of their proposed exhibits in order to be able to fully discuss whether evidentiary objections exist.  _Thus, any exhibit not previously provided in discovery_ **SHALL** _be provided at least five court days in advance of the exhibit conference._

2.      At the conference, counsel shall identify any duplicate exhibits, i.e., any document which both sides desire to introduce into evidence.  These exhibits **SHALL** be marked as a joint exhibit and

numbered as directed above.  Joint exhibits **SHALL** be admitted into without further foundation.

All Joint exhibits will be pre-marked with numbers preceded by the designation "JT" (e.g. JT/1, JT/2, etc.).  Plaintiff's exhibits will be pre-marked with numbers beginning with 1 by the designation PX (e.g. PX1, PX2, etc.). Defendant's exhibits will be pre-marked with numbers beginning with 501 preceded by the designation DX (e.g. DX501, DX502, etc.). The Parties SHALL number each page of any exhibit exceeding one page in length (e.g. PX1-1, PX1-2, PX1-3, etc.).

If originals of exhibits are unavailable, the parties may substitute legible copies. If any document is offered that is not fully legible, the Court may exclude it from evidence.

Each joint exhibit binder shall contain an index which is placed in the binder before the exhibits. The index shall consist of a column for the exhibit number, one for a description of the exhibit and one column entitled "Admitted in Evidence" (as shown in the example below).

### INDEX OF EXHIBITS

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE |
|---|---|---|

3.     As to any exhibit which is not a joint exhibit but to which there is no objection to its introduction, the exhibit will likewise be appropriately marked, i.e., as PX1, or as DX501 and will be indexed as such on the index of the offering party.   Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

4.     Each exhibit binder shall contain an index which is placed in the binder before the exhibits.   Each index shall consist of the exhibit number, the description of the exhibit and the three columns as shown in the example below.

### INDEX OF EXHIBITS

| EXHIBIT# | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|---|---|---|---|---|

5.     On the index, as to exhibits to which the only objection is a lack of foundation, counsel will place a mark under the column heading entitled "Admissible but for Foundation."

6.     On the index, as to exhibits to which there are objections to admissibility that are not based solely on a lack of foundation, counsel will place a mark under the column heading entitled

1   "Other Objections."

2         After the exhibit conference, Plaintiff and counsel for the defendants **SHALL** develop four

3   complete, legible sets of exhibits.  The parties **SHALL** deliver three sets of their exhibit binders to the

4   Courtroom Clerk and provide one set to their opponent, no later than 4:00 p.m., on **September 23, 2016.**

5   Counsel **SHALL** determine which of them will also provide three sets of the joint exhibits to the

6   Courtroom Clerk.

7         7.    The Parties **SHALL** number each page of any exhibit exceeding one page in length.

8   **L.**    **DISCOVERY DOCUMENTS**

9         The following is a list of discovery documents – portions of depositions, answers to

10  interrogatories, and responses to requests for admissions – that the parties expect to offer at trial.

11  NO DISCOVERY DOCUMENT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE

12  ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER

13  SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local

14  Rule 281(b)(12).

15        Plaintiffs intend to offer the following discovery documents at trial:

16        1.    Deposition transcript for Rashard Blanchard (Ocwen's Person Most Knowledgeable).

17        2.    Defendant Ocwen's Responses to Request for Production, Set One propounded by

18  Plaintiffs.

19        3.    Defendant Ocwen's Responses to Requests for Admission, Set One propounded by

20  Plaintiffs.

21        4.    Defendant Western Progressive's Responses to Requests for Production, Set One

22  propounded by Plaintiffs.

23        5.    Defendant Western Progressive's Responses to Requests for Admission, Set One

24  propounded by Plaintiffs.

25        6.    Defendant U.S. Bank's Responses to Requests for Admission, Set One propounded by

26  Plaintiffs.

27        7.    Deposition transcript for Hernan Ernie Cortez.

28        Defendants intend to offer the following discovery documents at trial:

1.  Deposition Transcript for Frank Cornejo.

2.  Deposition Transcript for Dora Cornejo.

3.  Deposition Transcript for Hernan Ernie Cortez.

4.  Response to Deposition Subpoena from Franklin & Associates.

5.  Response to Deposition Subpoena from Kai Czak, Inc.

6.  Plaintiff Frank Cornejo's Responses to Ocwen Loan Servicing, LLC's Requests for Admission, Set One.

7.  Plaintiff Frank Cornejo's Responses to Ocwen Loan Servicing, LLC's Requests for Production of Documents, Set One.

8.  Plaintiff Frank Cornejo's Responses to Ocwen Loan Servicing, LLC's Interrogatories, Set One.

9.  Plaintiff Dora Cornejo's Responses to Ocwen Loan Servicing, LLC's Requests for Admissions, Set One.

10. Plaintiff Dora Cornejo's Responses to Ocwen Loan Servicing, LLC's Requests for Production of Documents, Set One.

11. Plaintiff Dora Cornejo's Responses to Ocwen Loan Servicing, LLC's Interrogatories, Set One.

12. Plaintiff Frank Cornejo's Responses to Ocwen Loan Servicing, LLC's Requests for Admission, Set One

13. Deposition Transcript for Rashad Blanchard

In the event the parties wish to admit any portion of a discovery document, the specific discovery request, e.g., interrogatory, request for admission, must be redacted so that any extraneous request/response is omitted.

**M.   FURTHER DISCOVERY OR MOTIONS**

No further discovery is sought by either party.

