GIANDOMINIC VITIELLO (SBN 262244)
gdvitiello@kvklawyers.com
**KATCHKO, VITIELLO & KARIKOMI, PC**
11500 W. Olympic Blvd., Suite 512
Los Angeles, CA 90064
Tel:  (310) 943-9587
Fax: (424) 204-0401

Attorneys for Plaintiffs
FRANK CORNEJO and DORA CORNEJO

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA – BAKERSFIELD

| | |
|---|---|
| FRANK CORNEJO, an individual; DORA CORNEJO, an individual; <br><br> Plaintiffs, <br> v. <br><br> OCWEN LOAN SERVICING, LLC, a Delaware limited liability company; U.S. BANCORP d/b/a U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR HOLDERS OF STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-RF3, a national association; WESTERN PROGRESSIVE, LLC, a Delaware limited liability company; and DOES 1 THROUGH 100, inclusive; <br> Defendants. | Case No:  1:15-cv-00993-JLT <br><br> Assigned to Hon. Magistrate Judge Jennifer L. Thurston <br><br> **PLAINTIFFS FRANK AND DORA CORNEJO'S TRIAL BRIEF** <br><br><br><br><br> Action Filed: May 14, 2015 <br><br> Trial Date:  October 17, 2016 |

In accordance with Local Rule 285 Plaintiff FRANK CORNEJO and Plaintiff DORA CORNEJO (hereinafter "Plaintiffs") provide the following trial to address legal issues which may present themselves during the course of trial.

1

**PLAINTIFFS' TRIAL BRIEF**

## I.    SHORT STATEMENT OF FACTS

This matter concerns a mortgage loan secured by Plaintiffs' former residence, 3425 Rancho Sierra Street, Bakersfield California (the "property"). Defendant Ocwen Loan Servicing, LLC ("Ocwen") acted as servicing agent to the mortgage beneficiary, Defendant U.S. Bank at all times material and in doing so authorized and pursued the foreclosure of the property with the assistance of the foreclosure trustee, Defendant Western Progressive, LLC.

After Plaintiffs defaulted on the mortgage, foreclosure was initiated through the recording of a Notice of Default ("NOD") on October 22, 2014 and of a Notice of Trustee's Sale ("NOTS") on February 23, 2015. The NOTS noticed a foreclosure sale date of March 27, 2015 which was postponed to April 29, 2015 by Ocwen in order to allow Plaintiffs to be reviewed for loan modification. In the time leading up to foreclosure notices being recorded, Dora Cornejo attempted to save money to reinstate the defaulted loan, but was encouraged by Ocwen to abandon that effort and apply for loan modification instead.

Plaintiffs submitted a complete loan modification application to Ocwen by April 16, 2015. Plaintiffs contend that they received no written responses from Ocwen to the application until after their property had been later sold in foreclosure. Ocwen's records corroborate receipt of certain loan modification documents by April 17, 2015. On April 21, 2015 at 6:52 p.m., Ocwen's records reflect that a letter was generated which purportedly advised that a request for an additional profit and loss and tax return was requested. Plaintiffs never received the letter and contend that even it was sent, it was not calculated to reach them before the home was lost to foreclosure.

Ocwen's logs reflect that its first contact with the borrowers regarding documents needed to continue the loan modification review was on April 27, 2015 by phone. During the call, Mrs. Cornejo raised a dispute with Ocwen and contended that

the requested forms had already been provided, but resent them nonetheless on both April 27th and April 28th, 2015. By April 28, 2015, Ocwen employees began internally emailing one another identifying that the requested documents had been received and requesting internal authorization for postponement of the April 29, 2015 foreclosure sale. The property was sold at foreclosure on April 29, 2015 and title vested in a third party, Kai Czak who later evicted the Plaintiffs and their family.

Importantly, Ocwen never denied Plaintiffs' loan modification application, but rather kept it in review continuously from April 16, 2015 through May 22, 2015. By May 1, 2015 and without any intervening document submissions, Ocwen's records reflected that the application had in fact been complete before the foreclosure sale occurred. On or about May 14, 2015, Ocwen sent Plaintiffs a letter congratulating them on obtaining a loan modification and which represented that the new loan would commence June 1, 2015 as long as Plaintiffs returned the signed documentation and initial payment of $817.29. Plaintiffs signed all applicable documentation and returned the same with payment to Ocwen. The loan modification agreement could not actually modify the loan, because the loan debt was extinguished by virtue of the completed foreclosure.

Plaintiffs have suffered economic damages and actual damages which they intend to prove at trial on October 17, 2016.

