**McGLINCHEY STAFFORD**
Brian A. Paino (SBN 251243)
Sanford P. Shatz (SBN 127229)
Dhruv M. Sharma (SBN 279545)
18201 Von Karman Avenue, Suite 350
Irvine, California 92612
Telephone:  (949) 381-5900
Facsimile:  (949) 271-4040
Email:  bpaino@mcglinchey.com
 sshatz@mcglinchey.com
 dsharma@mcglinchey.com

Attorneys for *Defendants* **OCWEN LOAN SERVICING, LLC and U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF THE STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-RF3**

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| FRANK CORNEJO, an individual; and DORA CORNEJO, an individual;<br><br>    Plaintiffs,<br><br>  v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company; U.S. BANCORP d/b/a U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR HOLDERS OF STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-RF3, a national association; WESTERN PROGRESSIVE, LLC, a Delaware limited liability company; and DOES 1 THROUGH 100, inclusive;<br><br>    Defendants. | Case No.:  1:15-cv-00993-JLT<br><br>Hon. Magistrate Judge Jennifer L. Thurston<br><br>**DEFENDANTS' SUPPLEMENTAL TRIAL BRIEF** |

*Defendants* Ocwen Loan Servicing, LLC ("Ocwen") and U.S. Bank National Association, as Trustee for the Holders of the Structured Asset Securities Corporation Mortgage Pass-Through Certificates, Series 2005-RF3 ("U.S. Bank," and together with Ocwen, the "Defendants") respectfully submit the following Supplemental Trial Brief.

///

///

## I. INTRODUCTION

This case was recently tried before an eight member jury. Before the trial started, the Court advised Defendants that, prior to the entry of judgment, they would be able to prove up an affirmative defense to *plaintiffs* Dora and Frank Cornejo's ("Plaintiffs") only remaining cause of action for violation of section 2923.6 of the California Civil Code.[1] Defendants' defense is based on the provisions of section 2924.12(g) of the California Civil Code, which creates an exemption for entities bound by the consent judgment (the "Judgment") entered in U.S. District Court for the District of Columbia Case No. 12-00361. In short, section 2924.12(g) provides that "signatories" to the Judgment are exempt from complying with section 2923.6 as long as they act in accordance with the Judgment.

Ultimately, the applicability of the defense prescribed by section 2924.12(g) to this case turns on whether Ocwen: (1) is a "signatory" to the Judgment; and (2) complied with the Judgment. As to the first part of this analysis, Ocwen is a "signatory" within the meaning of section 2924.12(g) as it is expressly obligated to perform under the Judgment by virtue of its Asset Purchase Agreement (the "Purchase Agreement") with GMAC Mortgage, LLC ("GMACM"). Ocwen is also a party to its own consent judgment that contains loan modification servicing obligations identical to those included in the Judgment. By virtue of its status as a "signatory" to the Judgment, Ocwen was exempt from complying with section 2923.6. This is because the record reflects that Ocwen complied with the applicable terms of the Judgment by advising Plaintiffs that it would not have time to review their untimely and incomplete loan modification application. For these reasons, as explained more fully herein, Defendants are entitled to judgment on Plaintiffs' only remaining claim.

///

///

---

[1] In a rush to bring publicity to this case, Plaintiffs conveniently ignored the Court's advisement and issued a press release on October 26, 2016, declaring themselves to be the recipients of a $339,642 verdict, consisting of both economic damages and non-economic damages for emotional distress. Not only did Plaintiffs' press release fail to recognize the procedural posture of the case, but it misled the public by implying that Plaintiffs received an award of emotional distress damages based on a violation of section 2923.6. As a result of this false press release, Defendants were forced to take remedial action, which ultimately resulted in the release being removed from the website that published it on Plaintiffs' behalf. Despite their diligent efforts, Defendants have not been able to remove the inaccurate content in its entirety from the internet as other websites have published the same false information based on the original press release.

