**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANK CORNEJO, et al., ) | Case No.: 1:15-cv-000993 - JLT |
| Plaintiffs, ) | ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND GRANTING DEFENDANT'S MOTION FOR A NEW TRIAL |
| v. ) | |
| OCWEN LOAN SERVICING, LLC, et al., ) | |
| Defendants. ) | |

The defendants argue they are entitled to judgment as a matter of law under Rule 50, a new trial or that the Court should reduce the amount of damages awarded. (Doc. 112) For the reasons set forth below, the Court **DENIES** the Rule 50 motion, **GRANTS** the motion for new trial, **DENIES** the motion to reconsider the order denying statutory immunity and **DENIES** as **MOOT** the remaining motions.

**I.    Background**

The evidence at trial established that the plaintiffs failed to pay their mortgage for an extended period. Indeed, at the time of the foreclosure in April 2015, the plaintiffs had not paid for more than two years. Despite this, Ocwen took pains to encourage the plaintiffs to seek alternatives to foreclosure, in particular, by applying for a loan modification. Repeatedly, Ocwen sent the plaintiffs applications for a loan modification but they did not return the applications.

As a result, Ocwen initiated foreclosure and the house was scheduled to be sold at auction on

1

March 27, 2015. However, when the plaintiffs agreed to submit a mortgage modification application, Ocwen postponed the foreclosure sale for a month. The new sale date was set on April 29, 2015. Despite this, the plaintiffs continued to fail to act. Ocwen made repeated efforts to spur the plaintiffs into action but repeatedly the plaintiffs failed to do so.

Finally, on April 16, 2015, the plaintiffs submitted an incomplete application for the mortgage modification. Within days, Ocwen notified the plaintiffs of the inadequacy of the application and specifically informed them of what was needed to cure the defects. The letter Ocwen sent informed the plaintiffs, "If we receive all required documents **no later than midnight of the business day prior to your scheduled foreclosure sale date**, we will take action to suspend the foreclosure sale to evaluate your request for available loss mitigation options, as long as suspension of foreclosure is permitted by state regulation, and approved by your loan's investor." (Emphasis added)

At trial, Ocwen's corporate witness, Mr. Blanchard, explained that Ocwen needed at least 24 hours to make a determination about whether the loan modification package was sufficient such to postpone the foreclosure. Thus, he explained that, in this instance, "midnight of the business day prior to your scheduled foreclosure sale date" did not mean the before the first second of April 29, 2015—which would have been only about 10 hours before the sale—but midnight of the day *before* that—by the first second of April 28, 2015—so that there would be a full 24 hours plus the morning hours leading up to the foreclosure sale. The plaintiffs offered no contrary evidence that this was not Ocwen's meaning though they sought to make the point that the letter was ambiguous as to when the documents had to be provided—whether by the first second of April 28, 2015 or the first second of April 29, 2015. However, it is undisputed the plaintiffs were unaware of the "midnight" deadline.

Notably, on April 28, 2015 at about 10:00 a.m. PST, Ocwen's representative spoke with Frank Cornejo[1] and told him that the application package was not complete and "with the sale date being scheduled for 4/29 . . . [w]e would not have enough time to postpone the sale." (JT 4-58) Later that day at 4:29 PST, Frank Cornejo told Ocwen that he would file for Bankruptcy if the sale was not postponed and indicated an intention to fax over the notice of filing of the bankruptcy action. (JT 4-61)

---

[1] It appears that, indeed, the speaker was not Frank Cornejo but Ernie Cortez. (JT 4-62)

Nevertheless, it was not until the evening hours of April 28, 2015 that Ocwen's records document that it received the missing documents. On the other hand, the plaintiff presented documents with a banner which indicated they faxed the documents beginning at around 10:30 a.m. on April 28, 2015, though it was unclear whether this was Pacific Standard Time (where the plaintiffs were located) or Eastern Standard Time (where Ocwen was located) or, indeed, whether the banner on the fax machine used by the plaintiffs was accurate. In any event, it is without dispute that the plaintiffs did not provide the documents in sufficient time for Ocwen to have a full 24 hours to evaluate the package before the sale.

It is undisputed also that despite Ocwen noting that it had received the missing documents by the evening of April 28, 2015, in the hours leading up to the sale, an employee of Ocwen confirmed in an email that the foreclosure was "good to go." As a result, the house was foreclosed upon around 10 a.m. on April 29, 2015.

After the plaintiffs notified Ocwen that they had sought the protections of bankruptcy—which, if true, would have prevented the transfer of the property—Ocwen continued to work on the loan modification package and on May 4, 2015—without seeking any additional documents or information from the plaintiffs—determined the loan modification application was complete.