**N.   MOTIONS IN LIMINE**

Any party may file motions in limine.  The purpose of a motion in limine is to establish in advance of the trial that certain evidence should not be offered at trial.  "Although the Federal Rules of

Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 40 n. 2 (1984); Jonasson v. Lutheran Child and Family Services, 115 F. 3d 436, 440 (7th Cir. 1997). The Court will grant a motion in limine, and thereby bar use of the evidence in question, only if the moving party establishes that the evidence clearly is not admissible for any valid purpose. Id.

**In advance of filing any motion in limine, counsel SHALL meet and confer to determine whether they can resolve any disputes and avoid filing motions in limine. Along with their motions in limine, the parties SHALL file a certification demonstrating counsel have in good faith met and conferred and attempted to resolve the dispute. Failure to provide the certification may result in the Court refusing to entertain the motion.**

Any motions in limine must be filed with the Court by **September 2, 2016**. The motion must clearly identify the nature of the evidence that the moving party seeks to prohibit the other side from offering at trial. Any opposition to the motion must be served on the other party, and filed with the Court by **September 9, 2016**. The Court sets a hearing on the motions in limine on **September 15, 2016**, at 9:30 a.m. Appearances via Courtcall are authorized.

The parties are reminded they may still object to the introduction of evidence during trial.

**O.    STIPULATIONS**

The Parties have had discussions on a possible stipulation setting the fair market value of the Property at the time of the Foreclosure Sale. These discussions are ongoing.

**P.    AMENDMENTS/ DISMISSALS**

None.

**Q.    SETTLEMENT NEGOTIATIONS**

The Parties have engaged in periodic settlement discussions throughout the pendency of this case. Though they are amenable to participating in a settlement conference, due to the short time remaining before trial, the Court is unable to accommodate this request. However, the parties are urged to explore settlement discussions through informal means or to secure the assistance of a private mediator.

///

**R.     AGREED STATEMENT**

None

**S.     SEPARATE TRIAL OF ISSUES**

None.

**T.     APPOINTMENT OF IMPARTIAL EXPERTS**

None requested.

**U.     ATTORNEYS' FEES**

The Parties agree that the matter of the award of attorneys' fees to the prevailing party will be handled by motion in accordance with Local Rule 293.

**V.     TRIAL DATE/ ESTIMATED LENGTH OF TRIAL**

Jury trial is set for **September 26, 2016**, at 8:30 a.m. before the Honorable Jennifer L. Thurston at the United States Courthouse, 510 19th Street, Bakersfield, California.  Trial is expected to last 4-7 days.

**W.     TRIAL PREPARATION AND SUBMISSIONS**

**1.     Trial Briefs**

The parties are relieved of their obligation under Local Rule 285 to file trial briefs. If any party wishes to file a trial brief, they must do so in accordance with Local Rule 285 and be filed on or before **September 16, 2016**.

**2.     Jury Voir Dire**

The parties are required to file their proposed voir dire questions, in accordance with Local Rule 162.1, on or before **September 16, 2016**.

**3.     Jury Instructions & Verdict Form**

The parties shall serve, via e-mail or fax, their proposed jury instructions in accordance with Local Rule 163 and their proposed verdict form on one another no later than **September 2, 2016.** The parties shall conduct a conference to address their proposed jury instructions and verdict form no later than **September 9, 2016**. At the conference, the parties **SHALL** attempt to reach agreement on jury instructions and verdict form for use at trial. The parties shall file all agreed-upon jury instructions and verdict form no later than **September 16, 2016**, and identify such as the agreed-upon jury instructions

22

and verdict forms. At the same time, the parties **SHALL** lodge via e-mail a copy of the joint jury instructions and joint verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

**If and only if, the parties after genuine, reasonable and good faith effort** cannot agree upon certain specific jury instructions and verdict form, the parties shall file their respective proposed (disputed) jury instructions and proposed (disputed) verdict form no later than **September 16, 2016,** and identify such as the disputed jury instructions and verdict forms.  At the same time, the parties **SHALL** lodge via e-mail, a copy of his/their own (disputed) jury instructions and proposed (disputed) verdict form (in Word format) to JLTOrders@caed.uscourts.gov.

In selecting proposed instructions, the parties shall use Ninth Circuit Model Civil Jury Instructions or California's CACI instructions to the extent possible.  All jury instructions and verdict forms shall indicate the party submitting the instruction or verdict form (i.e., joint, plaintiff's, defendant's, etc.), the number of the proposed instruction in sequence, a brief title for the instruction describing the subject matter, the **complete** text of the instruction, and the legal authority supporting the instruction.  Each instruction SHALL be numbered.

### 4.      Statement of the Case

The parties **SHALL** file a joint non-argumentative, brief statement of the case which is suitable for reading to the jury at the outset of jury selection on or before **September 16, 2016**.  In the event they cannot agree on a joint statement, each side SHALL file a non-argumentative, brief statement of the case on or before **September 16, 2016.**

## X.      OBJECTIONS TO PRETRIAL ORDER

Any party may, within 10 days after the date of service of this order, file and serve written objections to any of the provisions set forth in this order. Such objections shall clearly specify the requested modifications, corrections, additions or deletions.

## Y.      MISCELLANEOUS MATTERS

None.

## Z.      COMPLIANCE

Strict compliance with this order and its requirements is mandatory.  All parties and their counsel are subject to sanctions, including dismissal or entry of default, for failure to fully comply with

this order and its requirements.

IT IS SO ORDERED.

   Dated:   **August 29, 2016**                       **/s/ Jennifer L. Thurston**
                                             UNITED STATES MAGISTRATE JUDGE