## II. ADMISSIONS AND STIPULATIONS NOT RECITED IN THE PRETRIAL ORDER

As of the time of this writing, the parties have stipulated to the following factual elements of the operative claims (in addition to those stated stipulated facts in the Court's pretrial order):

1. The subject property was the Plaintiffs' primary (and only) residence.
2. The loan was obtained to finance the purchase of the property and therefore served a household purpose.

3. Ocwen was licensed under Division 20 of the Financial Code and foreclosed on more than 175 residential real properties containing four or fewer dwelling units in California in the immediately preceding annual reporting period.

4. The loan at issue was a first position lien and the loan modification related to this loan only.

The parties are continuing to discuss whether an agreement can be reached on several issues, including an agreed-upon value of the subject property, the Plaintiffs' economic damages, certain undisputed elements of the respective claims, and certain agency issues.

## III. <u>ARGUMENTS</u>

### A. Ocwen should be barred from presenting any argument, evidence, or instruction on immunity available under California Civil Code §2924.12(g).

1. <u>Ocwen was not a signatory to the consent judgment as a matter of law.</u>

It is undisputed that Ocwen is not a signatory to the consent judgment entered in the case entitled *United States of America et al. v. Bank of America Corporation et al.*, filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC (the "Consent Decree").   In spite of this undisputed fact, Ocwen claims that it is entitled to the immunity available to compliant signatories to the Consent Decree because "Ocwen, as successor by assignment from GMAC Mortgage, LLC, is a party to a Consent Judgment entered in U.S. District Court for the District of Columbia Case No. 1:12-cv-00361-RMC."   See, Statement of Undisputed Facts in Support of Motion for Summary Judgment, Number 59, filed July 15, 2016 [Dkt. #26 at 10].  This position is both factually and legally incorrect.

In its order dated August 16, 2016 [Dkt. #44], this Court ruled that the very limited circumstances for seeking immunity under California Civil Code §2924.12(g) do not exist here.   Specifically, this Court ruled that Ocwen could not seek this

4

protection from liability as it was not a "signatory" to the consent judgment entered in the case entitled *United States of America et al. v. Bank of America Corporation et al.*, filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC (the "Consent Decree").

Despite this ruling and the complete lack of any evidence to support its position, it is anticipated that Ocwen will request that the jury be given an instruction regarding the immunity afforded under California Civil Code §2924.12(g).  Giving this instruction, or allowing Ocwen to offer any evidence regarding the immunity afforded under §2924.12(g), would be improper as there is no factual or legal basis for Ocwen to argue that it is entitled to this immunity.  Giving the instruction would accomplish nothing other than confusing the jury with an instruction that has no basis in fact or law to the potential prejudice of the Plaintiffs.

Ocwen claims that it acquired the rights available to compliant signatories to the Consent Decree as the successor in interest to GMAC.  As the Court noted in its order on Defendants' Motion for Summary Judgment, this position is unsupportable and belied by a review of the Consent Decree: "Notably, though Ocwen argues that the consent decree extends to it as a successor-in-interest to GMAC, Ocwen has failed to cite the Court any portion of the decree that does so and the Court's review of the document does not support Ocwen's position."  (Order on Motion for Summary Judgment, Dkt. #44 at 22:17-19).

Defendants' position is further proven false by the fact that the rights under the Consent Decree were specifically excluded as assets in the GMAC transfer.  On November 2, 2012, Ocwen acquired the rights to service certain loans from GMAC through an Asset Purchase Agreement (the "APA") which was part of a proposed asset sale by GMAC and other entities pursuant to a plan under Chapter 11 of Title 11

of the United States Code.[1]   Section 2.3 of the APA is titled "Excluded Assets" and states:

> Section 2.3 Excluded Assets. Notwithstanding anything herein to the contrary, Sellers will not sell, assign, convey, transfer or deliver to [Ocwen], and [Ocwen] will not purchase, acquire or assume or take assignment or delivery of, any and all assets, Contracts or rights that are not expressly Purchased Assets or Assumed Contracts, whether tangible, real, personal or mixed (collectively, the "Excluded Assets"). **For the avoidance of doubt, Excluded Assets include the following**:
>
> … (i) **the Consent Order, the DOJ/AG Settlement** [defined as "the Consent Judgment filed with the U.S. District Court for the District of Columbia on March 12, 2012 to which AFI, ResCap and GMAC Mortgage are parties"] and the Contracts, including rights and licenses thereunder; and other assets Related to the Business set forth on Schedule Q; [Bold added]. (See Plaintiffs' Request for Judicial Notice in Support of Trial Brief ("RJN"), ¶1, Exh. A).