## II. ANALYSIS

### A. OCWEN QUALIFIES FOR THE EXEMPTION PRESCRIBED BY CAL. CIV. CODE § 2924.12(g)

Violations of the dual-tracking provisions of section 2923.6 of the California Civil Code are enforced through section 2924.12 of the California Civil Code. *See* Cal. Civ. Code §§ 2924.12(a)-(b). Section 2924.12 recognizes that signatories to the Judgment are not liable for violating section 2923.6 if they act in accordance with the terms of the Judgment. *See* Cal. Civ. Code § 2924.12(g). Courts within the Ninth Circuit have held that section 2924.12(g) serves as an affirmative defense to a claim for violation of section 2923.6. *See Segura v. Wells Fargo Bank, N.A.*, 2014 WL 4798890, at *5 (C.D. Cal. 2014). The starting point for evaluating whether section 2924.12(g) applies in this case is to determine whether Ocwen is a "signatory" to the Judgment.

#### 1. Ocwen as a Signatory

It is well settled that a federal court sitting in diversity applies state rules of statutory construction when interpreting a state statute. *See Daghlian v. DeVry Univ., Inc.*, 461 F.Supp.2d 1121, 1140 (C.D. Cal. 2006). Under California law, statutes are construed in the context of the statute as a whole and the overall statutory scheme, so that each word, phrase, sentence, and part of the statute is given significance in pursuit of the legislative purpose. *See In re Ogea*, 121 Cal.App.4th 974, 980-81 (2004) (citation omitted). However, "[l]iteral construction should not prevail if it is contrary to the legislative intent apparent in the statute." *See id.* (citation and internal quotations omitted). "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." *Id.* Moreover, statutes are construed with reference to all other statutes of similar subject so that each part of the law as a whole may be harmonized and given effect. *See Landrum v. Superior Court*, 30 Cal.3d 1, 14 (1981).

With these rules in mind, Defendants turn to the language of the statute. Section 2924.12(g) provides in full:

> A *signatory* to a consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC, that is in compliance with the relevant terms of the

> Settlement Term Sheet of that consent judgment with respect to the borrower who brought an action pursuant to this section while the consent judgment is in effect shall have no liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

Cal. Civ. Code § 2924.12(g) (emphasis added). Plaintiffs have interpreted the term "signatory," as used in section 2924.12(g), to refer only to the entities that physically signed the Judgment. This interpretation ignores a fundamental rule of statutory interpretation: that a literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. *See In re Ogea*, 121 Cal.App.4th at 980-81. Ultimately, a brief discussion of the purpose of section 2924.12(g) is necessary to determine the meaning of the term "signatory."

### 2.  The Statute's Purpose

Although there is scant evidence of the legislative history behind section 2924.12(g), one need not look any further than the statutory scheme itself to ascertain its purpose. Indeed, the legislature expressly stated its intention that the provisions of the Homeowner Bill of Rights ("HBOR") not obviate or supersede the obligations of the signatories to the Judgment. *See* Cal. Civ. Code § 2923.4(b) ("Nothing in this article obviates or supersedes the obligations of the signatories to the consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the [U.S.] District Court for the District of Columbia, case number 1:12-cv-00361-RMC."). Section 2924.12(g) is the legislature's mechanism for fulfilling this intent. Put simply, the legislature intended to exempt entities that were obligated to perform under the Judgment from having to separately perform under the HBOR, provided they are able to demonstrate compliance with the Judgment.

### 3.  Ocwen As Successor in Interest

Given the clear intent of the legislature to exempt entities obligated under the Judgment from complying with HBOR, the term "signatory" must be given a non-literal meaning to fulfill this intent. This is because the entities that originally signed the Judgment are not the only entities that are bound by it. On the contrary, judicially noticeable facts demonstrate that GMACM entered into the Judgment with the United States and various other governmental entities in or about April of

2012. (*See* DX 586).[2] The Judgment was filed in U.S. District Court for the District of Columbia Case No. 12-0361 on April 4, 2012. (*See id.*; DX 585). While Ocwen did not sign the Judgment, it is nevertheless bound by it for the reasons discussed below.