**I.     Legal standards governing motions for judgment**

Under Fed. R. Civ. P. 50, a party is entitled to judgment as a matter of law if the Court finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for that party." Fed. R. Civ. P. 50(a). In that event, the Court may resolve the issue against the party and grant judgment in favor of the moving party. Id.

The Court has previously considered this question on the same grounds raised by the defendants (Doc. 97) The defendants offer nothing additional or new as a basis for granting the motion. Thus, the Court, once again and for the reasons previously set forth (Doc. 97), **DENIES** the motion for judgment as a matter of law.

**II.    Legal standards governing motion for a new trial**

Federal Rules of Civil Procedure 59(a)(1)(A) determines when the Court may grant a motion for new trial, though the rule itself is not helpful in determining this. In essence, the Court may grant the

new trial motion on any basis previously determined to be sufficient.  <u>Id.</u>   Because a motion for new trial under Rule 59(a) allows the Court to consider the "weight" of the evidence rather than merely consider whether there is evidence that supports the verdict as is the standard for a motion for judgment as a matter of law under Rule 50(b), the scope of a motion for new trial is broader. For example, the Court is entitled to evaluate the credibility of the witnesses. <u>Air–Sea Forwarders, Inc. v. Air Asia Co., Ltd.</u>, 880 F.2d. 176, 190 (9th Cir. 1989). A new trial may be permitted when the jury's verdict is contrary to the "clear weight of the evidence" or where allowing the verdict to stand would result in a miscarriage of justice. <u>Silver Sage Partners, Ltd. v. City of Desert Hot Springs</u>, 251 F.3d at 819.

A verdict is against the clear weight of the evidence when, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed" by the jury. <u>Landes Const. Co., Inc. v. Royal Bank of Canada</u>, 833 F.2d 1365, 1371–1372 (9th Cir.1987) (citations omitted). In ruling on a motion for new trial, "the judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." <u>Air–Sea Forwarders, Inc.</u> 880 F.2d at 190; see also <u>United States v. Kellington</u>, 217 F.3d 1084, 1095 (9th Cir.2000).

In considering the evidence, the Court is convinced that the jury's passions were inflamed and this caused it to disregard the significant evidence in this case.  Despite the arguments of plaintiffs' counsel that Ocwen had taken advantage of the plaintiffs and "lull[ed] them to sleep" to cause them to disregard the deadlines imposed, there was no evidence upon which that argument could be based.  The evidence presented demonstrated that for more than two years, Ocwen did everything possible to engage the Cornejos in efforts to save their home from foreclosure.  Ocwen gave guidance, answered questions and sent out application packages several times.

For their part, the Cornejos ignored Ocwen's attempts to help them and, seemingly, viewed the calls as harassment.  Often, they failed to appear for scheduled appointments, failed to respond to messages and, on at least one occasion, hung up on Ocwen's representative.  It was only after the house was finally set for foreclosure sale did the Cornejo's express even mild interest in saving their home.  This resulted in Ocwen postponing the foreclosure sale for a month.  Despite this, once again, the

Cornejos took no action for nearly a month and then on April 16, 2015, they submitted a facially[2] incomplete application which contained, arguably, intentionally false information.[3]

Moreover, the Cornejos repeatedly mispresented themselves to Ocwen by stating that they had not received documents sent to them by Ocwen when they had[4] and by stating they had sent documents to Ocwen when they had not.[5] They allowed a third party, Ernie Cortez, to pretend to be Frank Cornejo and allowed him to pretend that their telephone numbers had changed in an attempt to prevent Ocwen from reaching the Corenjos and to redirect all contact to Mr. Cortez. They falsified a bankruptcy filing in order to dupe Ocwen into either refusing to go through with the foreclosure sale or to attempt to rescind the lawful transfer. All artifice, all falsity and all trickery was on the part of the Cornejos. There was no evidence presented of such wrongdoing on the part of Ocwen.

In addition, much was made of whether "midnight of the business day prior to your scheduled foreclosure sale date" meant that the Cornejos had to have the documents to Ocwen at least 10 hours before the sale or at least 34 hours before the sale. Mr. Blanchard testified that it was the earlier time period because Ocwen needed at least 24 hours to process the documents sufficiently to determine whether the foreclosure sale should be postponed. In light of the fact that 10 hours before the sale was made up of only two business hours on the west coast and only five hours on the east coast, the argument of plaintiff's counsel that the lesser amount of time was what was actually required by Ocwen makes little sense. However, in light of the fact that the Making Home Affordable Program uses the same phraseology, the Court does find that Ocwen's use of this language was for the purpose of

---

[2] The Cornejos failed to include any information about their monthly expenses (JT 17-5) and about their business's gross receipts (JT 17-8) and failed to provide a copy of the most recent tax return, two recent bank statements and two paystubs (JT 17-7)

[3] For example, the application indicates that there were no liens on the property when, in fact, there were three liens other than the mortgage (including a $39,044.39 lien held by the IRS, a $12,352.48 lien held by State Farm Mutual Automobile Insurance Company and a $36,062.74 lien held by the California Franchise Tax Board) which exceeded the value of the equity. (Doc. 76 at 5-6) Clearly, the Cornejos were aware of, at least, the IRS lien (JT 18-3). In addition, the Cornejos failed to list the real property they owned upon which their restaurant was situated. (Doc. 76 at 21-22)

[4] For example, they claimed they did not receive the mortgage modification application sent in December 2014 but, as it turns out, this is the very application that they finally submitted. This was demonstrated by the fact that it reflected the December date that Ocwen inserted into the application before it mailed it to the Cornejos in December 2014.