Ocwen is not a signatory to the Consent Decree.  When Ocwen purchased the rights to service certain loans from GMAC it expressly chose to exclude any rights or obligations related to the Consent Decree.  Accordingly, there is no basis for Ocwen to seek an instruction on the immunity afforded under Cal. Civ. Code §2924.12(g), and this Court should prohibit any party from arguing or eliciting any evidence regarding the immunity afforded by §2924.12(g) or the benefits available to signatories of the Consent Decree.

In any event, the question of whether Ocwen is a "signatory" is a purely legal question.  It is well settled that "[s]tatutory interpretations are questions of law []." *Dumdeang v. CIR*, 739 F.2d 452, 453 (9th Cir.1984).  See, *City of Chula Vista v. Superior Court* (1982) 133 Cal.App.3d 472, 486, 183 Cal.Rptr. 909; *Lamar Central Outdoor, LLC v. Department of Transportation* (2013) 221 Cal.App.4th 810, 821, 164 Cal.Rptr.3d 567.  It is for the Court to determine any legal question related to the meaning of the term "signatory" and it would be error to ask the jury to consider this

---

[1] https://www.sec.gov/Archives/edgar/data/1040719/000119312512460414/d434972dex21.htm (last accessed September 12, 2016).

purely legal question.  This is consistent with California Evidence Code Section 310 which is titled "Questions of law for court" and which states:  "(a) All questions of law (including but not limited to questions concerning the construction of statutes and other writings, the admissibility of evidence, and other rules of evidence) are to be decided by the court."

        2. <u>Ocwen waived its anticipated affirmative defense by failing to plead it, and raising it on the eve of trial after discovery has closed would be unduly prejudicial to the Plaintiffs.</u>

There is also a significant question as to whether Ocwen could even assert the affirmative defense of compliance with the Consent Decree, even if it had been an actual signatory to that agreement.  It is established that the safe harbor provision for the five actual signatories to the Consent Decree is an affirmative defense which must be pled and proven by the party asserting it.  See *Rijhwani v. Wells Fargo Home Mortg., Inc*., C 13–05881, 2014 WL 890016, at *9 (N.D.Cal. Mar.3, 2014) ("safe harbor, [], appears to be an affirmative defense [] for which Wells Fargo has the burden of proof."); *Stokes v. CitiMortgage, Inc.*, CV 14–00278–BRO (SHx), 2014 WL 4359193, at *8 (C.D.Cal. Sept. 3, 2014) ("It is not [the plaintiff's] burden to plead lack of compliance with the NMS. Rather, it is an affirmative defense that Defendant may raise, but which Defendant has the burden of proof to establish."); *Gilmore v. Wells Fargo Bank N.A*., C 14–2389, 2014 WL 3749984 at *3, fn. 4, (N.D.Cal. July 29, 2014) (holding that the "safe harbor under the HBOR is an affirmative defense ... for which Wells Fargo has the burden of proof.").

Under the accepted interpretation of Rule 8(c) of the Federal Rules of Civil Procedure, any matter "constituting an avoidance or affirmative defense" to the matters raised in a complaint must be pleaded in a timely manner or it is deemed to be waived. As noted above, the safe harbor afforded the five actual signatories to the Consent Decree is an affirmative defense. Accordingly, under Rule 8(c), this statutory defense may be waived if it is not raised in a timely manner.  Rule 8(c), Fed. R. Civ. P., requires affirmative defenses to be pleaded in the answer.  Ocwen did not plead the

affirmative defense in its answer and therefore it is waived.  See Defendants' Answer to Plaintiffs' First Amended Complaint, [Dkt. #18], *generally*; see *Karoun Dairies Inc. v. Karlacti Inc.* (July 9, 2014) WL 3340917 *3 (["In responding to a pleading under Federal Rule 8(c) a party must state any affirmative defense in a timely manner or it is deemed waived." (citing *In re Adbox, Inc.,* 488 F.3d 836, 841 (9th Cir. 2007)]).

Admittedly, Courts have required a showing of prejudice to enforce waiver of an unpleaded affirmative defense.  See *Id.*  To raise Ocwen's affirmative defense – absurd as it is – for the first time at this late stage in the litigation is unduly prejudicial to the Plaintiffs.  Discovery in this matter closed on May 2, 2016, before this issue was ever raised.  *See* Joint Stipulation to Continue Pre-Trial Deadlines, [Dkt. #22]. The parties have completed all discovery.  Plaintiffs now have no ability to re-depose Ocwen's Person Most Knowledgeable or propound further written discovery seeking information on this unpleaded defense.  In *Karoun Dairies Inc.*, the Court agreed that there was manifest prejudice in the affected party's inability to conduct discovery, research and motions practice in the face of an untimely and unplead affirmative defense.  See *Karoun Dairies Inc. v. Karlacti Inc.* (July 9, 2014) WL 3340917 *6. Such is the case here.