### a. The Purchase Agreement

Following the entry of the Judgment, GMACM and Ocwen entered into the Purchase Agreement, which was dated November 2, 2012. (*See* DX 584-55). Thereafter, Ocwen and GMACM entered into an Amendment No. 1 to Asset Purchase Agreement (the "Amendment"). (*See* DX 584-159). These agreements provide, in pertinent part:

> **Section 6.16 Consent Order and DOJ/AG Settlement.**[3] Sellers and Purchaser shall use their best efforts to, as promptly as is reasonably practicable after the date of this Agreement, amend on this Agreement (the "Section 6.16 Amendment"), on terms acceptable to each of Sellers, Purchaser and all applicable Governmental Entities, to address the treatment of…(b) the Consent Judgment with accompanying exhibits entered by the United States District Court for the District of Columbia on April 5, 2012 (Docket # 13) in the action styled *United States of America, et al. v. Bank of America Corp., et al.*, No. 12-CV-00361, with respect to the settlement agreement among the plaintiffs in that action and AFI, ResCap, and GMAC Mortgage.

*See* Purchase Agreement (DX 584-133), Section 6.16.

> **Section 6.16A DOJ/AG Settlement**.
>
> (a) Purchaser agrees to perform, from and after the Closing Date, the obligations of the ResCap Sellers under the DOJ/AG Settlement regarding the Purchased Assets; provided, however, that Purchaser is not required to perform the obligations excluded under Section 6.16A(b) below. The obligations under the DOJ/AG Settlement that Purchaser is obligated to perform as provided in this Section 6.16A are collectively referred to as the "Assumed DOJ/AG Settlement Obligations". Unless a different definition is provided in this Agreement, terms defined in the DOJ/AG Settlement have the same meaning when used in this Section 6.16A. The Assumed DOJ/AG Settlement Obligations include the obligations set forth in the following Exhibits to the DOJ/AG Settlement, except to the extent excluded under Section 6.16A(b) below:

---

[2] The Court took judicial notice of this document in its August 16, 2016 order on Defendants' Motion for Summary Judgment. (*See* Dkt. No. 44). To the extent necessary, Defendants request that the Court, once again, take judicial notice of the document pursuant to Federal Rule of Evidence 201.

[3] All references in the Purchase Agreement and Amendment to the "DOJ/AG Settlement" refer to the Judgment. (*See* DX 584-70; DX 584-160).

(1) Exhibit A, entitled "Settlement Term Sheet"…

*See* Amendment (DX 584-160), Section 6.16A.[4] By virtue of these provisions, Ocwen is indisputably obligated to perform under the Judgment, the relevant terms of which were incorporated by reference into the Purchase Agreement.[5] *See Griffin v. Williamson*, 137 Cal.App.2d 308, 315 (1995) (recognizing that an assignee is obligated to perform covenants binding upon his assignor where he expressly agrees to perform those covenants).

### b. Changed Circumstances

Having established that Ocwen is bound by the Judgment, Defendants return to the language of section 2924.12(g). As noted above, the statute uses the term "signatory" to refer to the parties bound by the Judgment. While Plaintiffs urge the Court to read the term "signatory" literally, they fail to understand that doing so would undermine the legislature's purpose in enacting the statute. It has long been recognized that "[s]tatutes are not to be confined to the particular applications contemplated by the legislators." *People v. Bell*, 241 Cal.App.4th 315, 343 (2015) (citations and internal quotations omitted). They are instead to be "interpreted as embracing everything that subsequently fall[s] within their scope." *Id.* (citation and internal quotations omitted). "As a result, if the statute's language fairly brings a given situation within its terms, it is unimportant that the particular application may not have been contemplated." *Id.* (citations and internal quotations omitted). Interpreting section 2924.12(g) to apply to Ocwen is consistent with these principles. In fact, interpreting the statute otherwise would not only fail to give effect to the legislature's intent to exempt entities bound by the Judgment, but it would cut-off a right (i.e., the right to an exemption from HBOR) that clearly falls within the scope of the statute. Plainly stated, to give effect to the legislative intent behind the statute, section 2924.12(g) should be interpreted to apply to Ocwen. *See In re Ogea*, 121 Cal.App.4th at 981.