[5] For example, in one conversation with Dora Cornejo, she claimed to have sent in the requested additional documents on April 24, 2015 (JT 4-53; JT 4-54) when, as it turns out, this was untrue. In another conversation, "Frank Cornejo" claimed to have sent documents on April 15, 2016 when this was untrue. (JT 4-58; JT 4-59)

misleading borrowers. Though the Court agrees that Ocwen's notice could have been more clear[6], the Cornejos cannot claim to have been misled because they asserted that they denied ever receiving the letter setting forth this midnight deadline.

Moreover, the only evidence as to what this language meant was provided by Mr. Blanchard. Despite plaintiff's characterization of this evidence, Mr. Blanchard was consistent about the meaning of this phrase. (Doc. 120 at 224, 225, 236, 241, 242, 243-244; Doc. 121 at 34, 146) Mr. Blanchard explained why the deadline was more than a day before the foreclosure sale,

> They're going to need at least a minimum of a full 24 hours to -- to try and get that -- so they need that for the processing because there's so -- there's so much that goes into it. It's not just -- it's not just a click of a button to determine if it's -- if it's, you know, an approved modification of if it's -- if it's complete and verified documents. It takes time to do all of that.

(Doc. 121 at 146) He noted that, "it could take a couple of days to get to" the person who can evaluate the newly provided documents to make a decision. Id. This explanation was consistent with the information provided to the Cornejos at the time—that Ocwen needed 24 to 48 hours to process new documents. (JT 4-53; JT 4-54) The plaintiffs provided no evidence to contradict this explanation. Rather, while acknowledging that Ocwen was entitled to determine the deadline for submitting a complete application, plaintiffs simply encouraged the jury to disregard Ocwen's deadline and to impose a different one. In this way, they encouraged the jury to find the plaintiffs complied with Ocwen's deadline when, based upon the weight of the evidence, they did not.

Indeed, the only failure on Ocwen's part that the evidence supports is that Ocwen did not postpone the foreclosure sale upon the mere receipt of the documents provided by the Cornejos on April 28, 2015. It does not appear that this failure was purposeful but was as a result of the lack of knowledge of the person verifying the right to sale, of the late-submitted documents. At most, this amounts to mere negligence. Even still, the Court sees no obligation on Ocwen's part to postpone the sale simply upon the receipt of the documents. Clearly, for the law to make any sense, it must allow Ocwen a minimum amount of time to verify that the documents provided constituted the entirety of

---

[6] For that matter, therefore, the Making Home Affordable Program, likewise, should have been more clear as to exactly when "midnight of the seventh business day prior to the foreclosure sale date" was—either before the first second of the seventh day before the sale or by the first second of the sixth day before the foreclosure sale. (DX 583 at 62, 89, 98, 154)

those requested and that the information contained therein was facially complete.

The slight weight of the evidence that an Ocwen employee represented that the sale was "good to go" when compared to Ocwen's significant efforts to keep the Cornejos in their home, persuades the Court that there is manifest injustice in the verdict. The inability of Ocwen to postpone the foreclosure sale was a consequence of the delayed action of the Cornejos and this, while unfortunate for them, does not amount to the servicer taking predatory action. Rather, the Court is persuaded that, based upon the evidence presented at trial, Ocwen took all reasonable steps to help the Cornejos who, at nearly every turn, refused this assistance. Because the Court is firmly convinced that the clear weight of the actual evidence admitted at trial demonstrates there has been a miscarriage of justice, the Court **GRANTS** the motion for a new trial.[7]

IT IS SO ORDERED.

Dated:   **February 2, 2017**                    /s/ Jennifer L. Thurston
                                              UNITED STATES MAGISTRATE JUDGE

---

[7] In light of these rulings, the motion regarding the amount of damages is **DENIED** as **MOOT**. The motion for reconsideration related to the statutory immunity is **DENIED** for defendants failure to demonstrate any proper legal basis for reconsideration United States v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D. Cal. 2001); School District 1J, Multnomah County v. AC and S, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993), cert. denied, 512 U.S. 1236 (1994); Local Rule 230(j)) and for the reasons previously set forth (Doc. 44 at 22-23; Doc. 100)