Ocwen is not a signatory to the Consent Decree, this fact is undisputed. However, even if Ocwen somehow was able to argue that it did qualify for this safe harbor, it did not assert this affirmative defense in its answer to the Plaintiffs' Complaint and waived this defense as it did not assert it in a timely manner.

**B.    Arguments, Evidence or Instructions that the Plaintiffs are limited to seeking to recover only "actual economic damages" and not all "actual damages," including mental anguish and emotional damages are improper.**

Plaintiffs seek an instruction that the jury may award actual damages as a statutory award following a finding of intent, recklessness, or willful misconduct by the Defendants.  The relevant language of HBOR states:

> A servicer [] shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that [] servicer[]. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a [] servicer, [] the court may award the borrower **the greater of treble actual damages** or statutory damages of fifty thousand dollars ($50,000).

Cal. Civ. Code §2924.12(b) (emphasis added).   Defendants contend that the legislature intended the statutory damage award to be confined to treble "actual economic damages", despite the clear language of the statute.

The general rule is that any question of statutory interpretation begins by looking at the plain language giving the words used in the statute their usual and ordinary meanings.  (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901.)  Also, the statutory language is to be construed in the context of the statute as a whole and within the overall statutory scheme.  (*Id*.) and "The enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted" *People v. Weidert*, (1985) 39 Cal.3d 836, 844.

Section 2924.12(b) uses different terms ("actual economic damages" v. "actual damages") to set forth the type of damages which can be awarded.  The statute mandates liability in the amount of "actual economic damages" for non-intentional conduct and specifically refers to damages available under California Civil Code Section 3281.[2]  In contrast, the separate section dealing with the "actual damages" available for intentional, reckless or willful conduct does not.  It is axiomatic that if the term "actual damages" was intended to mean "actual economic damages" that the legislature would have simply used the term "actual economic damages" throughout HBOR.  However, the legislature chose to use the term "actual damages" when discussing the remedy for willful, reckless or intentional conduct and it must be

---

[2] California Civil Code Section 3281 is titled "Damages; person suffering detriment" and states:  "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."  (Cal. Civ. Code §3281).  Civil Code section 3282 defines detriment as "a loss or harm suffered in person or property." (Cal. Civ. Code §3282).

1   presumed that in so doing they were "aware of existing laws and judicial constructions

2   in effect at the time [HBOR was] enacted" *Weidert, supra.*

3       In interpreting statutory language, when different terms are used by the

4   Legislature in the same statutory scheme they must be given different meanings. (*Roy*

5   *v. Superior Court* (2011) 198 Cal.App.4th 1337, 1352, 131 Cal.Rptr.3d 536 [" '[w]hen

6   the Legislature uses different words as part of the same statutory scheme, those words

7   are presumed to have different meanings' "]; *Romano v. Mercury Ins. Co.* (2005) 128

8   Cal.App.4th 1333, 1343, 27 Cal.Rptr.3d 784 [same]; see *Brown v. Kelly Broadcasting*

9   *Co.* (1989) 48 Cal.3d 711, 725, 257 Cal.Rptr. 708, 771 P.2d 406 ["'when the

10  Legislature has carefully employed a term in one place and has excluded it in another,

11  it should not be implied where excluded'"].) The Legislature elected to use two

12  distinct terms "actual economic damages" and "actual damages" throughout the

13  statute at issue.   There is no reason to believe that decision was anything but a

14  deliberate act by the Legislature.

15      At the time that HBOR was enacted, both existing laws and judicial

16  constructions made it clear that the term "actual damages" encompassed all damages,

17  including damages for mental suffering.   The analysis set forth by the Court in

18  *McNairy v. C.K. Realty* (2007) 150 Cal.App.4th 1500, is instructive on this point.   In

19  that case, the Court addressed the meaning of "actual damages" allowed under Cal.