///

---

[4] Although the Amendment recognizes exceptions to Ocwen's obligations under the Judgment, those exceptions do not apply in this case. Instead, the exceptions apply to: (a) servicing or other activities regarding loans that Ocwen did *not* purchase from GMACM (Ocwen established during trial that the loan at issue in this case was part of the Purchase Agreement); (b) obligations required to be performed prior to the closing date of the Purchase Agreement; and (c) certain financial obligations imposed on GMACM under the Judgment. (*See* Amendment (DX 584-161), Section 6.16A(b)).

[5] As further evidence that Ocwen is obligated to perform under the Judgment, it has been subject to the monitoring procedures prescribed thereunder. (*See* DX 590).

### 4. The Ocwen Consent Judgment

It is also appropriate to extend the provisions of section 2924.12(g) to Ocwen due to its status as a signatory to the Consent Judgment entered in U.S. District Court for the District of Columbia Case No. 13-cv-2025, the relevant terms of which are identical to the Judgment.[6] (*See* Dkt. No. 27, **Exhibit 11**; PX 44). Extending section 2924.12(g)'s exemption to Ocwen under these circumstances is appropriate as it effectuates the legislature's intent to exempt entities bound by consent decrees with the United States of America from having to comply with the HBOR. The fact that the Ocwen consent judgment is not specifically referenced in section 2924.12(g) is of no moment. On the contrary, section 2924.12(g)'s application is not confined to the particular applications contemplated by the legislature at the time it was enacted. Regardless of whether the legislature contemplated that the statute would apply to other consent decrees, it is consistent with the underlying purpose of the statute to extend its scope to entities such as Ocwen that have entered into decrees that are nearly identical to the Judgment.

### 5. Compliance

The second element for establishing a defense under section 2924.12(g) is compliance with the Judgment. Unlike the HBOR, the Judgment imposes more exact limitations on when a borrower can timely submit a loan modification application. More specifically, the Judgment recognizes that a servicer is not required to review an application or postpone a sale if it receives a loan modification application more than 30 days after a borrower has been referred to foreclosure and less than 15 days before a scheduled foreclosure sale. (*See* DX 586-15, *Section I.B.9.*) This is precisely what occurred in this case. To start, Plaintiffs' account was formally referred to foreclosure on May 13, 2014. (*See* PX 6). That same day, Ocwen sent Plaintiffs a Post Referral to Foreclosure Solicitation Letter (the "Letter"), as required under the Judgment. (*See* DX 586-17, *Section I.C.6.*; DX 534-1; *Stipulation Re: Admissibility of Evidence* [Dkt. No. 77]). After not receiving any requests for assistance from Plaintiffs, on October 22, 2014, a Notice of Default and Election to Sell Under Deed of Trust was recorded against the subject property. (*See* JT/1). Thereafter, on February 23, 2015, a Notice of

---

[6] Although the Court previously took judicial notice of this document, (*see* Dkt. No. 44), to the extent necessary, Defendants request that the Court, once again, take judicial notice of the document pursuant to Federal Rule of Evidence 201.

Trustee's Sale was recorded against Plaintiffs' property, which set a sale date of March 27, 2015. (*See* JT/2). This sale date was subsequently postponed to April 29, 2015. (*See* DX 597; PX 9).

Based on the April 29, 2015 sale date, Plaintiffs were required to submit an application to Ocwen on or before April 14, 2015, to invoke any protections under the Judgment. The record clearly reflects that they failed to do so. Indeed, Plaintiffs submitted their incomplete application on April 16, 2015, which was less than 15 days before the scheduled sale and more than 30 days after Ocwen sent the Letter. (*See* JT/17). Pursuant to the terms of the Judgment, Ocwen was not required to review Plaintiffs' application. (*See* DX 586-15, *Section I.B.9.*) Rather, it was only required to inform Plaintiffs prior to the foreclosure sale date whether it would be able to complete its review of their application. Consistent with this requirement, on April 28, 2015, an Ocwen representative unequivocally advised Plaintiffs that Ocwen would not have time to review their untimely application. (*See* JT/4-58). By virtue of the foregoing, Ocwen indisputably complied with the terms of the Judgment. It follows that Ocwen was exempt from complying with section 2923.6 of the California Civil Code, thereby preventing Plaintiffs from establishing any liability against Defendants.[7]

## III. CONCLUSION

For the reasons set forth herein, Defendants are entitled to judgment on Plaintiffs' only remaining claim for violation of section 2923.6 of the California Civil Code.