20  Civil Code Section 1942.4 which governs the damages available to a tenant suing a

21  landlord.   The tenant testified to emotional damages and mental anguish including

22  embarrassment, anger, fear, stress, helplessness, and frustration and sought to recover

23  these as "actual damages."   The Court rejected the argument that "actual damages" as

24  used in the statute did not include damages for emotional distress as "the plain

25  language 'actual damages' includes damages for emotional distress.  As another court

26  explained, 'emotional distress is a form of actual damage.' (*Merlo v. Standard Life*

27  *and Acc. Ins. Co*. (1976) 59 Cal.App.3d 5, 16, 130 Cal.Rptr. 416.) 'The phrase "actual

28  damages" is ordinarily synonymous with compensatory damages which may include

damages for mental suffering.' (*Balmoral Hotel Tenants Assn. v. Lee* (1990) 226 Cal.App.3d 686, 689, 276 Cal.Rptr. 640 (*Balmoral*).) Thus, the plain language of the statute includes damages for emotional distress." *McNairy v. C.K. Realty* (2007) 150 Cal.App.4th at 1506; see also *Lopez v. Federal Nat. Mortg. Ass'n*, 2013 WL 7098634 at *11, (C.D. Cal. Oct. 8, 2013) [citing *McNairy* with approval for the proposition that "'actual damages' includes damages for emotional distress."]

As stated by another Court, " '[a]ctual damages' is a term synonymous with compensatory damages ....' [citations]." (*Saunders v. Taylor* (1996) 42 Cal.App.4th 1538, 1543–1544, 50 Cal.Rptr.2d 395; *Weaver v. Bank of America* (1963) 59 Cal.2d 428, 437–438, 30 Cal.Rptr. 4, 380 P.2d 644.) Indeed, in the more than 150 times the term "actual damages" is used in California statutes, it is never "used to distinguish between different measures of compensatory damages." (S*aunders v. Taylor*, 42 Cal.App.4th at p. 1544, 50 Cal.Rptr.2d 395.).

Courts have consistently held that statutory language allowing for "actual damages" includes damages for mental and emotional suffering.  See, *Drew v. Equifax Information Servs., LLC*, 690 F.3d 1100, 1109 (9th Cir.2012; *Taylor v. First Advantage Background Services Corp*, No. 15-cv-02929-DMR, 2016 WL 4762268 (N.D. Cal.  September 13, 2016); *Banneck v. HSBC Bank USA, N.A*., No. 15–CV–02250–HSG, 2016 WL 3383960 (N.D.Cal. June 20, 2016).  (Discussing the "actual damages" available under the Fair Credit Reporting Act).  *In re Dawson*, 390 F.3d 1139 (9th Cir.2004) ("actual damages" allowed for the willful violation of the automatic bankruptcy stay, 4 11 U.S.C. § 362(h), include damages for emotional distress).  *In re Dove*, No. 13–11778, 2016 WL 3003638 at *3 (N.D. Cal. Bkruptcy. May 17, 2016) ("When a federal statute provides for 'actual damages,' the term can include emotional distress damages, especially when the protection of the statute is limited to individuals.").

If the legislature had meant for the damages available for willful, reckless or intentional violations of HBOR to be limited to the same "actual economic damages"

11

available for technical violations, it would not have used a different term.  The term "actual damages" includes all compensatory damages, both economic and non-economic. Therefore, the Plaintiffs should be allowed to present evidence of all aspects of the damages they suffered, including mental and emotional suffering.

**C.    Arguments, evidence, or instructions that the burden of proof which the Plaintiffs must meet to establish liability or entitlement to damages, whether economic or actual, is more than by a preponderance of the evidence would be improper.**

> 1. <u>The relevant statute does not apply a higher standard of proof, therefore the standard of proof is a mere preponderance of the evidence.</u>

Under the California Code of Evidence, "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."  Cal. Evid. Code §115.

Here the governing standard, as to both liability and damages, is proof by a preponderance of the evidence.  There is no language in HBOR which sets forth, or even indicates, that a higher standard of proof should be applied.   In addition, guidance from courts considering similar statutes clearly demonstrates that the preponderance of the evidence standard should be applied.

In its recent decisions in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, __ U.S. __, 136 S.Ct. 1923, 195 L.Ed.2d 278 (2016) and *Octane Fitness, LLC v. ICON Health & Fitness Inc*., 572 U.S. __, 134 S.Ct. 1749, 188 L.Ed.2d 816 (2014) the United States Supreme Court addressed the standard to be applied to both liability and damages questions in patent litigation.  The reasoning set forth in those decisions is both instructive and compelling.  In rejecting the argument that a higher standard should be applied, the Supreme Court reaffirmed that the traditional preponderance of the evidence standard, the standard generally applicable in civil actions, controlled.