DATED: November 4, 2016

**McGLINCHEY STAFFORD**

By: */s/ Brian A. Paino*
    BRIAN A. PAINO
    SANFORD P. SHATZ
    DHRUV M. SHARMA
Attorneys for *Defendants* **OCWEN LOAN SERVICING, LLC and U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF THE STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-RF3**

---

[7] Plaintiffs have maintained throughout this case that U.S. Bank's liability extends only so far as it is Ocwen's principal. Absent liability on the part of Ocwen (the agent), there can be no liability against U.S. Bank (the principal). *See* 3 Witkin, Summary 10th Agency § 167 (2005) ("The liability of an innocent, nonparticipating principal under the respondent superior doctrine is based on the wrongful conduct of the agent; the principal cannot be liable unless the agent is liable.").

# PROOF OF SERVICE

**STATE OF CALIFORNIA** )
) ss.
**COUNTY OF ORANGE** )

I, Carol Rico, declare:

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action. My business address is 18201 Von Karman Ave., Suite 350, Irvine, California 92612.

On November 4, 2016, I served the document(s) described as: **DEFENDANTS' SUPPLEMENTAL TRIAL BRIEF** as follows:

☐   **BY MAIL**: As follows:

    ☐   **FEDERAL** – I deposited such envelope in the U.S. mail at Irvine, California, with postage thereon fully prepaid,

☐   **BY OVERNIGHT COURIER SERVICE** as follows:  I caused such envelope to be delivered by overnight courier service to the offices of the addressee.  The envelope was deposited in or with a facility regularly maintained by the overnight courier service with delivery fees paid or provided for.

☒   **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I caused said document(s) to be served by means of this Court's Electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF users set forth in the service list obtained from this Court. Pursuant to Electronic Filing Court Order, I hereby certify that the above documents(s) was uploaded to the website and will be posted on the website by the close of the next business day and the webmaster will give e-mail notification to all parties.

☒   **FEDERAL:** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made.

Executed on November 4, 2016, at Irvine, California.

_____
Carol Rico

550597.1

# SERVICE LIST
## USDC, Eastern District Case No. 1:15-cv-00993-JLT
### FRANK CORNEJO, et al. v. OCWEN LOAN SERVICING, LLC, et al.
#### File # 104938.0948

| | |
|---|---|
| Giandominic Vitiello, Esq.<br>KATCHKO, VITIELLO & KARIKOMI, PC<br>11500 W. Olympic Blvd., Suite 512<br>Los Angeles, CA 90064 | Attorney for Plaintiffs **FRANK CORNEJO and DORA CORNEJO**<br><br>Tel.: (310) 943-9587<br>Fax: (424) 204-0401<br>Email: gdvitiello@kvklawyers.com |
| John Heenan, Esq.<br>BISHOP, HEENAN & DAVIES<br>1631 Zimmerman Trail<br>Billings, MT 59102 | Attorney for Plaintiffs **FRANK CORNEJO and DORA CORNEJO**<br><br>Tel.: (406) 839-9091<br>Fax: (406) 839-9092<br>Email: jheenan@bhdlawyers.com<br>    kelly@bhdlawyers.com |
| Edward E. Angwin, Esq.<br>ANGWIN LAW FIRM<br>827 Moraga Drive<br>Los Angeles, CA 90049 | Attorney for Plaintiffs **FRANK CORNEJO and DORA CORNEJO**<br><br>Tel.: (310) 471-2702<br>Fax: (310) 472-7014<br>Email: ed@angwinlaw.com |

550597.1