Central to the Supreme Court's reasoning was that the statutory language at issue "imposes no specific evidentiary burden, much less such a high one." *Octane*,

572 U.S., at __, __, 134 S.Ct., at 1758.  The Court further stated that "the fact that Congress expressly erected a higher standard of proof elsewhere in the Patent Act, see 35 U.S.C. § 273(b), but not in § 284, is telling [and] nothing in historical practice supports a heightened standard."  *Halo*, __ U.S. __, __, 136 S.Ct. 1923, 1933.  This rationale applied to the burden of proving both liability and damages.  "Enhanced damages are no exception."  *Id.*

This same reasoning should be followed in the present case.  In enacting HBOR the legislature did not include any language indicating that an evidentiary burden higher than the traditional "preponderance of the evidence" is to be applied.    HBOR "imposes no specific evidentiary burden, much less such a high one" and the fact that the California legislature has "expressly erected a higher standard of proof" in Cal. Civ. Code § 3294, "but not in" HBOR "is telling."  See *Halo*, __ U.S. __, __, 136 S.Ct. 1923, 1933.

2.  The trebling of statutory damages does not automatically invoke a burden of proof traditionally reserved for punitive damages.

While not expressly stated, it appears that the argument which Ocwen will rely on in seeking to have the jury instructed on the "clear and convincing" burden of proof is the incorrect assumption that the treble damages allowed under HBOR are actually punitive damages, subject to Cal. Civ. Code § 3294.  This position is incorrect and improperly seeks to conflate statutory damages with punitive damages.

As a threshold matter, nothing in HBOR states, or would even indicate, that the Legislature meant for a higher standard to be applied to proving entitlement to "actual damages."  It must be presumed that the drafters of HBOR were aware of existing law, including Cal. Civ. Code § 3294.  Because HBOR does not mention § 3294, punitive damages, a higher burden of proof, or anything else which could be construed to indicate that a higher standard of proof was required for seeking actual damages, there is no basis for asserting that such a standard should be applied.  This is consistent with the guidance of the Supreme Court in *Halo* and *Octane*.  In addition,

the claims which are being presented are only for alleged violations of HBOR, there is no claim for punitive damages.

Ocwen's position appears to be that the treble damages available under HBOR upon a showing of willful, reckless or intentional conduct are actually punitive damages under Cal. Civ. Code § 3294. This argument has been expressly rejected by courts which have considering the role of statutory damages under similar statutes.

As explained by the court in *Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1597-1598 stated: "The problem with appellant's argument is that it erroneously equates punitive damages with statutory damages, and assumes the two are awarded based on the same standards. [Citation.]" That court went on to find that "[s]tatutory damages may either take the form of penalties, which impose damages in an arbitrary sum, regardless of actual damages suffered or, as in the instant case, may provide for the doubling or trebling of the actual damages as determined by the judge or jury. [Citation.]" In expressly rejecting the very position that Ocwen is expected to present, the *Beeman* court concluded: "while both exemplary damages and statutory damages serve to motivate compliance with the law and punish wrongdoers, they are distinct legal concepts, one of which is entrusted to the factfinder, the other to the Legislature. The numerous statutes specifically providing for treble damages testify to the fact that the Legislature never intended Civil Code sections 3294 and 3295 to restrict its ability to set the appropriate damage award in particular areas. [Citations.]" *Id*.

One Court described a similar argument as "imaginative". See *Kelly v. Yee* (1989) 213 Cal.App.3d 336, 338. As that Court noted, while there is "judicial language to the effect that treble damages are 'punitive in nature.' [Citations]" The argument that statutorily available damages are the same as punitive damages "is merely semantical and diversionary." Id.

For the reasons set forth above, Ocwen should be precluded from introducing arguments, evidence, or instructions suggesting that the statutory damages available

1   are to be categorized as "punitive" or that a clear and convincing standard of proof

2   applies.

**D.    The Jury Should Not Be Instructed Re: Trebling of Damages, As Doing So Would Prejudice The Plaintiffs.**

In its proposed instructions and verdict form, Ocwen agrees that the jury should not be advised regarding the fact that any "actual damages" awarded, should the jury find the requisite conduct has been proven, will be trebled.  However, in the event that this issue is raised, Plaintiffs assert that it would be error to advise the jury of the potential for treble damages to be awarded. "The majority rule is that it is error for a court to instruct a jury that it will subsequently treble any damages the jury awards." *Brooks v. Cook*, 938 F.2d 1048, 1052 (9th Cir. 1991).

**E.    The Jury Decides Issues of Liability And the Amount of Any Damages.**

In its circulated proposed jury instructions and verdict form, Ocwen agrees that the jury should decide all liability questions as well as the amounts of all damages, subject only to trebling by the trial judge.  While Ocwen and the Plaintiffs disagree with regard to the manner in which the jury should be instructed on these issues and what types of damages can be awarded, there appears to be agreement that the role of the jury is to determine liability and assess damages.

However, in subsequent conversations, counsel for Ocwen appears to be significantly altering these positions and Plaintiffs believe that Ocwen will now assert that it is for the trial judge, and not the jury, to decide any issues related to recklessness, willfulness or intentional conduct and to decide what damages, other than actual economic damages, should be awarded.  Assuming that Ocwen does seek to assert these new positions, Plaintiffs point out that they are both contrary to the prior positions taken by Ocwen, in contravention of the clear language of HBOR and are unsupported by any legal authority.

It is without question that the amount of damages is a fact question, committed to the discretion of the jury.  *StreetScenes v. ITC Entertainment Group, Inc.* (2002)

103 Cal.App.4th 233, 245, 126 Cal.Rptr.2d 754 (2002); *Janice H. v. 696 North Robertson, LLC*, (2016) 1 Cal.App.5th 586, 205 Cal.Rptr.3d 103, 118; *Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 506–507, 15 Cal.Rptr. 161, 364 P.2d 337; *Gersick v. Shilling* (1950) 97 Cal.App.2d 641, 645.

Similarly, questions of intent, willfulness or recklessness are reserved for the jury.  See *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007) ("Willfullness under the FCRA is generally a question of fact for the jury."); *Wall Mountain Co., Inc. v. Edwards*, 2009 WL 2524195 *4 (N.D.Cal. Aug. 17, 2009) ("the determination of willfulness is ordinarily a question of fact for the jury."); *Sega Enterprises Ltd. v. MAPHIA*, 948 F.Supp. 923, 936 (N.D.Cal.1996) ("Generally, a determination as to willfulness requires an assessment of a party's mind, a factual issue that is not usually susceptible to summary judgment").

Apparently, the sole basis for Ocwen arguing that these bedrock principles of law should not apply in the present case is the fact that HBOR states:  "If **the court** finds that the material violation was intentional or reckless, or resulted from willful misconduct [], **the court** may award [] treble actual damages." Cal.Civ.Code § 2924.12 (emphasis added).

Once again, Ocwen strains the language of HBOR seeking to achieve the result that it wants. Long standing rules of statutory construction show the error in what the Plaintiffs anticipate will be Ocwen's argument.  When "interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature . . .." *Brown v. Duchesne*, 19 How. 183, 194, 15 L.Ed. 595 (1857).  This legal principle, referred to as the "Whole Act Rule" mandates that when interpreting statutes, courts are obligated to look at the statute as a whole. See, William N. Eskridge, Jr. & Phillip P. Frickey, Legislation: Statutes and the Creation of Public Policy 645 (1988)

(describing the "Whole Act Rule"). As succinctly stated by one court "[w]hen interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute ... and the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the will of the Legislature." *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974) (citation omitted).   See also *Helvering v. New York Trust Co.* (1934) 292 U.S. 455, 464.

Ocwen will likely argue that by using the term "the Court" in HBOR, the Legislature meant to refer to the trial judge, not to the jury.  However, there is nothing in HBOR which would suggest that the Legislature meant to abrogate the well established role of the jury in determining issues of intent and the amount of damages suffered.  As noted above, "The enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted" *People v. Weidert*, (1985) 39 Cal.3d 836, 844.  To adopt the expected position of Ocwen would be directly contrary to this legal principle.

Another canon of statutory construction is that the Court must avoid an interpretation that would produce an absurd result. See, *United States v. Wilson*, 503 U.S. 329, 334, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992); *Ma v. Ashcroft*, 361 F.3d 553, 559 (9th Cir.2004) (rejecting and affording no deference to a legal interpretation that "contravenes the statute and leads to absurd and wholly unacceptable results").

The practical effect of Ocwen's position would be that the jury would decide only whether the statutory violations had been established and the amount of actual economic damages to be awarded.  Then, assuming the jury found that a violation had been proven, the trial judge would hold a separate trial to determine whether there was sufficient evidence to establish willfulness, recklessness or intentional conduct and, if so, the amount of "actual damages" to be awarded.  The absurdity of this position is obvious.  In essence, Ocwen will be arguing that the trial should be bifurcated and that the trial judge will decide issues of liability and damages which cases state are for the

1    jury to determine.[3]  All of this is because the term "Court" is used in HBOR instead of

2    a term such as "trier of fact."   There is no legal or logical reason to adopt this

3    approach.

4         However, even if Ocwen's position was correct, it would still be improper to

5    remove the determination of liability and damages from the jury as doing so would be

6    unconstitutional.   A statute is presumed constitutional and must be interpreted in

7    harmony with constitutional requirements. (*California Housing Finance Agency v.*

8    *Elliott* (1976) 17 Cal.3d 575, 594, 131 Cal.Rptr. 361, 551 P.2d 1193).   The very

9    argument which Plaintiffs expect that Ocwen will present has been considered and

10   rejected by both the United States Supreme Court and the Ninth Circuit Court of

11   Appeals.

12        In discussing language in federal copyright law which is similar in all relevant

13   respects to the language used in HBOR (as it refers to the "court" and allows for treble

14   damages) the Ninth Circuit has ruled:  "We have subsequently interpreted *Feltner* [*v.*

15   *Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438

16   (1998)] to uphold the constitutionality of the statutory damages provision [in the

17   copyright law], provided that at the plaintiff's election of a jury trial, **we replace the**

18   **term "court"** [] **with "jury**." *Columbia Pictures Television, Inc. v. Krypton Broad. of*

19   *Birmingham, Inc.*, 259 F.3d 1186, 1192–93 (9th Cir.2001)."  (emphasis added).  That

20   is because the Supreme Court has held that "the Seventh Amendment provides a right

21   to a jury trial on all issues pertinent to an award of statutory damages [] including the

22   amount itself." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355, 118

23   S.Ct. 1279, 140 L.Ed.2d 438 (1998) (interpreting § 504(c) of the Copyright Act).  See,

24   *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 989 (9th Cir.2009).

25        As noted by Justice Scalia in his concurring opinion in *Feltner*, "[i]n common

26

27   ---
     [3] In the Joint Pre-Trial Conference Statement filed by the parties, Ocwen and all Defendants previously acknowledged
        in open court that all parties agreed that there would be no separate trials or bifurcation of any kind.  See Joint Pre-
28      Trial Conference Statement at p. 14:25-26.  The Plaintiffs' position is that a motion to bifurcate at this late stage
        screams of gamesmanship and should be rejected as having been waived when the Joint Pre-Trial Conference
        Statement was filed.

PLAINTIFFS' TRIAL BRIEF

legal parlance, the word 'court' can mean '[t]he judge or judges, as distinguished from the counsel or jury.' Webster's New International Dictionary 611 (2d ed.1949) (def. 10d). But it also has a broader meaning, which includes both judge and jury. See, e.g., ibid. (def. 10b: 'The persons duly assembled under authority of law for the administration of justice'); Black's Law Dictionary 318 (5th ed.1979) ('... A body organized to administer justice, and including both judge and jury'). We held in *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), that a statute authorizing "the court ... to grant such legal or equitable relief as may be appropriate," 29 U.S.C. § 626(b), could fairly be read to afford a right to jury trial on claims for backpay under the Age Discrimination in Employment Act of 1967." *Id*. 523 U.S at 356.

Under this controlling authority, if there is any question regarding whether the term "court" as used in HBOR means the trial judge or the jury, it must be interpreted to mean the jury. This is not only mandated by these precedents, but is also consistent with established law and would not lead to an absurd and unintended result.

**DATED:** October 7, 2016      **KATCHKO, VITIELLO & KARIKOMI, PC**

By: */S/ GIANDOMINIC VITIELLO*
GIANDOMINIC VITIELLO,
Attorneys for Plaintiffs
FRANK CORNEJO and DORA CORNEJO.

## CERTIFICATE OF SERVICE
## UNITED STATES DISTRICT COURT

**Cornejo et al. v. Ocwen Loan Servicing LLC et al.** - 1:15-CV-00993-AWI-JLT

I am an employee in Los Angeles County, State of California. I am over the age of 18 and not a party to the within action. My business address is 11500 W. Olympic Blvd., Suite 400, Los Angeles, California 90064.

On October 7, 2016 I served the foregoing document described as **PLAINTIFFS' FRANK AND DORA CORNEJO'S TRIAL BRIEF** on the interested parties in said action as follows:

**VIA ELECTRONIC SERVICE:** Served electronically via the Court's CM/ECF System on the following the following interested parties:

| | |
|---|---|
| **McGLINCHEY STAFFORD**<br>Brian A. Paino (SBN 251243)<br>Hassan Elrakabawy (SBN 248146)<br>Dhruv M. Sharma (SBN 279545)<br>18201 Von Karman Avenue, Suite 350<br>Irvine, California 92612<br>Telephone: (949) 381-5900<br>Facsimile: (949) 271-4040<br>Email: bpaino@mcglinchey.com<br>helrakabawy@mcglinchey.com<br>dsharma@mcglinchey.com | Attorney for Defendants OCWEN LOAN SERVICING, LLC, U.S. BANCORP d/b/a U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR HOLDERS OF STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-RF3, WESTERN PROGRESSIVE, LLC |

I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United State of America that the foregoing information is true and correct.

**DATED**: October 7, 2016                    */S/ GIANDOMINIC VITIELLO*
                                             GIANDOMINIC VITIELLO